**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
RONALD NEWMAN,                 )
                                              )
            Plaintiff,                  )
                                              )
      v.                                   )          Civil Action No. 1:07-cv-0492 RWR
                                              )
BORDERS, INC.                    )
                                              )
            and                          )
                                              )
BORDERS GROUP, INC.,          )
                                              )
            Defendants.             )
_____)

**PLAINTIFF RONALD NEWMAN'S MEMORANDUM**
**OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Ronald Newman, an African-American public school teacher at the Duke

Ellington School for the Arts in the District of Columbia, went to a Borders bookstore to buy a

gift for his nephew.  *See* Compl. ¶ 2, 5, 10.  He acted and was dressed normally, but because of

his race he was targeted for surveillance as soon as he entered the store.  *See id.* ¶¶ 11-14, 19.  He

selected a book and proceeded toward the cash registers to pay for it, but was stopped by a

security guard.  *See id.* ¶¶ 13-14.  She accused him of stealing without any legitimate basis.  *See*

*id.* ¶¶ 16, 19.  Mr. Newman quickly demonstrated his innocence to the guard and a manager, but

they refused to believe him.  *See id.* ¶¶ 21-22.  Over the course of an hour, they refused to clear

him, told him lies, and refused to answer his questions.  *See id.* ¶¶ 25-28, 30.  The manager

eventually instructed Mr. Newman to leave the store and he was unable to buy the book.  *See id.*

¶¶ 29-30.  Throughout the confrontation, the employees acted in clear violation of the store's

own policies.  *See id.* ¶¶ 16, 31.  Mr. Newman's two-count Complaint alleges that Defendants

Borders, Inc. and Borders Group, Inc. (collectively, "Borders") took these irrational actions because of his race, *see id.* ¶¶ 1, 2, 19, 27, 33-34, and that they are liable under 42 U.S.C. § 1981, which guarantees all persons equal rights to make and enforce contracts without regard to race, and for negligent supervision.

Borders now moves the Court to dismiss both counts under Federal Rule of Civil Procedure ("Rule") 12(b)(6). The motion is deficient in many respects. It fails to acknowledge central allegations of the Complaint, including the allegation that Mr. Newman selected a book to purchase, and dramatically minimizes others. It misconstrues the law regarding § 1981 by overstating what Mr. Newman must ultimately prove to prevail at trial. It seeks to hold Mr. Newman to a much more detailed standard of pleading than the Federal Rules of Civil Procedure require. Finally, the motion rests largely on inapposite case law. For all these reasons, the motion should be denied in its entirety.

Mr. Newman states a claim under § 1981 because he alleges that Borders interfered with his ability to buy a book and treated him in a markedly hostile manner, which numerous courts have held clearly supports an inference of discrimination. That is all the Complaint must do under recent decisions that focus on the unique circumstances of § 1981 claims that arise in retail stores and restaurants. *See, e.g.*, *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001). These decisions, which have not yet been considered in this Circuit, have been widely accepted by other courts and should be applied here.

Failing to address these precedents and relying instead on largely inapposite cases, Borders contends that Mr. Newman must allege (and later prove) that Borders actually prevented him from buying a book and that it treated white customers better than him. This standard is not correct, but the Complaint satisfies it in any event. Indeed, just a portion of one paragraph of the

Complaint satisfies both the correct pleading standard and the incorrect one suggested by

Borders:

> On Friday December 2, 2005, Borders discriminated against Mr. Newman
> because of his race when it provided him with service that was hostile and
> objectively unreasonable, impeded his ability to purchase a book he had selected
> as a gift for his nephew, and ultimately prevented him from purchasing the
> book. . . . Borders undertook the foregoing actions because Mr. Newman is
> African-American. White customers were not subjected to the same treatment.

Compl. ¶ 2. Borders simply ignores or dismisses these allegations and many others that provide

a much more detailed description of the racial discrimination Mr. Newman was forced to endure.

Borders likewise ignores clear law establishing that the pleading standard for a complaint

is quite limited. A plaintiff states a claim by giving "fair notice of the claim and the grounds

upon which it rests." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir.

2003). The Complaint plainly does so, and much more.

Finally, the motion to dismiss should be denied as to the negligent supervision claim for

comparable reasons. The Complaint alleges and supports inferences of two employees' repeated

inappropriate conduct that Borders knew or should have known about and that resulted in Mr.

Newman's injuries. This gives Borders "fair notice of the claim and the grounds upon which it

rests," *Kingman Park Civic Ass'n*, 348 F.3d at 1040, and therefore states a claim.

## I.     THE ALLEGATIONS IN MR. NEWMAN'S COMPLAINT

Mr. Newman's Complaint describes in great detail the events that give rise to his claims. The most salient aspects are summarized here.

Mr. Newman is an African-American teacher at the Duke Ellington School of the Arts in Washington, D.C. *See* Compl. ¶¶ 1, 5. He alleges that he went to a Borders bookstore on December 2, 2005, for the specific purpose of buying a book as a gift for his nephew. *See id.* ¶¶ 2, 10. Newman was accompanied by an African-American friend and carried a bag from a store he had shopped at earlier that night. *See id.* ¶¶ 10, 11. Their actions, manner, and dress were typical of customers in a bookstore, and they did nothing to draw attention to themselves. *See id.* ¶¶ 11-14, 19. Mr. Newman chose a book and, carrying the book in plain view, walked toward the cash registers to pay for it. *See id.* ¶¶ 2, 13, 14.

A woman later identified as Borders security guard Darlene White physically blocked Newman's path to the cash registers. *See id.* ¶ 15. White accused Newman of shoplifting. *See id.* ¶ 16. She was hostile and aggressive, and asserted that Newman had placed store merchandise in his bag. *See id.* White admitted that she had been watching Newman since he first entered the store and claimed that a security videotape showing him stealing. *See id.* ¶ 19. By confronting Newman, White inexplicably violated store policy regarding suspected shoplifting. *See id.* ¶¶ 16, 31.[1]

Newman asked to see the store manager, and manager Pat Spurlock was summoned. *See id.* ¶ 20. Spurlock knew that the guard had violated store policy, but violated it herself by failing to end the confrontation immediately and permit Newman to make his purchase unimpeded. *See id.* ¶ 31.

---

[1]     Defendants' emphasis on the fact that White is also African-American, *see* Defs.' Mem. at 6 n.1, has no bearing on a motion to dismiss, or even a motion for summary judgment. *See Williams v. Staples, Inc.*, 372 F.3d 662, 666 n.2 (4th Cir. 2004) ("a matter for the finder of fact to decide").

Newman proved that his bag contained no Borders merchandise by emptying it in front of Spurlock and White.  *See id.* ¶ 21.  This should have ended the incident, but Spurlock and White refused to accept that Newman had done nothing wrong.  *See id.* ¶¶ 21, 22, 30.  They likewise failed to indicate in any way that the incident was over or that Newman was free to go about his business.  *See id.* ¶ 22, 30.  It was apparent that he was not.  *See id.* ¶ 24.  Another store employee stayed with him, and White and Spurlock left to view the security tape.  *See id.* ¶¶ 22, 24.

While waiting, Newman called the police because he did not know what to do and believed the police would confirm his innocence.  *See id.* ¶ 23.  Before leaving, Spurlock had refused to respond when Newman asked if the store would call the police.  *See id.*

Spurlock returned after watching the videotape, which could not have been incriminating. *See id.* ¶¶ 19, 25.  Nonetheless, she still refused to clear Newman.  *See id.* ¶¶ 25, 27, 30.  To no avail, he asked to see the videotape.  *See id.* ¶ 26.  Spurlock told different stories about why she could not show it to him, at one point even claiming that she could not see it herself.  *See id.*

Newman asked Spurlock what he was supposed to do, but she was callously indifferent to his situation.  *See id.* ¶ 27.  Spurlock said, "What do you want me to do?  I have a store to run," and left.  *See id.* ¶¶ 27, 28.  With good reason, Newman feared that he would be stopped if he tried to leave the store and believed that he was not permitted to continue shopping.  *See id.*

Newman therefore waited for the police, in plain view of store personnel.  *See id.* ¶ 29. After twenty minutes, Spurlock told him to leave.  *See id.*  He did, approximately one hour after White first stepped in his path.  *See id.* ¶¶ 29, 30.  Newman was never able to buy the book.  *See id.* ¶ 2, 30.

Newman further alleges that he was targeted, falsely accused, and mistreated in this

manner because of his race, and that white customers in the store were not similarly treated.  *See id.* ¶¶ 1, 2, 19, 27, 33, 34.

## II.    THE LEGAL STANDARDS FOR A RULE 12(b)(6) MOTION TO DISMISS

It is well established that a complaint need only set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Rule 8(a)(2)); *see Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003).  A plaintiff "need not plead law or match facts to every element of a legal theory."  *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

In determining whether a complaint satisfies this limited requirement, courts "must treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citations omitted).  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (internal quotation marks and citation omitted).  Dismissal is inappropriate unless this is "'beyond doubt.'"  *Kingman Park Civic Ass'n*, 348 F.3d at 1040 (quoting *Conley*, 355 U.S. at 45-46).

Application of these principles in discrimination cases has produced an additional rule that is relevant here:  a plaintiff does not have to plead the *prima facie* elements of a claim in his complaint, *see Swierkiewicz*, 534 U.S. at 511, *Sparrow*, 216 F.3d at 1114, even though he will have to prove them later if discovery does not reveal direct evidence of discrimination, *see Swierkiewicz*, 534 U.S. at 515.  Defendants' contentions that the Complaint "does not allege any

disparate treatment of African-Americans as compared to members of other racial groups" and that "the essential elements of a §1981 claim have simply not been pled," Mem. of Law In Supp. of Defs. Borders's Mot. to Dismiss Pl.'s Compl. ("Defs.' Mem.") at 3, 7, are not just inaccurate, they are legally irrelevant.  "None of this . . . has to be accomplished in the complaint itself." *Sparrow*, 216 F.3d at 1114; *see also id.* (plaintiff "did not have to . . . specifically point to similarly situated employees who were given preferential treatment over him") (internal quotation marks and citation omitted).

## III.  THE COMPLAINT PROPERLY STATES A CLAIM UNDER 42 U.S.C. § 1981

### A.  The Complaint States A Claim Under § 1981 By Alleging That Borders Interfered With Mr. Newman's Ability To Buy The Book He Selected And Did So In A Markedly Hostile Manner

Newman may prevail under § 1981 by proving that Borders interfered with, impaired, or impeded his ability to buy the book because of his race.  Contrary to Defendants' contention, he does not have to prove that Borders actually prevented him from buying the book.  *See* Defs.' Mem. at 5.  Moreover, a jury may infer that race was the reason for Borders's actions from evidence that Newman was treated in a markedly hostile manner.  Defendants' suggestion that Newman must present evidence concerning the treatment of white customers is wrong.  *See id.* at 3.

Accordingly, the motion to dismiss should be denied because the Complaint adequately pleads all of the facts that Newman will have to prove at trial.

### 1.  *Borders Interfered With Mr. Newman's Ability To Buy The Book*

With respect to the book that Newman selected for his nephew, Newman must prove only that Borders interfered with, impaired, or impeded his ability to buy it.  He does not have to prove that Borders outright prevented him from doing so.

Borders cites only one case, *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990), to support its view that outright prevention is a necessary element under § 1981. *See* Defs.' Mem. at 5. The facts of that case, however, make clear why it is inapposite to the facts here. In *Bray*, a restaurant tried to serve the plaintiff by asking to take his order, but he "refused to make a purchase." *Bray*, 748 F. Supp. at 4, 5. He was later asked to leave because he was loitering. *See id.* at 4. Thus, the *plaintiff* actually refused the *defendant's* offer to make a contract. Furthermore, the court found that there was not even a "scintilla of evidence" that race was involved. *Id.* at 5. These facts were so far afield of an actionable § 1981 claim that the court was able to grant summary judgment without considering the statute's proper scope. *See id.* Indeed, the court's single use of the word "prevented" is not supported by any citation or explanation. *See id.* There is no indication that the court intended to attach to the word the significance Borders gives it, and Borders's argument thus reflects cherry picking instead of analysis.[2]

Several leading Circuit Court decisions, as well as decisions from lower courts, establish that racially-motivated interference with a customer's attempt to make a purchase is actionable under § 1981, without regard to whether the customer was able to complete the purchase. These cases reflect Congress's intention that § 1981 should be interpreted broadly, as demonstrated by its rejection in the Civil Rights Act of 1991, Pub. L. 102-166, § 101, 105 Stat. 1071 (1991), of the narrow reading given the statute in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989).

In *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001), an African-American woman was attempting to complete a transaction at a department store's fragrance counter when a security guard interrupted and accused her of stealing. *See* 247 F.3d at 1100.

---

[2]     Equally important, *Bray* was decided in 1990, well before cases like *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694 (D. Md. 2000) and *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001), discussed below, began to adapt the evidentiary requirements under § 1981 to the unique circumstances of claims that involve retail and restaurant establishments. Their approach to retail and restaurant cases has been widely accepted by federal courts throughout the country, but is not reflected in *Bray*.

The guard emptied her bag, which demonstrated her innocence. *See id.* After a heated exchange, the customer went to the customer service counter to complain. *See id.* The Tenth Circuit upheld a § 1981 jury verdict in the customer's favor because of evidence that the guard "deliberately interfered" with her transaction and that she would have completed it "had there been no interference." *Id.* at 1106; *see id.* at 1106-07 ("proper focus is on whether . . . discrimination interfered with the making or enforcing of a contract").

In *Miales v. McDonald's Restaurants of Colorado, Inc.*, 438 F. Supp. 2d 1297 (D. Colo. 2006), an African-American woman was ordering at the drive-through window of a McDonald's restaurant when the attendant abruptly stopped taking her order. *See* 438 F. Supp. 2d at 1299. She went inside and complained to a manager, who was not helpful and called her a "black bitch." *Id.* The customer left without ordering. *See id.* McDonald's sought summary judgment on the grounds that the customer "was never told that she would not be served" and "voluntarily left when other employees may have taken her order." *Id.* at 1301. The court denied the motion because "[t]he relevant questions are whether there was intent to discriminate and whether this discrimination interfered with or impaired the obtainment of service." *Id.*

Likewise, the First Circuit has held that racially-motivated surveillance in a store becomes actionable under § 1981 when it "crosses the line into harassment []or impairs a shopper's ability to make and complete purchases." *Garrett v. Tandy Corp.*, 295 F.3d 94, 101 (1st Cir. 2002); *see also id.* at 100 ("section 1981 applies to those situations in which a merchant . . . impeded a customer's ability to enter into . . . a contractual relationship"). Even *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996), which Borders calls "strikingly similar" to this case, Defs.' Mem. at 5-6, is contrary to its argument. In considering a claim under 42 U.S.C. § 1982 (which is construed *in pari materia* with § 1981, *see Garrett*, 295 F.3d at 103), the court's

resolution turned on whether the defendant did anything that "actually impaired or interfered with [the plaintiffs'] right to make a purchase." *Morris*, 89 F.3d at 415.

Accordingly, Newman's allegations regarding the book are sufficient because they show that he selected it for purchase and was trying to purchase it, but Borders interfered with, impaired, and impeded his ability to do so. *See* Complaint ¶¶ 2, 16, 19, 21-23, 26, 27, 29, 31. His ability was impaired because Borders falsely charged him with theft without any legitimate basis, persisted in accusing him even after he quickly proved his innocence, refused to clear him over the course of an hour-long incident, refused to answer his question about what he was supposed to do, lied about the security videotape, violated its own policy on shoplifting, and finally instructed him to leave the store. *See id.*

> 2.    *Borders Treated Mr. Newman In A Markedly Hostile Manner*
> *That Supports An Inference Of Intentional Discrimination*

Under the proper standard, all Newman must do to state a claim is to allege that Borders's actions were motivated by his race. *See, e.g.*, *Sparrow*, 216 F.3d at 1111. Evidence that he was treated in a "markedly hostile manner" is sufficient to give rise to an inference of intentional discrimination. *E.g.*, *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). Defendants' suggestion that he must present evidence that similarly situated white customers were treated better than he was, *see* Defs.' Mem. at 3, is wrong. Recognizing that it is impossible for most retail and restaurant customers to adduce significant evidence regarding other customers, courts have recently adopted the markedly hostile standard as an alternative from which jurors may infer discriminatory intent. This alternative reflects the Supreme Court's instruction that the necessary showing in civil rights cases should be tailored to the many factually disparate contexts in which they arise. *See, e.g.*, *Swierkiewicz*, 534 U.S. at 512; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981).

Beginning with the Sixth Circuit's *Christian* decision and *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694 (D. Md. 2000), there has been a marked trend in federal courts toward permitting an alternative to the "similarly situated" requirement in § 1981 retail and restaurant cases. The *Christian* and *Callwood* courts emphasized the "ephemeral" and "transient nature of the interpersonal contacts between patrons and service employees" in stores and restaurants. *Callwood*, 98 F. Supp. 2d at 706-08; *see Christian*, 252 F.3d at 870-73. They concluded that this largely eliminates customers' ability to present evidence regarding the treatment of similarly situated people outside their protected class. *See Callwood*, 98 F. Supp. 2d at 706 ("wholly unrealistic"); *Christian*, 252 F.3d at 873 ("will often be the case" that "similarly situated persons are not available for comparison"). Because this is the traditional source of an inference of discrimination in employment cases, an appropriate alternative is needed to avoid "foreclose[ing] the possibility that a plaintiff would ever successfully raise a § 1981 claim" in a retail or restaurant setting. *Christian*, 252 F.3d at 872. Job applicants and employees can generally obtain in discovery a "paper trail of evidence" regarding other applicants and employees, but retail and restaurant customers generally cannot obtain comparable evidence. *Callwood*, 98 F. Supp. 2d at 706; *see Christian*, 252 F.3d at 870-71.

In light of these differences, *Callwood* and *Christian* hold that an inference of discrimination may be made in a § 1981 retail discrimination case where a plaintiff "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." *Callwood*, 98 F. Supp. 2d at 707; *Christian*, 252 F.3d at 872 (identical except changing, without explanation, "objectively unreasonable" to "objectively discriminatory"). They also adopted factors that are relevant to whether service is "markedly hostile": whether the conduct "is (1) so profoundly contrary to the manifest financial interests of

the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Callwood*, 98 F. Supp. 2d at 707; Christian at 871-72, 879 (quoting *Callwood* test, "adopt[ing] it as our own", and applying it).

Most post-*Christian*[3] courts to consider this issue have found *Christian* persuasive.  *See Dobson v. Central Carolina Bank & Trust Co.*, 240 F. Supp. 2d 516 (M.D.N.C. 2003) (applying *Christian* test); *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257 (D. Kan. 2003) (same); *O'Neill v. Gourmet Systems of Minnesota, Inc.*, 213 F. Supp. 2d 1012 (W.D. Wis. 2002) (same); *see also Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002) (discussing *Christian* with approval); *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138 (9th Cir. 2006) (describing *Christian* as "compelling," but not adopting because plaintiff satisfied any test); *Watkins v. Lovley Devel. Inc.*, No. Civ. 04-211-B-H, 2005 WL 2746664 (D. Me. Oct. 24, 2005) (noting that the First Circuit "referred positively to *Christian*" in *Garrett*).

Courts in this circuit have not had occasion to consider *Christian*, but the Court should do so here and follow its holding.  The *Christian* standard is the only one based on an examination of the particular nature of a customer's experience in a retail environment.  It is, therefore, the only one that comports with the Supreme Court's direction to adapt the elements of a civil rights claim to the context in which the claim arises.  Moreover, *Christian*'s analysis of that environment is convincing.  Unlike the workplace, a detailed evidentiary record is not created in a bookstore permitting litigants to determine if other customers were similarly situated or disparately treated.  Absent an alternative basis for inferring discriminatory intent, customers' federally-guaranteed right under § 1981 to be free from discrimination when purchasing wares

---

[3]     For simplicity, Plaintiff henceforth refers to *Christian* exclusively.  The analyses, holdings, and jurisprudential impact of *Christian* and *Callwood* are comparable.

would be sharply curtailed. *Christian*'s "markedly hostile" alternative, in conjunction with the factors that elucidate its meaning, allows victims of egregious acts to obtain redress if they convince jurors that an inference of discrimination is valid. At the same time, it is sufficiently stringent to prevent § 1981 from becoming a "general civility code" for shopping. *Curry v. District of Columbia*, 195 F.3d 654, 660 n.13 (D.C. Cir. 1999) (noting Supreme Court's caution against such an outcome). The Court should therefore allow an inference of discrimination to be drawn from markedly hostile treatment.

The Complaint plainly makes adequate allegations to meet this standard. Paragraphs 2, 16, 19, 21-23, 26, 27, 29, and 31 allege that Newman was treated in a hostile manner and/or offer examples of the hostile treatment. These examples include Defendants' falsely charging Newman with theft without any legitimate reason, aggressive manner in initially confronting him, persistence in accusing him even after he quickly proved his innocence, refusal to clear him over the course of an hour-long incident, refusal to respond to his questions, lies about the security videotape, violations of their own policy on shoplifting, and instruction to leave the store. This satisfies the indicia of markedly hostile conduct because it was contrary to Defendants' financial interests in that Newman was a customer trying to make a purchase; outside not only widely-accepted business norms about how to treat customers, but also Defendants' own norms (*i.e.*, its shoplifting policy); and arbitrary on its face in that there was no legitimate reason to stop Newman in the first place or persist in the face of clear evidence of his innocence. *See Christian*, 252 F.3d at 871, 879. The motion to dismiss the § 1981 claim must therefore be denied.

**B.** **The Complaint Also States A Claim Under The Incorrect Standard Articulated By Borders By Alleging That Borders Prevented Mr. Newman From Buying The Book He Selected And Treated White Customers Better**

Defendants' assertions that Newman cannot prevail under § 1981 without proving that Borders actually prevented him from buying a book and treated white customers better are wrong, as demonstrated above.  But even if Borders was correct, the Complaint would properly state a claim because Borders fails to adequately consider the law regarding motions to dismiss civil rights complaints and the facts that Newman alleges.  The law requires only a simple and general allegation of discrimination, which Newman easily satisfies by alleging that Borders "prevented him from purchasing the book" "he had selected as a gift for his nephew" and that "[w]hite customers in the store were not subjected to the same treatment."  *See* Compl. ¶ 2.

There are many cases in this Circuit, none of which are addressed by Borders, demonstrating that a minimal description of discrimination is enough to defeat a motion to dismiss.  "'I was turned down for a job because of my race' is all a [§ 1981 employment discrimination] complaint has to say to survive a motion to dismiss under Rule 12(b)(6)." *Sparrow*, 216 F.3d at 1115 (internal quotation marks and citations omitted).  In a § 1981 insurance discrimination case, allegations that "applications for homeowners insurance were denied because [the defendants] discriminated against the [applicants] on the basis of race" and that they suffered "intentional discrimination on the basis of race or color" are sufficient.  *Nat'l Fair Hous. Alliance, Inc. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 61 (D.D.C. 2002).  In a lending discrimination case, "'I was turned down for a loan because of my race'" is sufficient. *Rahmaan v. Federal Nat'l Mortgage Ass'n*, No. Civ. A. 02-1822, 2003 WL 21940044, at *2 (D.D.C. May 19, 2003) (Roberts, J.) (internal quotation marks, citation, and brackets omitted). In a Voting Rights Act case, a neighborhood association need only allege that "minority voters in

the relevant wards have 'less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *Kingman Park Civic Ass'n*, 348 F.3d at 1040 (quoting 42 U.S.C. § 1973(b)).  Even where evidence of the treatment of other people may ultimately be required, a complaint does not have to "specifically point to similarly situated [people] who were given preferential treatment." *Sparrow*, 216 F.3d at 1114.

Accordingly, the most Mr. Newman would have to allege in support of his § 1981 claim – under Borders's view of the statute – is that he was prevented from buying a book because he is an African American.[4]  *See, e.g.*, *Sparrow*, 216 F.3d at 1115.  The Complaint makes these allegations, straightforwardly and in a manner that easily gives Borders "fair notice" of Newman's claim "and the grounds upon which it rests." *Conley*, 355 U.S. at 41.  Paragraph two of the Complaint, standing alone, is sufficient:

> On Friday, December 2, 2005, Borders discriminated against Mr. Newman because of his race when it provided him with service that was hostile and objectively unreasonable, impeded his ability to purchase a book he had selected as a gift for his nephew, and ultimately prevented him from purchasing the book. Specifically, Borders (a) subjected Mr. Newman to surveillance as soon as he entered the store; (b) falsely, intentionally, and publicly accused Mr. Newman of stealing merchandise after he selected a book for purchase; (c) prevented Mr. Newman from purchasing merchandise; (d) lied to Mr. Newman about the existence of a videotape that purportedly showed him stealing; (e) failed to clear Mr. Newman of wrongdoing and tell him he could continue shopping or leave the store even after he demonstrated his innocence; and (f) finally required Mr. Newman to leave the store before the arrival of the police, whom Mr. Newman had summoned to ensure he was cleared of any allegations of wrongdoing. Borders undertook the foregoing actions because Mr. Newman is African-American.  White customers in the store were not subjected to the same treatment.

Furthermore, the Complaint repeats the essential allegations in other paragraphs. Paragraphs 1, 19, 27, 33, and 34 reallege that Borders acted as it did because of Newman's race. The security guard's admission that she targeted him as soon as he entered the store, even though

---

[4]      He need not allege that this result was Defendants' intent, only that this result flowed from their discriminatory actions.  *See Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1106-07 (10th Cir. 2001).

there was no legitimate reason to do so, *see* Compl. ¶ 19, strongly supports that allegation. Paragraphs 13, 14, and 30 reallege that Borders's actions prevented Newman from purchasing the book that he had selected and was trying to buy when the confrontation began. Crediting Defendants' incorrect understanding of § 1981 for purposes of argument, this is all that is necessary to state a claim.

Even if the Court considers these allegations insufficient to ultimately prevail at trial, it should deny the motion to dismiss so that Newman may develop through discovery further evidence in support of his case. *See Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) ("[l]itigants are entitled to discovery before being put to their proof"), *quoted with approval in Sparrow*, 216 F.3d at 1117. Summary judgment is the appropriate procedure for addressing cases that might be factually inadequate, not Rule 12(b)(6). *See Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000).

**C.    Even Under The Factually and Legally Inapposite Cases Relied On By Borders, Mr. Newman Had A Cognizable Interest In The Book**

Borders contends that its actions are ultimately irrelevant because, in its view, Newman did not really try to buy a book. *See, e.g.*, Defs.' Mem. at 6-7 ("it was <u>his</u> decision to terminate any further attempts to contract with Borders") (emphasis in original). Borders suggests that, because Newman never reached a cash register and held out money, he did not do enough to come within the ambit of § 1981. *See* Defs.' Mem. at 3 (arguing that Newman does not allege "that he attempted to tender payment for a proposed purchase" or "offer[] to make a contract with Borders"); *id.* at 7 (arguing that Newman does not allege "that he took a book or other desired item to the cash register"); Defs.' Mot. to Dismiss Pl.'s Compl. at 1 ("He does not allege that he proffered payment, asked to make a purchase, or was refused service or the right to make a payment."). Of course, it was Borders that stopped Newman on his way to a cash register.

16

Just as important, Borders supports its contention by utterly misrepresenting the law.
Borders cites seven cases that, with one exception, address summary judgment motions. The
difference in the standards of review under Rules 12(b)(6) and 56 renders these cases inapposite.
As discussed above, and as Borders fails to note, the standard for pleading a complaint is quite
modest – "I was turned down for a job because of my race" is sufficient. Newman does not have
to make allegations that, taken as true, would defeat a summary judgment motion. But even if
Newman was held to a higher standard, the cases relied on by Borders would not support its
motion.

Six of the cases fall into one of two inapplicable fact patterns: the plaintiff rejected the
offer to enter a contract, or there was no more than a vague notion that the plaintiff might some
day try to enter a contract concerning an unknown subject. Here, to the contrary, Newman
selected a specific book to purchase but was then placed under suspicion of theft for an hour
before being told to leave the store. In the seventh case, the plaintiff prevailed.

Borders puts greatest emphasis on *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir.
1996), *Bagley v. Ameritech Corp.*, 220 F.3d 518 (7th Cir. 2000), and *Phelps v. Wichita Eagle-
Beacon*, 886 F.2d 1262 (10th Cir. 1989). *See* Defs.' Mem. at 5-7. They do not support its
motion. In *Morris*, two African-American men went to an office supply store to buy telephone
message pads. *See* 89 F.3d at 412. One bought them. *See id.* They then looked at time-stamp
machines, but there was "no evidence to suggest that they had anything more than a general
interest in the merchandise." *Id.* at 412, 414. Even that evidence was minimal. *See id.* at 414.
Meanwhile, a suspicious store manager had summoned the police, who confronted the customers
and promptly cleared them. *See id.* at 412. The court granted summary judgment to the store
because of the exceedingly speculative nature of the plaintiffs' supposed contract interest. *See*

*id.* at 414.

In *Bagley*, a black customer asked a salesman if a particular telephone was in stock. *See* 220 F.3d at 519. The salesman turned to a manager, with whom the customer had a poor relationship when the manager worked elsewhere. *See id.* at 519-20. The manager gave the customer "the finger," said "'I will not serve him,'" handed the salesman a brochure about the phone, and walked away. *Id.* at 520. The customer left, but came back later that day and declined the same salesman's offer of assistance. *See id.* The court granted summary judgment to the defendant because it was clear "that when [the manager] handed [the salesman] the brochure she intended that he would continue to wait on [the customer]," and any "lingering doubt" was dispelled by the events of the return visit. *Id.* at 521-22. The customer was the reason he did not leave with the phone, not the store. *See id.*

In *Phelps* (which does address a motion to dismiss), a newspaper ran two articles about a white lawyer who had black clients. *See* 886 F.2d at 1266. The lawyer claimed that the articles were defamatory and could, in the future, interfere with his business opportunities. *See id.* at 1267. The court granted the motion to dismiss because the "*possible* loss of *future* opportunities" was too "vague and conclusory" to be actionable under § 1981. *Id.* (emphases in original).

Three of Defendants' remaining four cases follow parallel fact patterns. Two are like *Bagley* in that the plaintiffs rejected the opportunity to contract. *See Jackson v. Tyler's Dad's Place, Inc.*, 850 F. Supp. 53 (D.D.C. 1994) (African-Americans were offered table in restaurant's bar area but not main dining area, where all tables were occupied or reserved; they declined and left, and did not ask to be seated when they came back); *Bray v. RHT, Inc.*, 748 F. Supp. 3 (D.D.C. 1990) (African-American was offered service at restaurant but declined, and was then

asked to leave because he was loitering). One case, like *Morris* and *Phelps*, involves at most an entirely speculative notion of a contract. *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001) (African-American banned from department store because of suspected shoplifting offered no evidence that she attempted to buy anything before or during ban).

The final case Defendants rely on actually undermines their motion by demonstrating that a plaintiff who is not outright prevented from making a purchase can obtain relief under § 1981. In *Williams v. Staples, Inc.*, 372 F.3d 662 (4th Cir. 2004), a store accepted out-of-state checks from white customers, but not from African-Americans. *See* 372 F.3d at 665-66, 668. African-Americans were permitted to pay by other means, and thus were not prevented from making purchases. *See id.* at 666. The court held that an African-American student who was not allowed to buy a printer cartridge with an out-of-state check was entitled to present his case to a jury. *See id.* at 670.

As discussed above, the question is whether Borders interfered with Newman's ability to make the purchase that he plainly alleges trying to make. *See supra* section III.A.1. Even if Newman were held to a heightened standard of pleading, Defendants' cases would be irrelevant to this question except for the one case that supports Newman, not Borders.

## IV.     THE COMPLAINT PROPERLY STATES A CLAIM FOR NEGLIGENT SUPERVISION

Newman has also stated a common law claim for negligent supervision. Defendants' objections that the Complaint is "general and unspecific" with respect to this cause of action and that it "is alleged without any facts or information to support it" are irrelevant and mistaken. *See* Defs.' Mem. at 4, 8. Borders simply ignores both the law establishing that detailed pleading is not required to state a claim for negligent supervision and the facts alleged in the complaint. The motion should therefore be denied as to this cause of action, too.

**A.    Mr. Newman Does Not Have To Satisfy Any Heightened
Pleading Standard To State A Claim For Negligent Supervision**

All aspects of the standard of review governing a motion to dismiss a § 1981 claim apply
in full to Newman's negligent supervision claim.  Except for allegations of fraud and mistake,
"Rule 8(a)'s simplified pleading standard applies to all civil actions."  *Swierkiewicz*, 534 U.S. at
513.  A negligent supervision claim, like others, "need not allege all that a plaintiff must
eventually prove."  *Atchinson v. District of Columbia*, 73 F.3d 418, 421-22 (D.C. Cir. 1996).

In *Atchinson*, the D.C. Circuit held that the plaintiff stated a claim for negligent training
or supervision of police officers despite sparse allegations and a heightened proof requirement
applicable to claims against municipalities.  The plaintiff alleged that, on August 14, 1991, he
was carrying a machete he had just purchased when he heard someone say "freeze."  *See id.* at
421.  He turned and saw two officers across the street, and one promptly shot him.  *See id.*  He
alleged that the officer used excessive and unnecessary force and that the defendants
"intentionally, negligently, and with deliberate indifference and callous and wanton disregard for
[his] rights, failed to appoint, supervise, train and/or promote members of the [Metropolitan
Police Department] who would enforce the laws in effect in the District of Columbia."  *Id.*
(second brackets in original).  This was enough to state a claim because the allegations
"reasonably suggest[ed] misconduct sufficiently serious and obvious to justify an *allegation* of
improper training in the use of force."  *Id.* at 422 (emphasis in original).  The complaint put the
city "on notice that Atchinson's claims were based on the District's failure to train and supervise
its officers in the use of deadly force and, in particular, on Officer Collins's use of force on
August 14, 1991."  *Id.* at 423.  That was all it had to do.

Defendants' suggestion that Newman is subject to a higher pleading standard thus fails.

**B.    Mr. Newman Alleges Sufficient Facts To**

### State A Claim For Negligent Supervision

Newman alleges sufficient facts to state a claim under the proper standard of review.  The Complaint alleges that "Defendants knew or should have known that Ms. Spurlock [the manager] and/or Ms. White [the security guard] behaved in a dangerous or otherwise incompetent manner and nonetheless failed to adequately supervise them."  Compl. ¶ 43.  It also alleges that, "[a]s a direct and proximate result of Defendants' . . . practices," Newman was injured.  *Id.* ¶ 37.[5]  These allegations, in conjunction with others that add substantial detail, give Borders ample notice of the basis of the claim.

The detailed allegations demonstrate that, through the manager, Borders negligently supervised the security guard right in front of Newman's eyes.  The security guard violated store policy by beginning a confrontation with Newman.  *See* Compl. ¶¶ 16, 31.  It may also be inferred that Borders maintains an anti-discrimination policy and that the guard blatantly violated that policy, too.  But when the manager arrived and immediately became aware of the shoplifting policy violation she failed to correct it.  *See id.* ¶ 31.  To the contrary, she allowed the confrontation to continue and participated in it herself.  *See id.* ¶¶ 21-31.  This alone constitutes negligent supervision.  Moreover, the seriousness of her negligence increased as it became apparent that the guard had lied to Newman about the videotape and accused him because of his race.  *See id.*

The employees' disregard for store policies and Newman's rights was so complete that it also gives rise to an inference that the guard and manager acted similarly on prior occasions.  This inference is analogous to the one made by the court in *Atchinson*, where the allegation of a single bad act taken against the plaintiff justified the inference that it was caused by negligent

---

[5]     Borders appears to admit that this properly reflects the proof ultimately required to support a negligent supervision claim, *see* Defs.' Mem. at 8-9, despite wrongly asserting that Newman does not allege proximate cause, *see id.* at 9; Defs.' Mot. to Dismiss Pl.'s Compl. at 2.

training or supervision. *See* 73 F.3d at 422. This inference should also be drawn because a complaint should not be dismissed under Rule 12(b)(6) unless "it is clear that no relief could be granted under any set of facts that could be proved *consistent with* the allegations." *Swierkiewicz*, 534 U.S. at 514 (internal quotation marks and citation omitted; emphasis added). The employees' prior failures to abide by store policies and respect customers' legal rights shows that Borders knew or should have known about the employees' dangerousness and incompetence before Newman entered the store. The manner in which the employees then acted toward Newman evidences Defendants' failure to take appropriate action in light of that knowledge.

These allegations and inferences are sufficient to state a claim for negligent supervision. The Complaint plainly gives Borders notice that the claim is based on its failure to adequately supervise two particular employees with respect to its policies on shoplifting and civil rights, and their consequent actions on December 2, 2005. *See Atchinson*, 73 F.3d at 423.

Moreover, to the extent Defendants' real objection is only that Newman has not pled this cause of action with enough specificity to ultimately prevail (notwithstanding their hyperbolic statement that it "is alleged without any facts or information to support it," *see* Defs.' Mem. at 4), that is not a proper basis for granting a motion to dismiss. *See Krieger*, 211 F.3d at 134 (distinguishing the functions of Rules 12(b)(6) and 56). Newman must be permitted to obtain additional and more detailed evidence through discovery, including discovery concerning Spurlock's and White's past performance, the training they received, and the reason Pat Spurlock (the manager) is no longer employed by Borders.[6] *See Bennett*, 153 F.3d at 519. He has more than satisfied Rule 8's requirement of a "short and plain" statement in his initial pleading, and is now entitled to develop and prosecute his case.

---

[6]     Upon information and belief, Spurlock's employment with Borders ended under less than ideal circumstances.

**CONCLUSION**

For the foregoing reasons, Plaintiff Ronald Newman respectfully submits that the motion to dismiss should be denied in its entirety.

Date:  May 4, 2007                                Respectfully submitted,


                                                 _____/s/_____
                                                 John P. Relman (D.C. Bar No. 405500)
                                                 Glenn Schlactus (D.C. Bar No. 475950)
                                                 RELMAN & DANE PLLC
                                                 1225 19th Street, N.W.
                                                 Suite 600
                                                 Washington, D.C. 20036
                                                 (202) 728-1888 (o)
                                                 (202) 728-0848 (fax)

                                                 *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of May, 2007, I caused Plaintiff's Memorandum Of Points And Authorities In Opposition To Defendants' Motion To Dismiss Plaintiff's Complaint to be served on the following by Notice of Electronic Filing, generated by the Electronic Case Filing System:

Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004
*Attorney for Defendant*

and by United States first-class mail, postage prepaid, on the following:

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004
*Of Counsel for Defendant*

_/s/_____
Glenn Schlactus

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
RONALD NEWMAN,                              )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )        Civil Action No. 1:07-cv-0492 RWR
                                            )
BORDERS, INC.                               )
                                            )
                and                         )
                                            )
BORDERS GROUP, INC.,                        )
                                            )
                Defendants.                 )
_____)

**[PROPOSED] ORDER**

Upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint, the

memoranda submitted in support and opposition thereto, and any hearing held on the matter,

IT IS HEREBY ORDERED that:

Defendants' Motion to Dismiss Plaintiff's Complaint is DENIED in its entirety.

SO ORDERED.


                                            _____
                                            RICHARD W. ROBERTS
                                            United States District Judge


DATE: _____

Notice to:

John P. Relman
Glenn Schlactus
RELMAN & DANE PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888 (o)
(202) 728-0848 (fax)

*Attorneys for Plaintiff*


Robert L. Wilkins
Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C.20004

*Attorneys for Defendant*