## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Ronald Newman,                          *

     Plaintiff                          *

v.                                      *        CASE #: 1:07-cv-00492-RWR

Borders, Inc., et al.,                  *

     Defendants                         *

\*      \*      \*      \*      \*      \*

### Borders, Inc. and Borders Group, Inc.'s ("Borders") Memorandum of Law in Support of their Reply to Plaintiff Ronald Newman's Memorandum of Points and Authorities in Opposition to Borders' Motion to Dismiss Plaintiff's Complaint

Borders, Inc. and Borders Group, Inc. (hereinafter "Borders" or "Defendants") hereby submit this Memorandum of Law in Support of their Reply to Plaintiff's Opposition to their Motion to Dismiss Plaintiff's Complaint, and state as follows:

Plaintiff's lengthy Memorandum of Points and Authorities in support of his Opposition to Borders' Motion to Dismiss misses the central point of Borders' argument: Plaintiff's factual allegations in his Complaint, and all reasonable deductions that can be drawn therefrom, fail to state a claim under 42 U.S.C. Section 1981. Reviewing Plaintiff's Complaint in the light most favorable to him, it is clear that there are no reasonable inferences that can be drawn from it that can or will establish several essential elements of a § 1981 claim. It is certainly not Borders' intent to force Plaintiff to prove his *prima facie* case in his Complaint or to subject him to a heightened pleading standard, as incorrectly stated in Plaintiff's Opposition (pp. 2, 3, 7, 19, 20, 22). To the contrary,

Borders is respectfully moving this Honorable Court to compel Plaintiff to live by his own extremely detailed factual story as alleged in his Complaint, which simply fails to state a claim under the ambit of § 1981.

I.    **PLAINTIFF OFFERS MORE THAN A "SHORT, PLAIN STATEMENT OF A CLAIM" AND PROVIDES THIS COURT WITH A SUFFICIENT BASIS FOR DISMISSAL OF HIS COMPLAINT**

In the penultimate paragraph of his Introduction to his Opposition on page 3, Plaintiff correctly asserts that a pleading must, at the very least, give "fair notice of the claim and the grounds upon which it rests," and relies on numerous cases, including primarily Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033 (D.C. Cir. 2003), in support of this premise. In Kingman, two neighborhood associations sued the Mayor and City Council of the District of Columbia, claiming that the Ward Redistricting Act of 2001 diluted the voting strength of certain predominantly African American wards in the District and citywide. The District Court dismissed all of the claims against the Mayor and City Council for several reasons, including failure to state a claim under Federal Rule 12(b)(6). The plaintiffs appealed, and the U.S. Court of Appeals for the District of Columbia affirmed the decision of the District Court on grounds other than failure to state a claim under Rule 12(b)(6) because, among other reasons, the plaintiffs failed to offer any triable issues before the District Court under Rule 56. Id. at 1043.

The Court in Kingman affirmed the status of the District of Columbia as a "notice pleading" jurisdiction under the Federal Rules.[1] Importantly, it also confirmed that the District of Columbia follows the well settled rule that it is "possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success

---

[1]  In the interest of brevity and respect for this Court's time, Borders will refrain from analyzing each of the numerous cases cited by Plaintiff on this point, as Borders does not dispute the sum and substance of Federal Rule 8(a).

on the merits impossible."  Id. at 1041 (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1116 (D.C. Cir. 2000)).[2]

Plaintiff's use of and reliance on Kingman, Sparrow and other caselaw from this Court actually provides this Court with the proper legal foundation for dismissing Plaintiff's Complaint.  Plaintiff boldly asserts that his Complaint plainly provides notice of a claim, "and much more" in his Opposition at p. 3.   It is the "much more" of Plaintiff's Complaint that is fatal to his §1981 claim.

As stated in Borders' original Motion to Dismiss, Plaintiff's Complaint alleges that he entered Borders to buy a book (Complaint, at ¶ 10), was approached by a woman who blocked his path (¶ 15) and who turned out to be a Borders security guard (¶¶ 15, 18), and was accused of carrying concealed Borders merchandise (¶¶ 16, 17).   The Borders security guard, Ms. White, stated that she saw Plaintiff place something in his bag (¶ 16).  Plaintiff emptied his bag on the customer service desk, revealing that it contained no Borders merchandise (¶ 21).  Plaintiff asked to see the store manager, and Ms. Spurlock, the store's supervisor, responded (¶¶ 20, 21).  Plaintiff requested that Ms. Spurlock and Ms. White retrieve the surveillance tape for him to view (¶21) ("Mr. Newman told Mr. [sic] Spurlock that he wanted to see the videotape and emptied his bag on the customer service desk").[3]

---

[2]  Sparrow was also cited by Plaintiff in his Opposition.
[3]  Amazingly, Plaintiff fails to include this important factual allegation in his Opposition, although it is plainly in his Complaint, as it serves as the basis for Ms. Spurlock and Ms. White leaving Plaintiff at the customer service desk.  In his Opposition, Plaintiff completely revises his story, and suggests that Ms. Spurlock and Ms. White forced him to remain at the customer service desk under the supervision of another Borders' employee while they viewed the alleged tape, and then lied about the contents of same.  However, the allegations in the Complaint clearly show that Plaintiff was in total control of this situation based on his capacity and decision to summon Ms. White and other Borders' personnel to contact a store manager, to tell Borders' personnel to retrieve a videotape from their store, to use a Borders' phone to call the police, to walk to alternate areas of the store, and to voluntarily remain in the foyer area for close to half an hour while waiting for the police.   No reasonable inferences can be drawn from these clearly stated factual

<u>Plaintiff</u> called the police (¶23), and voluntarily waited in the store for close to an hour (¶24, ¶30) because <u>he</u> felt it "imperative that he be cleared by a person of authority" (¶28).  It was only when the store was closing that he was asked to leave (¶29).  During the time he spent in Borders after his interaction with Ms. White, Plaintiff called the police from the Borders customer service desk (¶23), remained in the store for the police to arrive (¶28), walked to alternate areas of the store to wait with his friend (¶29), stood on the main floor of the store near the cash registers for "approximately twenty minutes" (¶29) and waited at the store for "approximately one hour" from the time of his interaction with Ms. White until the store closed (¶30).  He acknowledged that he never saw Ms. White again after their initial interaction (¶25), and that Ms. Spurlock left him and his friend to roam the store without further incident with her statement "what do you want me to do? I have a store to run" (¶27).

Plaintiff does not allege in his Complaint that he subsequently took a book to the counter and offered money or other consideration and was refused; he does not allege that he was told by Ms. Spurlock, Ms. White or anyone at Borders that he was not welcome at Borders on that evening or in the future; he does not allege that he was forced out of the store without the opportunity to complete his purchase; he does not allege that any racial epithets, remarks or stereotypical comments were uttered by any Borders employee, and he does not allege that he has since been refused service at any Borders store.  Borders concedes that these specific factual allegations are not necessarily required in the initial Complaint under Fed. Rule 8(a); however, if the plaintiff chooses to offer more than a "short and plain statement of the claim showing that the pleader is entitled to relief," and

---

allegations that would suggest that Borders in any way forced Mr. Newman to act against his will while in the store, remain in the store if he did not wish to do so, or leave the store without completing his purchase, if he so desired.  As will be shown <u>infra</u>, these facts are fatal to Plaintiff's complaint.

based on those allegations the court concludes that a plaintiff cannot demonstrate any set of facts entitling the plaintiff to relief, then the motion should be granted. <u>Hoyte v. American Nat'l Red Cross</u>, 439 F.Supp.2d 38, 41 (D.D.C. 2006).

In the case *sub judice*, Plaintiff not only provided Borders and this Court with notice of the claims against Borders, he told his full story in the Complaint. Accordingly, based on the facts as alleged, this Court can correctly conclude that no reasonable inferences or more definitive facts can be drawn from Plaintiff's allegations that will entitle him to relief under § 1981.

## II.  PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. SECTION 1981

Borders essentially made two arguments in support of its motion to dismiss the § 1981 claim – first, that Plaintiff's allegations were insufficient as a matter of law to show an intent to discriminate based on race, and second, that Plaintiff's allegations were insufficient as a matter of law to show an interference with his ability to make a purchase. Plaintiff's Opposition has failed to rebut these arguments in support of dismissal. Indeed, the cases cited by Plaintiff, when considered in conjunction with the detailed allegations in the Complaint, further demonstrate why this meritless case should be dismissed.

### A.      The Complaint Does Not Demonstrate That Borders Intended to Racially Discriminate Against the Plaintiff.

Plaintiff concedes that he must adequately plead intentional racial discrimination; but because of the deficiencies in his Complaint, he wants to disregard the leading case from this Court to determine whether he has done so. Plaintiff criticizes Borders' reliance on <u>Bray v. RHT, Inc.,</u> 748 F. Supp. 3 (D.D.C. 1990) but he does not conclude that <u>Bray</u> is bad law or inapplicable precedent, because he cannot. Instead, Plaintiff

attempts to diminish or outright dismiss the value of <u>Bray</u> by attacking the time period during which it was decided. (Plaintiff's Opposition, at p. 8). Indeed, <u>Bray</u> is still good law, and more importantly, the case offers one of the most thorough analyses of § 1981 claims in the commercial arena by this Court. <u>Bray</u> stands for the proposition that §1981 requires that the plaintiff must allege that he actually sought to make a purchase (i.e., made an "offer" in the contract sense) and was prevented from making said purchase because of his race. <u>Id.</u>, at 5.[4] In addition, the plaintiff "must allege some facts that <u>demonstrate</u> that his race was the reason for defendant's action." <u>Id.</u> (emphasis added). A plaintiff "must do more than simply 'invoke [his] race in the course of a claim's narrative [to] automatically be entitled to pursue relief'." <u>Jackson v. Tyler's Dad's Place</u>, 850 F. Supp. 53, 55 (D.D.C. 1994) (quoting <u>Bray</u>). Because Plaintiff's Complaint does not allege any facts demonstrating that his race was the reason for the actions allegedly taken by Borders, and because he has essentially done no more than "invoke his race" in this Complaint, the § 1981 claim should be dismissed.

Plaintiff fares no better under the "objectively unreasonable/markedly hostile" test that he posits in the alternative to <u>Bray</u>. According to Plaintiff, this line of cases "hold[s] that an inference of discrimination may be made in a § 1981 retail discrimination case where a plaintiff 'received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.'" Opposition at 11 (citing and quoting (<u>Christian v. Wal-Mart</u>, 252 F.3d 862, 872 (6th Cir. 2001) and <u>Callwood v. Dave and Buster's</u>, 98 F. Supp. 2d 694, 707 (D. Md. 2000)). However, Plaintiff concedes that it is inappropriate for § 1981 to be used to create a "general civility code" for shopping. Opposition at 14 (quoting <u>Curry v. District of Columbia</u>, 195 F.3d 660 n.13 (D.C. Cir.

---

[4] Borders will address further below why the Complaint fails to show an impairment of contract.

1999)).  Thus, Plaintiff concedes that the objectively unreasonable/markedly hostile test must be "sufficiently stringent" to provide a justifiable inference of discrimination. Opposition at 14.  Therefore, even under the objective unreasonable/markedly hostile test, Plaintiff acknowledges that his Complaint must show that the alleged conduct meets three elements to establish an inference of discrimination:  "(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination."  Opposition at 11-12 (quoting Callwood and Christian).

Accordingly, even if this Court adopts the objectively unreasonable/markedly hostile test in its analysis of Plaintiff's § 1981 claim, Borders respectfully submits that Plaintiff still fails to state a claim.  Although Plaintiff seeks to imply that the security guard "targeted" Plaintiff for surveillance and harassed him because of his race, Plaintiff's Opposition ignores key factual allegations that were plainly stated in his Complaint:  that Plaintiff entered Borders with a bag from another store and that Ms. White approached Plaintiff because she said that "she saw him place merchandise in his Urban Outfitters bag. . . ." (Complaint, ¶ 16).  Even taking these facts in the light most favorable to Plaintiff, there is nothing objectively unreasonable about a security guard targeting a customer for surveillance who enters Borders with a bag that could be used to hide merchandise – this is only common sense.  Furthermore, while the subsequent events alleged in the Complaint may have been unpleasant for Plaintiff, there was no conduct that was so profoundly contrary to Borders' financial interests, so far outside of

widely acceptable business norms, <u>and</u> so arbitrary to justify a rational inference of discrimination by a reasonable person.

Indeed, the only one of the cases cited by Plaintiff in support of the objectively unreasonable/markedly hostile test that deals with a factual scenario – surveillance in a retail store – somewhat similar to the case under review, supports dismissal. <u>See</u> <u>Garrett v. Tandy</u>, 295 F. 3d 94 (1st Cir. 2002). In <u>Garrett</u>, the plaintiff purchased items from a local Radio Shack store, and inquired about a scanner that was not in stock. <u>Id.</u> at 96. He had been monitored by several white store employees throughout his time at the store, with at least one store employee accompanying him throughout his visit. <u>Id.</u> After the plaintiff left the store with his purchases, the store manager discovered that a laptop was missing, called the local police, reported that the plaintiff was suspected of removing the computer from the premises, and provided the police with the name and address of the plaintiff. <u>Id.</u> The local police, realizing that the plaintiff lived outside of their jurisdiction, actually called police officers in another jurisdiction to report Radio Shack's initial concern, and officers from that district traveled to the plaintiff's home to inspect and investigate same. <u>Id.</u>

The plaintiff sued Radio Shack, claiming a violation of § 1981, among other counts. The district court dismissed plaintiff's § 1981 claim pursuant to Federal Rule 12(b)(6), and the appellate court affirmed the dismissal. Notably, the court concluded that "in a society in which shoplifting and vandalism are rife, merchants have a legitimate interest in observing customers' movements. So long as watchfulness neither crosses the line into harassment nor impairs a shopper's ability to *make and complete purchases*, it is not actionable under section 1981." <u>Id.</u> at 101 (emphasis added). The <u>Garrett</u> court

concluded that the visit from the police officers, after two calls to two separate districts, followed by an inspection of plaintiff's home, did not constitute "markedly hostile treatment" that impaired the plaintiff's ability to contract with the store or that constitute conduct that "a reasonable person would find objectively discriminatory". Id. at 102 n.5 (quoting Christian).

If the facts in Garrett were insufficient as a matter of law to create an inference of racial discrimination, then the facts alleged in this Complaint surely require dismissal.

B.     The Complaint Does Not Demonstrate That Borders Interfered With Plaintiff's Ability to Make A Purchase

Courts have plainly stated that a less than pleasant shopping experience cannot serve as the basis of a claim under § 1981 if the conduct did not interfere with the plaintiff's ability to make a purchase. Bentley v. United Refining Co. of Pennsylvania, 206 F. Supp. 2d 402, 406 ("mere delay, even coupled with discourteous treatment, poor service, or racial animus, is insufficient to sustain a § 1981 claim").[5] Courts have dismissed § 1981 claims when defendant's actions have degraded – but not denied – the goods or services plaintiff sought to purchase. Morris v. Office Max, 89 F.3d 411 (7th Cir. 1996) (no § 1981 violation when police stopped plaintiff, asked for identification, asked some questions and let the plaintiff go without further incident). Courts have also dismissed claims under § 1981 when the plaintiff's own actions served as the basis for their exit from a store without merchandise, Bagley v. Ameritech Corp., 220 F.3d 518 (7th

---

[5] By citing Bentley, Borders does not concede that Plaintiff was subjected to racial animus or discourteous treatment. This case is relied upon as illustrative of the well settled position that a delay in service is not necessarily a denial of an enumerated right under § 1981. Borders truly sympathizes with Plaintiff to the degree to which he felt his experience was less than adequate; however, it simply does not and cannot agree that he was denied the opportunity to complete his shopping experience at Borders, or that his experience at Borders was based on his race.

Cir. 2000), or when there was no actual contract loss, but a loss of possible future opportunities. <u>Phelps v. Wichita Eagle-Bacon</u>, 866 F.2d 1262, 1267 (10th Cir. 1989).

In the case under review, the four corners of Plaintiff's fact-rich and detailed Complaint, along with all reasonable inferences that can be drawn from same, clearly demonstrate that the applicable cases require dismissal of Plaintiff's § 1981 claim. It is clear, based on a liberal reading of the facts as alleged by Plaintiff, that his actions served as the basis for him leaving Borders without a book (¶¶ 23, 24, 28, 29) and that he ceased any attempt to further contract with Borders after his interaction with Ms. White (¶¶ 20, 21, 23, 24, 28, 29). Contrary to Plaintiff's assertions regarding the need for discovery (Opposition at 16), no additional discovery can further explain or clarify these detailed factual allegations, and no reasonable inferences can be drawn from them that would permit a trier of fact to conclude that Plaintiff was denied access to any rights enumerated by § 1981. Plaintiff concedes that <u>Bray</u> stands for the proposition that a § 1981 claim cannot be maintained when the allegations demonstrate a "refus[al] to make a purchase" (Opposition at 8 (quoting <u>Bray</u>), and that is precisely what happened here. Accordingly, Plaintiff's Complaint must be dismissed.

Plaintiff attempts to sidestep <u>Bray</u> and obfuscate the issue by arguing that the objectively unreasonable/markedly hostile cases materially change the analysis and require a different result. Not so. Indeed, the <u>Garrett</u> case, which was cited by the Plaintiff, demonstrates the point quite well. There, the court rejected the plaintiff's argument that his ability to contract with Radio Shack was impaired because he felt unwelcome to return the purchased items because of the visit to his home by the police. <u>Garrett</u>, 295 F.3d at 101-02. The court was persuaded by the fact that the plaintiff did not

allege that he took any steps to return to the store to modify his purchase contract; he did not allege that he notified Radio Shack of his desire to return the goods, nor did he attempt in any way to effectuate their return.  Id.    Accordingly, the court held that "we do not think that a customer can hold a merchant liable for denying the right to a refund that the customer never pursued." Id.

Similarly, in the case at bar, Plaintiff Newman can not hold Borders liable for denying him the right to the purchase of a book he "never pursued."  Plaintiff does not allege that any Borders' employee removed a book from his person, he does not allege that he notified any Borders' employee(s) of his continuing desire to purchase a book, nor did he attempt in any way to further effectuate a purchase.  After his interaction with Ms. White on a separate floor from the cash registers, he called the police (Complaint, at ¶23), and voluntarily waited in the store for close to an hour (¶24, ¶30) because he felt it "imperative that he be cleared by a person of authority" (¶28).  It was only when the store was closing that he was asked to leave (¶29).  Like the plaintiff in Garrett, Mr. Newman cannot stretch beyond his detailed pleading to create an inference of liability on the part of Borders.

As the Garrett court stated:

> [t]he amended complaint alleges no facts from which it fairly can be inferred that the indignity of a visit from the police somehow hindered the appellant from seeking to return the purchased wares. The naked assertion that a party might have elected to return a previously purchased product had he believed the environment to be more welcoming is simply too ephemeral a hook from which to hang a cause of action under 41 U.S.C. § 1981.

295 F.3d at 102.  Here, similar to Garrett, Plaintiff has made the "naked assertion" that he was not free to resume shopping (¶ 28) and that Borders prevented him from purchasing a

book (¶ 30). However, the Complaint clearly alleges that Plaintiff waited in the foyer area, near the cash registers, for close to half an hour while waiting for the police (¶ 24, 30) – out of the view or earshot of Ms. White or Ms. Spurlock – and there is no allegation that he ever once asked anyone if he could still purchase a book or that he expressed a desire to purchase a book. It can only be reasonably inferred from this clearly stated factual allegation that Plaintiff no longer wished or desired to purchase a book, but that he instead wanted to talk to the police about his shopping experience. Borders did not hinder his ability to purchase a book, as it is clear from the factual allegations in the Complaint that Borders permitted Plaintiff to remain on its premises undisturbed until the store closed. No additional discovery can or will change those specifically pled facts. As such, like the court in <u>Garrett</u>, this Honorable Court should dismiss Plaintiff's § 1981 claim pursuant to Federal Rule 12(b)(6).

Plaintiff fares no better under any of the other cases cited in his Opposition. All are distinguishable from the case at bar.

In <u>Hampton v. Dillard Department Stores, Inc.</u>, 247 F.3d 1091 (10th Cir. 2001), Ms. Hampton was shopping for an Easter outfit, accompanied by her niece and four children. A security guard claimed that he observed the niece hold a rolled cloth item in the fitting room, and place same in her jacket. Ms. Hampton proceeded to the counter, purchased several items, and received a coupon for a free perfume sample. The perfume sample was a promotional gift that was provided to all customers who actually purchased an item.

When Ms. Hampton arrived at the perfume counter to redeem her coupon, she was stopped by a security guard who placed himself between Ms. Hampton and the cash

register/counter, took her bag and emptied the contents on the counter and ejected her from the store, thus preventing her from redeeming the coupon.  Ms. Hampton sued, claiming a violation under § 1981, false imprisonment, and numerous additional counts. A jury concluded that Dillard's actively prevented Ms. Hampton from redeeming a coupon that she was entitled to redeem based on her prior purchase,[6] denied her the opportunity to acquire the perfume, and awarded damages.  Id., at 1101.  Significantly, the court dismissed the claims of the African American woman who was shopping with Ms. Hampton who did not make a purchase and was ejected, because she had not attempted to make a purchase.  Id. at 1117-1118      The factual allegations of the successful plaintiff in Hampton are markedly different from those in Plaintiff's Complaint in three very important ways: (1) Plaintiff Newman does not and cannot demonstrate that he actually made himself available to pay for and receive any goods or services and was denied the opportunity to complete a transaction; (2) Plaintiff Newman does not and cannot demonstrate that he was prevented from purchasing any book because of or subsequent to his interaction with Ms. White, and (3) Plaintiff Newman does not and cannot demonstrate that any actions by Borders' personnel forced him to discontinue his attempt to purchase a book until such time as the store closed. Accordingly, Plaintiff's use of Hampton is misplaced, and should not be considered as persuasive by this Court.[7]

In Christian v. Wal-Mart, 252 F.3d 862 (6th Cir. 2001) and Callwood v. Dave and Buster's, 98 F. Supp. 2d 694 (D. Md. 2000), cited by Plaintiff as the new standard-

---

[6]  The court defined the redeemable coupon as an "option contract." Id. at 1104
[7]  Parenthetically, Borders rejects any implication that Hampton or any of the other cases cited by Plaintiff, state a "proper standard" that is more appropriate than Bray and that must be used when assessing § 1981 claims.

bearers for analyzing § 1981 cases, both sets of plaintiffs were clearly denied the opportunity to establish a contractual relationship with the defendant retailers. For example, in <u>Christian</u>, the plaintiff, a suspected shoplifter, was physically removed from the defendant's store without any opportunity to purchase the items that had been placed in her shopping cart, thus denying her the opportunity to contract with the store. 252 F.3d at 866. In <u>Callwood</u>, the successful plaintiffs were those who were physically escorted from the defendant store after being seated and preparing to order, preventing them from making a contract (food order) with the restaurant. 98 F.Supp.2d at 700. Significantly, the court in <u>Callwood</u> dismissed the claims of another group of plaintiffs who were upset by their treatment at the same restaurant, but voluntarily exited the restaurant before ordering any food. <u>Id</u>.

The facts in these two cases, and other cases cited by Plaintiff as persuasive, are substantially different from those alleged in great detail by Plaintiff Newman, who asserted that he asked to see a store manager after being approached by Ms. White (Complaint, at ¶¶ 20, 21), requested that Ms. Spurlock and Ms. White retrieve the surveillance tape for him to view (¶21), called the police (¶23) and voluntarily waited in the store for close to an hour (¶24, ¶30) without once seeking to complete his purported transaction. As stated by Mr. Newman in his Complaint, it was only when the store was closing that he was asked to leave (¶29), and not before. The court in <u>Callwood</u> instructively offered an additional element to its analysis of § 1981 claims, stating that a plaintiff must make "[himself] available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided." <u>Id</u>., at 707. In the case *sub judice*, Plaintiff, by calling the police

and waiting in the foyer area without attempting to complete a purchase, did not make himself available to receive and pay for goods or services from Borders. Accordingly, under either a <u>Bray</u> analysis or a <u>Christian</u>/ <u>Callwood</u> analysis, Plaintiff's factual allegations fail to state a claim under § 1981 and must be dismissed.[8]

### III.    PLAINTIFF FAILS TO STATE A CLAIM OF NEGLIGENT SUPERVISION

As stated more fully hereinabove, Borders agrees that all that is required under federal Rule 8(a) is a "short, plain statement" to provide a defendant with notice of claims against it. However, it is clear that Plaintiff has decided to do more than offer a simple notice pleading, and instead chose to tell his full story in his Complaint, alleging facts that render success on the merits impossible. <u>Sparrow v. United Air Lines, Inc</u>., 216 F.3d at 1116.

In his recitation of the Count for Negligent Supervision, Plaintiff simply realleges all of the allegations set forth in the Complaint, and states that they constitute negligent supervision (Complaint, at ¶ 43). The District of Columbia recognizes a cause of action for negligence in the supervision (or training or management) of employees under limited and specific circumstances. <u>See, e.g</u>., <u>Parker v. Grand Hyatt Hotel</u>, 124 F.Supp.2d 79, 89 (D.D.C. 2000). To establish a claim of negligent supervision, the plaintiff must "'show that an employer knew or should have known its employee behaved in a dangerous or

---

[8] Plaintiff seems to believe that Borders' reliance on <u>Williams v. Staples, Inc</u>., 372 F.3d 662, 667-68 (4th Cir. 2004) somehow undermines the validity of its Motion because African Americans were "not outright prevented from making a purchase." (Opposition, at p. 19). This is inaccurate. The court in <u>Williams</u> determined that the African American plaintiff was in effect prevented from making a purchase in a manner similar to whites, because he was precluded from using an out of state check to make said purchase, while white customers were permitted to use out of state checks. <u>Williams</u> was cited for the proposition that a tangible attempt to contract must be made in order to sustain a § 1981 claim. (Motion to Dismiss, at p. 7.) Indeed, the plaintiff in <u>Williams</u> actually sought to enter into a contract by taking an item to the cash register and attempting to exchange tender and purchase it, something that Plaintiff Newman did not.

otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" <u>Mitchell</u>, 274 F.Supp.2d 33, 51 (D.D.C. 2003) (quoting <u>Giles v. Shell Oil Corp.</u>, 487 A,2d 610, 613 (D.C. 1985)).  Both elements - prior knowledge and a failure to act on same - are required.  Under the detailed facts as alleged by Plaintiff, it cannot be reasonably inferred that Borders knew or should have known that Ms. White would allegedly witness Mr. Newman place merchandise in his bag, or approach him regarding same in an incompetent or less than professional manner, as alleged by Plaintiff.  Indeed, as stated more fully above in its discussion of <u>Garrett</u>, Borders has the right to expect its security officers to take reasonable steps to prevent the removal of Borders' property.  Such an expectation is not improper, and such actions by store security are not a product of incompetence. There are no allegations in Plaintiff's Complaint that Ms. White followed him around the store, asked him questions throughout his shopping experience, or did anything other than approach him as alleged in the Complaint.  Clearly, Plaintiff was not even aware of Ms. White's presence in the store until he was approached by her (Complaint, at ¶ 15).   Reading the Complaint in a plaintiff-friendly manner, no reasonable inferences can be drawn from these facts to suggest that Ms. White's actions were based on incompetence, or somehow violative of any Borders policy.  The same holds true for Ms. Spurlock.  Adopting, in part, the court's logic and language in <u>Garrett</u>, this factual pleading is "too ephemeral a hook" from which to hang a negligent supervision claim.   Consequently, Plaintiff's negligent supervision claim must be dismissed.

IV.    **PLAINTIFF CONCEDES THAT THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION**

Plaintiff fails to address Borders' position as stated more fully in its Motion to Dismiss that, in the event the Court grants Defendants' Motion to Dismiss as to count one and allows count two to remain, the Court should not retain jurisdiction over the second count, which is a common law claim asserted under the laws of the District of Columbia. It is well established that a court "may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); See also, United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (court should dismiss supplemental state law claims when federal claims are dismissed before trial) See also, Griffin v. Acacia Life Ins. Co., 151 F. Supp.2d 78, 81 (D.D.C. 2001) Accord, Robinson v. District of Columbia, 403 F. Supp.2d 39, 57 (D.D.C. 2005). If this Honorable Court is inclined to grant Defendants' Motion as to Plaintiff's first count but not the second, Defendants respectfully request that it decline to further exercise jurisdiction over count two of Plaintiff's Complaint. Having received no response from Plaintiff on this issue, Borders respectfully submits that the Plaintiff has conceded it.

## VI.    <u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that the Complaint of

Plaintiff be dismissed with prejudice, with costs assessed against Plaintiff.

Respectfully submitted,

<u>        /s/ Robert L. Wilkins        </u>
Robert L. Wilkins (Bar No. 429065)
Craig A. Thompson (Bar No. 500168)
Venable, LLP
575 7th Street, NW
Washington, D.C. 20004
202-344-4058

*Attorneys for Defendants*

## <u>Certificate of Service</u>

I HEREBY CERTIFY that on this <u>16th</u> day of <u>May</u> 2007, a copy of the foregoing Reply to Plaintiff Ronald Newman's Opposition to Borders' Motion to Dismiss Plaintiff's Complaint, and Proposed Order were served on the following counsel by electronic filing:

> John P. Relman
> Glenn Schlactus
> Relman & Dane PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, D C 20036
>
> *Attorneys for Plaintiff*

<u>      /s/ Robert L. Wilkins        </u>
Robert L. Wilkins

#317561v3/BA2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Ronald Newman,** | * | |
| **Plaintiff** | * | |
| **Vs.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants** | * | |

\*          \*          \*          \*          \*          \*

## <u>ORDER</u>

Upon due consideration of Defendants Borders, Inc. and Borders Group, Inc.'s

Motion to Dismiss Plaintiff's Complaint, Plaintiff's response thereto, and any hearing on

the matter, it is this _____ day of _____ hereby

**ORDERED** that Defendants Borders, Inc. and Borders Group, Inc.'s Motion to

Dismiss Plaintiff's Complaint is hereby **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**

_____
JUDGE
United States District Court for the
District of Columbia

#317799/BA2