**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

RONALD NEWMAN,                    )
                                  )
            Plaintiff,            )
                                  )
    v.                            )          Civil Action No. 1:07-cv-0492-RWR
                                  )
BORDERS, INC.                     )
                                  )
            and                   )
                                  )
BORDERS GROUP, INC.,              )
                                  )
            Defendants.           )
_____)

**PLAINTIFF RONALD NEWMAN'S**
**MOTION TO COMPEL DISCOVERY RESPONSES**

Pursuant to Federal Rule of Civil Procedure ("Rule") 37(a)(3)(B), Plaintiff Ronald

Newman respectfully moves this Court for an order compelling Defendants Borders, Inc. and

Borders Group, Inc. (collectively, "Borders") to produce additional documents in response to

Plaintiff's document requests and to provide additional responses to Plaintiff's interrogatories.

Defendants refuse to provide discovery that is central to this case based on boilerplate objections

and an exceedingly narrow and unjustified definition of relevance.

This case is about racial profiling at a Borders bookstore in Washington, D.C.  It is

brought by Ronald Newman, an African-American public school teacher.  Mr. Newman alleges

that Defendants violated 42 U.S.C. § 1981 by accusing him of shoplifting and denying him the

right to purchase a book because of his race. *See, e.g.*, Compl. ¶¶ 1-3; Mem. Op. & Order (Jan.

22, 2008) (Doc. 11) ("MTD Op.") at 1, 4-8 (denying motion to dismiss section 1981 claim).

Mr. Newman went to the bookstore on December 2, 2005, to buy a gift for his nephew.

*See* Compl. ¶¶ 2, 5, 10.  Because of his race, he was targeted for surveillance as soon as he entered the store by a security guard named Darlene White.  *See id.* ¶¶ 11-14, 19.  Mr. Newman selected a book and proceeded toward the cash registers to pay for it, but was stopped by White. *See id.* ¶¶ 13-14.  White accused him of stealing without any legitimate basis.  *See id.* ¶¶ 16, 19. Mr. Newman quickly demonstrated his innocence to the guard and a manager, Pat Spurlock, but they refused to believe him.  *See id.* ¶¶ 21-22.  Over the course of an hour, Spurlock and White refused to clear him, told him lies, and refused to answer his questions.  *See id.* ¶¶ 25-28, 30. Spurlock eventually instructed Mr. Newman to leave the store and he was unable to buy the book.  *See id.* ¶¶ 29-30.  Throughout the confrontation, Spurlock and White acted in clear violation of Borders' own policies.  *See id.* ¶¶ 16, 31.

The discovery that Defendants have failed to provide is central to this case.  The documents at issue concern:

- Spurlock and White;

- a Borders supervisor, Robert Fath, who was also directly involved in the events at issue;

- other Borders personnel who were working in the same store on the evening of the events at issue and who likely have discoverable information;

- security records regarding the day of the events at issue;

- the identity of people who made purchases at the same store on the evening of the events at issue and who likely witnessed the events; and

- other allegations of profiling and other forms of discrimination by Borders based on race, color, or national origin.

The interrogatories at issue concern the final category of information set forth immediately above.

Defendants' view of discovery regarding these topics cannot be justified.  Apart from anti-shoplifting and other manuals, corresponding instructional materials, eight pages created by

defense counsel for purposes of this case, a letter from Plaintiff's counsel, and an insurance

policy, Defendants have produced only seven pages of documents.  Defendants have interposed

relevance objections to Plaintiff's document requests and interrogatories that essentially boil

down to the proposition that (aside from manuals and instructional material) there are only two

categories of discoverable information:  that which is explicitly about (1) the confrontation

between Mr. Newman and Ms. White, and (2) other instances of racial profiling at the same store

(of which Defendants contend there is none).  Defendants also assert a series of other boilerplate

objections.

Defendants' tightfisted approach to discovery is directly at odds with the "'liberal

discovery rules'" with which they are required to comply.  *Stokes v. Cross*, 327 F.3d 1210, 1215

(D.C. Cir. 2003) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  Plaintiff

therefore respectfully asks the Court to compel Defendants to respond in full to Plaintiff's

discovery requests concerning the topics identified above within fifteen days.  Pursuant to Rule

37(a)(5)(A), Plaintiff also moves for an award of fees and costs incurred in making this motion.[1]

## NATURE OF THE CASE

Mr. Newman is an African-American teacher at the Duke Ellington School of the Arts in

Washington, D.C.  *See* Compl. ¶¶ 1, 5.  He alleges that on December 2, 2005, he went to the

Borders bookstore at 14th and F Streets, Northwest, in Washington, D.C. (the "14th Street

Borders") for the specific purpose of buying a book as a gift for his nephew.  *See id.* ¶¶ 2, 10, 12.

Newman was accompanied by an African-American friend and carried a bag from a store he had

shopped at earlier that night.  *See id.* ¶¶ 10, 11.  Their actions, manner, and dress were typical of

customers in a bookstore, and they did nothing to draw attention to themselves.  *See id.* ¶¶ 11-14,

---

[1]     As explained herein, undersigned counsel has conferred in good faith with defense counsel in an
unsuccessful effort to obtain the discovery that is the subject of this motion without court action.  *See infra* at 7; Ex.
1 (Certification of G. Schlactus (Aug. 12, 2008)).

19.  Mr. Newman chose a book and, carrying the book in plain view, walked toward the cash registers to pay for it.  *See id.* ¶¶ 2, 13, 14.

A woman later identified as Borders security guard Darlene White physically blocked Newman's path to the cash registers.  *See id.* ¶ 15.  White accused Newman of shoplifting.  *See id.* ¶ 16.  She was hostile and aggressive, and asserted that Newman had placed store merchandise in his bag.  *See id*.  White admitted that she had been watching Newman since he first entered the store and claimed that a security videotape showed him stealing.  *See id.* ¶ 19.  Another Borders employee who was observing the confrontation, Robert Fath, confirmed in a written "Incident Report" that White told Newman that "the action had been caught on the security camera tape."  Ex. 2 at BI000002.  (During the course of meet and confer, defense counsel stated that the security recording could not be located.)  By confronting Newman, White violated store policy regarding suspected shoplifting.  *See id.* ¶¶ 16, 31.  In fact, she was written up for these violations.  Ex. 2 at BI000005.  The write-up states that White's actions "could lead to legal issues."  *Id.*

Newman asked to see the store manager and Pat Spurlock, the manager for inventory, was summoned.  *See* Compl. ¶ 20.  Spurlock knew that the guard had violated store policy, but violated it herself by failing to end the confrontation immediately and permit Newman to make his purchase unimpeded.  *See id.* ¶ 31.

Newman proved that his bag contained no Borders merchandise by emptying it in front of Spurlock and White.  *See id.* ¶ 21.  This is confirmed by Fath.  *See* Ex. 2 at BI000002.  This should have ended the incident, but Spurlock and White refused to accept that Newman had done nothing wrong.  *See* Compl. ¶¶ 21, 22, 30.  They likewise failed to indicate in any way that the incident was over or that Newman was free to go about his business.  *See id.* ¶ 22, 30.  It was

apparent that he was not. *See id.* ¶ 24. Another store employee stayed with him, and White and Spurlock left to view the security tape. *See id.* ¶¶ 22, 24; Ex. 2 at BI000002.

While waiting, Newman called the police because he did not know what to do and believed the police would confirm his innocence. *See* Compl. ¶ 23. Before leaving, Spurlock had refused to respond when Newman asked if the store would call the police. *See id.*

Spurlock returned after watching the videotape, which could not have been incriminating. *See id.* ¶¶ 19, 25. Nonetheless, she still refused to clear Newman. *See id.* ¶¶ 25, 27, 30. To no avail, he asked to see the videotape. *See id.* ¶ 26. Spurlock told different stories about why she could not show it to him, at one point even claiming that she could not see it herself. *See id.* Instead of correcting White's discriminatory actions, Spurlock ratified and furthered those actions. *See id.* ¶¶ 26, 31.

Newman even told Spurlock that he believed he was the victim of racial profiling and asked Spurlock what he was supposed to do, but she was callously indifferent to his situation. *See id.* ¶ 27. Spurlock never even apologized, even though company policy required her to do so. *See* Ex. 2 at BI000004 ("I did not apologize"); Ex. 3 at BI000026 (policy). Spurlock instead said, "What do you want me to do? I have a store to run," and left. *See* Compl. ¶¶ 27, 28. With good reason, Newman feared that he would be stopped if he tried to leave the store and believed that he was not permitted to continue shopping. *See id.*

Newman therefore waited for the police, in plain view of store personnel. *See id.* ¶ 29. After twenty minutes, Spurlock told him to leave. *See id.* He did, approximately one hour after White first stepped in his path. *See id.* ¶¶ 29, 30. Newman was never able to buy the book. *See id.* ¶ 2, 30. Fath's Incident Report indicates that the police finally arrived after Newman was ejected from the store, but another employee, Phoenix Robles, sent the police away. *See* Ex. 2 at

BI000002.

Newman alleges that he was treated by Borders in this manner because of his race, and that white customers in the store were not similarly treated.  *See* Compl. ¶¶ 1, 2, 19, 27, 33, 34; MTD Op. at 6.

### PLAINTIFF'S EFFORTS TO OBTAIN DISCOVERY FROM BORDERS

**A.**     <u>**The Limited Discovery Provided By Defendants**</u>

Plaintiff served document requests and interrogatories on Defendants on May 23, 2008. *See* Exs. 4-7.[2]  Defendants served objections and responses on June 23, 2008.  *See* Exs. 8-11.[3] Defendants simultaneously produced a total of ninety-five pages of documents.  All but eight of these pages were from manuals concerning shoplifting or instructional materials concerning shoplifting that largely repeated the material from the manuals.  The eight pages consist of:

- a one-page Incident Report completed by Darlene White about the incident with Newman;

- a two-page Incident Report completed by Robert Fath about the incident with Newman;

- a short e-mail sent by Pat Spurlock to 5 other Borders employees about the incident with Newman;

- a two-page write-up of White criticizing her performance during the incident with Newman;

- a one-page diagram of the store as it existed during the incident that omits one of its two main levels; and

---

[2]     Excerpts from (4) Plaintiff's First Set of Requests for Production of Documents to Defendant Borders, Inc.; (5) Plaintiff's First Set of Requests for Production of Documents to Defendant Borders Group, Inc.; (6) Plaintiff's First Set of Interrogatories to Defendant Borders, Inc.; and (7) Plaintiff's First Set of Interrogatories to Defendant Borders Group, Inc.

[3]     Excerpts from (8) Defendant Borders, Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Production of Documents; (9) Defendant Borders Group, Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Production of Documents; (10) Defendant Borders, Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories; and (11) Defendant Borders Group, Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories.

- a one-page chart (created by Borders for discovery) listing the names and titles of four people holding store-level managerial positions on the day of the incident.

*See* Ex. 2.

Plaintiff promptly sent Defendants a letter on July 3, 2008, concerning deficiencies in their discovery responses. *See* Ex. 12. Plaintiff requested a reply by July 11. *See id.* at 7. Defendants asserted that they needed additional time to reply and had scheduling conflicts, and a telephonic meet and confer was scheduled for July 21. Defendants then rescheduled for July 28.

Counsel conferred by telephone that day and committed to exchanging supplemental discovery material on August 1, 2008. *See* Ex. 13 at 1 (Letter from G. Schlactus to C. Thompson & T. Saunders (July 29, 2008)) (memorializing July 28 meeting). Plaintiff complied with this agreement, but Defendants did not. Defendants instead waited until August 7, 2008, to produce additional documents and supplemental written responses renewing and revising their objections to the document requests. *See* Exs. 14-15. They simultaneously produced eighty-nine additional pages of documents, all of which appear to be excerpts from manuals or other instructional materials. Defendants produced seven additional pages on August 11, 2008, that were created by defense counsel for discovery and identify Borders personnel who had managerial responsibility for or were on duty at the 14th Street Borders on the evening of the events at issue. Defendants supplemented their interrogatory responses on August 12, 2008, renewing and revising their objections. *See* Exs. 21-22. On August 13, 2008, Defendants permitted Plaintiff to photocopy an insurance policy at defense counsel's offices.

Counsel conferred again by telephone on August 11, 2008. Plaintiff confirmed that, apart from very limited discovery not at issue in this motion, Defendants do not have additional discovery materials that they currently intend to disclose.

**B.**     **<u>The Substantial Discovery That Defendants Refuse to Provide</u>**

The discovery that Defendants have failed to provide, and that is the subject of this motion, fall into the six categories described below.  Recognizing that some of these categories may encompass routine material that is irrelevant, Plaintiff has made clear that he does not seek such material.  *See* Ex. 12 at 1 ("to the extent we can jointly identify particular, narrow categories of documents encompassed within a broader category of documents that must otherwise be produced in full – such as 401(k) forms contained in a personnel file – we are amenable to discussing their exclusion if it is plain that they are irrelevant").  Plaintiff repeated this offer in the July 28 meet and confer teleconference.

### 1.    Documents Regarding Darlene White and Pat Spurlock

Plaintiff seeks all documents related to Darlene White and Pat Spurlock, Borders' central agents in the events at issue.  *See* Exs. 4, 5 at Requests 3, 4.  Defendants have refused to produce any documents in response other than the few pages described above and a document created by counsel.  *See* Exs. 2, 19.  They have not even produced the completed written security exam that, according to Borders' own manual, White was required to take before beginning her job with Borders.  *See* Ex. 3 at BI000035.  In addition to providing information of substantive importance, these documents are necessary to aid in locating White and Spurlock so that Plaintiff can depose them (neither is still employed by Borders).

Defendants assert that they do not have to produce any other responsive documents because White and Spurlock are not defendants, Plaintiff's negligent supervision claim was dismissed, and, purportedly, Spurlock was not "an actor in the alleged conduct that forms the basis of plaintiff's racial profiling claim."  *See* Ex. 16 at 1-2, 3.  They also assert a series of boilerplate objections that are asserted throughout their written discovery responses – that the document requests are "overbroad, unduly burdensome, [and] harassing."  Exs. 14, 15 at

8

Responses 3, 4.

### 2.    Robert Fath's Personnel File

Plaintiff does not seek all documents related to Robert Fath because it does not appear, at this juncture, that Fath actively participated in the violation of Plaintiff's rights under section 1981. Plaintiff does seek his personnel file, however, because his own Incident Report demonstrates that he interacted with Newman during the incident and closely observed the events at issue. *See* Ex. 2 at BI000002. This includes observing Spurlock and White while they were viewing the videotape that White claimed was incriminating. *See id.*

The only documents related to Fath that Borders has produced are the two Incident Reports, Spurlock's e-mail about the incident, and a document created by counsel. *See* Exs. 2, 19. Borders again objects to producing additional responsive documents on grounds of relevance and that the document request is "overbroad, unduly burdensome, [and] harassing." Exs. 14, 15 at Response 5; Ex. 16 at 3.

### 3.    Documents Regarding Other Borders Personnel On Duty at the 14th Street Borders the Evening of the Events At Issue

Plaintiff has requested more limited documents regarding the other Borders personnel who were working at the 14th Street Borders after 4 p.m. on December 2, 2005.[4] Though not direct participants in Borders' confrontation with Newman, these employees are likely to have observed the incident or parts of the incident[5]; discussed the incident with White, Spurlock or Fath; overheard White, Spurlock or Fath discussing the incident; observed White's or Spurlock's demeanor on the evening of the incident; and/or observed whether white customers were treated

---

[4]    Borders identified these employees for the first time on August 11, 2008, in response to Plaintiff's May discovery requests. There appear to be no more than six such employees.

[5]    Indeed, the few pages produced by Defendants indicate that another employee had a discussion with the police, who Newman had summoned, *see* Ex. 2 at BI000002 (Phoenix Robles), and that another witnessed the incident, *see id.* at BI000001 (Kim Stevens).

similarly to the manner in which Newman was treated.  These employees are also likely to have information regarding any discriminatory prejudices held by White or Spurlock, White's and Spurlock's credibility, and the fate of the security video that White claimed was incriminating.

With respect to this set of employees, Plaintiff narrowed his document requests (request numbers 5 and 8) during the course of meet and confer to "any documents from these employees' personnel file suggesting in any way that they ever acted dishonestly, gave an untruthful statement, or engaged in discriminatory or retaliatory behavior."  *See* Ex. 12 at 2. Borders has not produced any such documents and objects to doing so on the grounds of relevance and that the document request is "overbroad, unduly burdensome, [and] harassing." Exs. 14, 15 at Responses 5; Ex. 16 at 3.

### 4.    Documents Regarding the Identification of Other Witnesses

Plaintiff seeks to identify additional witnesses through Document Request 7, which requests "[d]ocuments sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 p.m., including but not limited to credit card records and Borders Rewards records."  *See* Exs. 4, 5.  Such shoppers may have observed the incident at issue and may also have information regarding how Borders treated white customers on the evening in question.

Borders refuses to produce any such documents.  It again objects on grounds of relevance and that the document request is "overbroad, unduly burdensome, [and] harassing."  Exs. 14, 15 at Response 7.  Defendants elaborate on their burdensomeness objection by noting that purchases may have been made by cash, credit, or online.  *See* Ex. 16 at 3.  Borders also objects on the basis of unspecified privacy and consumer protection laws and its unspecified privacy policies. *See* Exs. 14, 15 at Response 7.

10

### 5.    Security Records Regarding the Evening of December 2, 2005

Plaintiff's Document Request 6 seeks "[a]ll records related to security at the 14th Street Borders on December 2, 2005, after 4 p.m., including but not limited to surveillance recordings, logs, and memoranda." Exs. 4, 5. Defendants do not assert specific objections to this request and only point to their general objections, *see* Exs. 14, 15 (response 6), but have produced only the few pages specified above and manuals and instructional materials related to security. They have not produced, for example, any logs identifying the personnel responsible for maintaining or destroying the security recordings that were made on the evening in question, even though instructional material Borders produced states that a log of such activity should be maintained.[6] The missing logs strongly suggest that discoverable documents have not been produced.

### 6.    Documents and Interrogatories Regarding Other Incidents of Racial Profiling and Other Forms of Discrimination

Through Document Requests 14, 15, and 16 and Interrogatories 1 (to Borders Group, Inc.) and 2 (to Borders, Inc.), and as further narrowed herein, Plaintiff seeks discovery regarding other allegations of racial profiling at the Borders stores in the same managerial district as the 14th Street Borders and allegations of all kinds of discrimination (*e.g.*, employment discrimination) based on race, color, or national origin at the three Borders stores in Washington, D.C.[7] *See* Exs. 4-7. Defendants have not provided any discovery in response.

During the parties' July 28 meet and confer, Defendants objected to producing any such information except with respect to allegations of racial profiling at the 14th Street Borders. *See*

---

[6]    The manual states that "31 days of videotape must be on hand or archived," Ex. 17 at BI000147, and that the store should "[k]eep a log near the tapes to have the opening manager or supervisor [] sign off daily noting the time the tape was changed and any problems," Ex. 18.

[7]    Borders' domestic stores are divided into nine regions, and each region is divided into districts. *See* Ex. 20 at BI000173. A Regional Loss Prevention Manager ("RLPM") and a Loss Prevention Specialist ("LPS") were responsible for managing the 14th Street Borders' security personnel. *See* Ex. 19. It appears that the RLPM and LPS were both responsible for security at multiple stores.

Ex. 13 at 3-4.  Their supplemental written responses, served on August 7 and 12, effectively

expand their objections even more.  Borders now states that "there have been no lawsuits, agency

charges, or attorney demand letters alleging 'racial profiling' related to the 14th Street Borders

store."  Exs. 14, 15 at Responses 14-16; Ex. 21 at Response 2; Ex. 22 at Response 1.  Plaintiff's

discovery requests are not limited to allegations that take one of these three forms, however.

Similarly, Borders now restricts its response to an unspecified "reasonable time period prior to

the events at issue," *id.*, even though the discovery requests specify a time period of January 1,

2004, to the present.  *See* Exs. 4-7 at 2.

      In addition to objecting based on relevance, Defendants again object that the document

requests are "overbroad, unduly burdensome, [and] harassing."  They also object again based on

unspecified privacy and consumer protection laws and unspecified privacy policies  Exs. 14, 15

at Responses 14-16.

### C.     Defendants' Refusal To State Whether They Are <br>        Withholding Documents Based On Their Objections

      In addition to objecting to Plaintiff's discovery requests as described above, Defendants

are also deliberately obscuring whether or not they have additional documents that are

responsive to several document requests.  They do so by stating eleven times in their August 7

supplemental written responses that they have "produced all <u>relevant</u>, non-privileged documents

responsive to this Request."  Exs. 14, 15 at Responses 1, 3-6, 8, 10, 11, 14-16 (emphasis added).[8]

By inserting the word "relevant" and applying an unjustifiably narrow definition of relevance,

Borders is refusing to tell Plaintiff whether additional documents exist that are responsive to

these requests.  Borders does so both with respect to categories of documents discussed above

(documents about Pat Spurlock; Darlene White; other personnel who were on duty; security;

---

[8]      Responses 14 through 16 are phrased as "will produce," but Defendants have confirmed that they are not withholding any documents that they intend to produce.

other allegations of racial profiling and other types of discrimination) and other categories
(documents about the Plaintiff; policies, procedures, training, guidance, and instructions
regarding security, shoplifting, customer relations, and discrimination).

Comparing these eleven responses to another makes it apparent that this is a deliberate
tactic by Borders. When asked to produce "[a]ll documents related to any allegation, claim or
defense asserted in your Answer," Borders states "that it is not withholding any responsive, non-
privileged documents." *Id.* at Response 20. Thus, in answering a discovery request that
encompasses documents that Borders believes support its defenses, it omits the word "relevant."
But with respect to documents that may support Plaintiff's case, Borders is engaging in wordplay
to obscure the existence of – and try to avoid producing – such documents.

## ARGUMENT

The Federal Rules of Civil Procedure provide a "'liberal opportunity for discovery,'"
*Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 64 (D.D.C. 2006) (Roberts, J.) (quoting *Kingman Park
Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003)), and encompass a "broad
presumption . . . in favor of discovery," *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d
1336, 1349 (D.C. Cir. 1984). When a party fails to disclose documents or answer an
interrogatory in response to a Rule 33 or Rule 34 discovery request, the Court may compel
disclosure under Rule 37(a)(3)(B). Plaintiff's discovery requests described above are appropriate
under the Federal Rules and Defendants should be compelled to supplement their document
production and interrogatory responses accordingly.

### A.     Documents Regarding Darlene White and Pat Spurlock

Darlene White and Pat Spurlock were Defendants' central agents in their confrontation
with Newman. They are the individuals who discriminated against, stopped, detained, lied to,

13

refused to clear, and ejected Newman, in violation of his rights under 42 U.S.C. § 1981.

Plaintiff's request for all documents related to these two individuals is therefore proper.

In *Bregman v. District of Columbia*, 182 F.R.D. 352 (D.D.C. 1998), the plaintiff alleged that a police officer falsely arrested and kicked him. *See id.* at 354. The Court ordered the District of Columbia – the officer's employer – to produce the officer's personnel, disciplinary, and training files, *id.* at 356, arrest record, *id.* at 356-57, and "any other files on [the] officer maintained by the District of Columbia," *id.* at 358-59. Like the police officer in *Bregman*, White and Spurlock are the employees whose actions are challenged as violating the law. All documents concerning them maintained by their employer, Borders, are therefore discoverable.

In the course of meet and confer, Defendants attempted to distinguish *Bregman* on the ground that the police officer, in addition to his employer, was a named defendant. They rely on the Court's statement in the course of rejecting an overbreadth objection – "he is, after all, a defendant and what his personnel files reflect about his behavior as a police officer and his training is at the very heart of the lawsuit." *Id.* at 356. Nothing in the opinion suggests that the reference to his status as a defendant was more than an observation. Likewise, the Federal Rules do not suggest that the legitimacy of a discovery request turns on whether it is about a party or a party's employee. Rather, *Bregman* and the Federal Rules demonstrate that the scope of permissible discovery is based first and foremost on relevance to the parties' claims and defenses. *See* Fed. R. Civ. P. 26(b)(1). What matters is that information about White and Spurlock "is at the very heart of" Newman's lawsuit. *Bregman*, 182 F.R.D. at 356; *see also Waters v. United States Capitol Police Bd.*, 216 F.R.D. 153, 158 (D.D.C. 2003) ("an agency or business organization can act only through its agents and employees"). This makes the information discoverable.

In objecting to producing all documents related to Spurlock, Defendants also asserted that Spurlock is not central to this case because Plaintiff's negligent supervision claim was dismissed. Defendants' objection is based on a self-serving and overly narrow reading of the complaint. Contrary to that reading, Newman alleges that Spurlock ratified and furthered the discriminatory acts taken by White, even after Newman told Spurlock that he believed he was being subjected to racial profiling.  In addition, Spurlock is the one who ejected Newman from the store without permitting him to buy the book he had selected.  Spurlock's acts and motivations are directly challenged here under Plaintiff's section 1981 claim and are of central importance to that claim. Moreover, Defendants' attempt to draw a bright line between White and Spurlock "so atomizes the organization that it ignores the possibility that isolated decisions are the result of an organizational culture or ethos that encourages or condones discriminatory behavior." *Waters*, 216 F.R.D. at 158.  Discovery may not be restricted on such a basis.  *See id.*

Defendants' additional boilerplate objections are unexplained and without any apparent basis.

**B.    Robert Fath's Personnel File**

Robert Fath's role, at this juncture, appears to be somewhere between a witness and a central participant.  His Incident Report shows that he interacted with Newman while Newman was selecting a book from the children's section (where White claimed to have seen Newman stealing according to her Incident Report) and also in the midst of the confrontation.  *See* Ex. 2 at BI000001, BI000002.  It also shows that Fath was in a prime position to observe the events at issue, and even observed Spurlock and White watching the security recording out of Newman's sight.  *See id.* at BI000002.  Because Fath is likely to be an important witness in this case and participated in the events at issue, the production of his personnel file is proper.  *See McCoo v.*

*Denny's, Inc.*, 192 F.R.D. 675, 688 (D. Kan. 2000) (in section 1981 case involving discriminatory refusal to provide service in a restaurant, defendant ordered to produce the personnel files of restaurant employees "who allegedly participated in, were involved in, or witnessed any of the claimed discriminatory or other wrongful events giving rise to this lawsuit").

The boilerplate objections asserted by Defendants in addition to relevance are unexplained and without any apparent basis.

### C.    Documents Regarding Other Borders Personnel On Duty at the 14th Street Borders the Evening of the Events At Issue

Other Borders personnel who were on duty at the 14th Street Borders on the evening of the events at issue are likely to have witnessed relevant events, conversations, and/or behaviors, even if they did not directly participate in the confrontation between Newman, Spurlock, and White.  Indeed, Defendants' Incident Reports demonstrate that at least two other employees were witnesses.  *See supra* at 9 n.5.  The credibility and any discriminatory biases of the other personnel on duty are therefore relevant and discoverable.  *See Waters*, 216 F.R.D. at 164 (addressing discovery in Title VII race discrimination case).  For that very reason, the Court in *Waters* ordered the defendant to produce from the personnel files of its employees who were witnesses but not accused of discrimination "any information suggesting that the person acted in a dishonest manner, gave an untruthful statement, or engaged in racially discriminatory or retaliatory behavior." *Id.*  This is precisely the scope of Plaintiff's document request with respect to employees other than Spurlock, White, and Fath.  *See* Ex. 12 at 2-3.

The boilerplate objections asserted by Defendants in addition to relevance are unexplained and without any apparent basis.

**D.**     **Documents Regarding the Identification of Other Witnesses**

Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including . . . the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Customers of the 14th Street Borders on the evening of the events at issue have discoverable information because they witnessed the events at issue and may also have witnessed the behavior of the personnel involved and their treatment of white customers. It is extremely likely that customers who made purchases at the store in certain ways, *e.g.*, using credit cards or cards issued to members of special Borders programs, can be identified from Borders' records. Borders must therefore produce those records.

Borders' privacy objections are unavailing. In *Nuskey v. Lambright*, No. 06-1573-PLF/JMF, ___ F.R.D. ___, 2008 WL 2388914, at *7 (D.D.C. June 10, 2008) (citation omitted) (quoting *Marshall v. Dist. Of Columbia Water and Sewage Auth.*, 214 F.R.D. 23, 27 (D.D.C. 2003)), the Court recently reiterated that "'any privacy concerns are negligible'" when a protective order has been entered. Here, the parties are negotiating a stipulated protective order in anticipation of the need to disclose sensitive information. The parties expect to submit the stipulated order to the Court shortly.

**E.**     **Security Records Regarding the Evening of December 2, 2005**

The limited discovery produced by Borders to date strongly indicates that Borders has not produced all responsive security records. Borders' own documents state that logs regarding the store's security recording system should be maintained, but no such logs have been produced. Because the ostensibly missing security recording is of great importance here, production of the

17

logs, as well as all other responsive documents, should be compelled.[9]

### F. Documents and Interrogatories Regarding Other Incidents of Racial Profiling and Other Forms of Discrimination

It is well-established that, in a discrimination lawsuit, the plaintiff is entitled to introduce evidence regarding the defendant's discrimination against others. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Discovery regarding such acts is, therefore, proper. *See, e.g.*, *Waters*, 216 F.R.D. at 161. Defendants assert broad and unjustified objections to such discovery, however, and refuse to provide discovery except as to (1) lawsuits, agency charges, and attorney demand letters, (2) regarding racial profiling, (3) at the 14th Street Borders, (4) during an overly restricted and unspecified time frame. None of these limitations are proper, and Defendants should be compelled to respond in full to Plaintiff's discovery requests, as limited herein, concerning other allegations of discrimination by Borders.

Type of document. There is no basis for refusing to produce information about other allegations of discrimination if not found in a lawsuit, agency charge, or attorney demand letter. *See, e.g.*, *id.* (ordering defendant to produce "all complaints," without regard to form in which lodged); *Nuskey*, __ F.R.D. ___, 2008 WL 2388914, at *6 (granting motion to compel "any complaints or grievances" without regard to form in which lodged).

Type of discrimination. Defendants' objection to providing discovery about forms of discrimination other than racial profiling is likewise overly restrictive. Racial discrimination can take many forms, not just profiling, all of which evince the same prejudice and willingness to act on that prejudice. Information about allegations of all types of racial discrimination, such as employment discrimination, is therefore discoverable. *See, e.g.*, *Waters*, 216 F.R.D. at 161 & n.7

---

[9]    The missing logs highlight the problem with Borders' insertion of the word "relevant" into its repeated statements that "it has produced all relevant, non-privileged documents responsive to" particular document requests. Borders may have located the logs but decided to deem them irrelevant, thereby keeping Plaintiff in the dark.

(requiring production of "all complaints of discrimination on the basis of race, color, and national origin" in case alleging that employee was terminated because of racial discrimination). As *Waters* also makes clear, discrimination based on color and national origin is so closely related to discrimination based on race that allegations of discrimination based on these classifications must also be produced. *See id.*

Location of discrimination. Defendants maintain three Borders bookstores in Washington, D.C., according to their website. Plaintiff understands that the 14th Street Borders is part of a managerial district that extends beyond the District of Columbia. Allegations of profiling at all stores within the managerial district, and of other forms of discrimination at the three Washington stores, are discoverable because of Defendants' management structure regarding security. That structure assigns even the high-level Regional Loss Prevention Manager (who is responsible for multiple districts) an active role in supervising the security personnel assigned to the 14th Street Borders. *See* Ex. 3 at BI000017 (RLPM and LPS are daily supervisors of store detectives), BI000026 (RLPM and LPS must be notified immediately when store detective incorrectly charges customer with stealing). It is therefore likely that discriminatory acts at one store are related to discriminatory acts at another store under the same supervision. By focusing on only the stores within the managerial district with respect to the narrow category of profiling, and only the three stores in Washington with respect to other forms of discrimination, Plaintiff's discovery requests are narrowly tailored to substantially fewer stores than are within the management structure providing daily supervision for security at the 14th Street Borders. To further limit discovery in this area to the single store where Newman was discriminated against would ignore the multi-store "organizational culture or ethos" resulting from the manner in which Borders structures its security operations. *Id.* at 158.

19

Date of discrimination.  Plaintiff's discovery requests apply to allegations of discrimination within a reasonably limited time period:  from January 1, 2004, to the present.  In *Waters*, the Court permitted discovery of other discrimination complaints from more than four years before the Title VII plaintiff was hired to the date of the opinion.  *See id.* at 158-159, 161; *see also McCoo*, 192 F.R.D. at 689 (from five years prior to incident to the present).  The more limited request made by Plaintiff here is appropriate.  Indeed, Spurlock began working for Borders in 2001 and the Loss Prevention Specialist, Corey Thompson, began working for Borders in 1999.  *See* Ex. 19 at BI000187, BI000190.

Defendants' additional objections.  Defendants' additional boilerplate objections are again unexplained and without any apparent basis.  Their privacy and consumer protection objections are again unavailing because of the stipulated protective order the parties will soon submit to the Court.

### G.     Defendants' Failure to State Whether They are Withholding Documents Based on Their Objections

Finally, Defendants should be compelled to amend their written responses to Plaintiff's document requests in which they say, eleven times, that they have "produced all <u>relevant</u>, non-privileged documents responsive to" a particular request.  They should be compelled to state whether they are withholding responsive documents, regardless of their self-serving and narrow definition of relevance, and to produce all non-privileged documents that they have withheld pursuant to this definition.  *See Bregman*, 182 F.R.D. at 356 ("[a]s plaintiff points out, it is impossible to know whether the District is, by the production, representing that, despite its objections, it has produced all of the documents or whether it is objecting to producing more").

### CONCLUSION

For the reasons stated above, Plaintiff Ronald Newman respectfully submits that the

Court should order Defendants Borders, Inc. and Borders Group, Inc. to produce all of the documents and answer in full the interrogatories that are addressed in this motion.

Pursuant to Rule 37(a)(5)(A), Defendants and/or defense counsel should also be ordered to pay Plaintiff's expenses and fees incurred in making this motion because Defendants' positions are not substantially justified.[10]

Respectfully submitted,

/s/ Glenn Schlactus
John P. Relman (D.C. Bar No. 405500)
Glenn Schlactus (D.C. Bar No. 475950)
RELMAN & DANE PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888 (o)
(202) 728-0848 (fax)

*Attorneys for Plaintiff*

August 13, 2008

---

[10]    In case the Court orders a hearing on this motion, Plaintiff's counsel, Glenn Schlactus, notes that he will be out of the country on prepaid vacation from September 5 through September 19, 2008.  Also with respect to scheduling, Plaintiff notes that on July 23, 2008, the parties filed a joint motion to extend the discovery deadline from September 18, 2008, to November 3, 2008.  That motion is pending.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 13th day of August, 2008, I caused Plaintiff Ronald Newman's Motion to Compel Discovery Responses to be served on the following by Notice of Electronic Filing, generated by the Electronic Case Filing System:

Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004-1601
rlwilkins@venable.com

Craig A. Thompson
Venable, LLP
750 E. Pratt Street, Suite 900
Baltimore, MD  21202
cathompson@venable.com

Tina H. Saunders
Venable, LLP
750 E. Pratt Street, Suite 900
Baltimore, MD  21202
thsaunders@venable.com

*Attorneys for Defendant*

  /s/   Nani Gilkerson  
Nani Gilkerson

Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                           )
RONALD NEWMAN,                             )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )        Civil Action No. 1:07-cv-0492-RWR
                                           )
BORDERS, INC.                              )
                                           )
            and                            )
                                           )
BORDERS GROUP, INC.,                       )
                                           )
            Defendants.                    )
_____)


## <u>PLAINTIFF'S CERTIFICATION OF COMPLIANCE WITH RULE 37(a)(1)</u>

      I hereby certify that, prior to filing Plaintiff Ronald Newman's Motion to Compel Discovery Responses, undersigned counsel for Plaintiff conferred in good faith with defense counsel in an effort to obtain the disputed discovery without court action.


                      /s/ Glenn Schlactus_____
                      Glenn Schlactus (D.C. Bar No. 475950)
                      RELMAN & DANE PLLC
                      1225 19th Street, N.W.
                      Suite 600
                      Washington, D.C. 20036
                      (202) 728-1888 (o)
                      (202) 728-0848 (fax)

                      *Attorneys for Plaintiff*


August 12, 2008

Exhibit 2

# Borders, Inc
# Loss Prevention Incident Report Form

**Store # :**  412    **Location:**  600 14th St. NW Suite 100
Washington, DC 20005    **Date/Time of Incident:**  12/2/05
approx. 8:00pm

**GM:**  Shawn Brown    **DM:**  Annett Rodick    **RLPM:**  Dave Kalbaugh

**Type of Incident:**  (Place an X next the appropriate type of incident)

| | | | |
|---|---|---|---|
| Break In | _____ | Shoplifting - Suspect Apprehended | _____ |
| Robbery | _____ | Shoplifting - Suspect not Apprehended | _____ |
| Problem Refunder | _____ | Shoplifting Prevention | _____ |
| Cash / Deposit Discrepancy | _____ | Other (Describe event) | xx |

Describe in full detail the loss or prevention, include dollar value of items if applicable:

| Description | Author/Artist | Quantity | Category | BINC/UPC | Price |
|---|---|---|---|---|---|

Total Amount w/o Tax =

Describe the incident:

As I was floor walking; I noticed two individuals (below mentioned) displaying erratic behavior in the 'Children's Section' of the store. I then proceeded to the video camera area to observe them (below mention) better. While watching the camera, *noticed one of the below mentioned individuals place a small blue children's book in his (below mentioned) own shopping bag from another store. I immediately left the video camera area and went back out on the floor to continue observation. I then decided to approach the same individual (below mentioned) informing him (below mentioned) of who I was and what I'd observed. The below mentioned individual then started shouting at me and threatning me with bodily harm. He (below mentioned) then wanted to speak to a manager to file a complaint. Pat Spurlock (mgr) was then paged. Pat arrived and provided the below mentioned individual with a number to 'Customer Service'. He (below mentioned) then exited the store without further incident.*

| | |
|---|---|
| **Name of Suspect:** | N/A |
| **Address:** | |
| **Telephone:** | ID # |
| **Description:** | African American male; approx. 25 to 35 yrs. old; approx 6'2" 250lbs to 300lbs; trimmed beard; wearing a black 'P' coat, multi-colered wool hat and scarf set, blue jeans and black boots. |

If police were called

| | |
|---|---|
| **Name of Officer:** | **Badge #:** |
| **Police Report #:** | **Phone #:** |

| | |
|---|---|
| **Name of Employee completing this report:** | LPSD Darlene White |
| **Additional Witnesses to Incident:** | Bob Fath(supervisor), Kim Stevens(book seller), Pat Spurlock(manager) |
| (Include address/phone number for any witnesses not employed by Borders) | |

Send copies of this report via e:mail to the DM and RLPM within 24 hours of the incident.

Borders Loss Prevention
Incident Form

Revised
2/10/99 nd

BI000001

# Borders, Inc
## Loss Prevention Incident Report Form

| | | | | |
|---|---|---|---|---|
| **Store # :** 412 | **Location:** | 14th and F. Streets NW | **Date/Time of Incident:** | 12/02/05  8:00 pm |

**GM:** Shawn Brown          **DM:** Dan Kuehn          **RLPM:** Dave Kalbaugh

**Type of Incident:**  (Place an X next the appropriate type of incident)

| | | | |
|---|---|---|---|
| Break In | | Shoplifting - Suspect Apprehended | |
| Robbery | | Shoplifting - Suspect not Apprehended | |
| Problem Refunder | | Shoplifting Prevention | |
| Cash / Deposit | | Other (Describe event) Accusation of | **Physical threat/violence** |
| Discrepancy | | shoplifting | Accused thief threatened |
| | | | to put Darlene on the floor |

Describe in full detail the loss or prevention, include dollar value of items if applicable:

Describe the incident:

About 8 PM on 2 December 2 African-American genetlemen were browsing in the Children's Section while I was covering Music Info for Kim while she relieved Kathleen in the Café. One of the men shouted to me from the mezzanine and asked if there was someone to help them in Kids. I told him I would try to help and went up to the Dept. One of them asked me how the Dept. was organized and I started to explain when he interrupted me and told me he was looking for a book called "Rainbow Fish", a damaged copy of which he was carrying in his hand. I indicated the section in Picture Bks where the book would be if we had any more. I told him the section was arranged alphabetically by author and he countered with a comment on how out of order the section was. Then he thanked me and I went back to Music Info. Darlene then came up to the counter and told me she had watching the two men in Kids on the security camera and that one of the men had "something small" like a CD in his hand and then put it in the bag he was carrying. (When I had been with them all either of them had in his hand was the damaged copy of Rainbow Fish.) She told me that "his bag got big". When the two men came down from the mezzanine and walked past Darlene and me at Music Info, Darlene accused one of the men of putting something in his bag and that the action had been caught on the security camera tape. The man took umbrage at this and immediately emptied out the bag he was carrying which contained only a small item that he had purchased elsewhere and for which he had the receipt. He asked if she was store security and asked her to produce ID. She went to P3 to get her ID (she had earlier told me she didn't have it in her pocket) and the man she had accused asked me my name, which I gave him. He demanded to speak to the manager so I called Pat Spurlock who was service manager at the time. Darlene came back and Pat came down to Music Info where the man told Pat of the accusation Darlene had made and how the incident was going to continue beyond tonight. He worked for the DC city government and had shopped in the store many times. He also asked rhetorically, "Why would I steal from the Children's Dept?" Darlene and Pat went to review the security tape and the man asked me to call the DC police. I told him I didn't have that authority and that only Pat could do that. I also explained to him that the GM was not working tonight. He asked for Shawn's name and I gave it to him. I then went in the back to see what Darlene and Pat were doing. They couldn't find the pertinent part of the tape. When the 2 of them came out on the floor again, the man demanded to see the security tape but Pat said that was impossible and besides they hadn't found the part of the tape showing the incident. I went upstairs to see that everything was going ok up there since it was almost closing time by then.

I didn't see then men leave, but I did see the flashing lights of a police car outside. After we closed a police officer came and knocked on the window. Phoenix, who was collecting the tills, went to the door and opened. I heard the officer ask if everything was all right. Phoenix told her it was and she went away.

**Name of Suspect:**    (Either Pat or Darlene has the suspect's name and address)

**Address:**

**Telephone:**                              **ID #**

Borders Loss Prevention
Incident Form

Revised
2/10/99 nd

BI000002

**Description:**

If police were called

Name of Officer:          N/A                                    Badge #:       N/A

Police Report #:          N/A                                    Phone #:       N/A

Name of Employee completing this report:          Bob Fath

Additional Witnesses to Incident:          Darlene White, LPSD, Pat Spurlock

(Include address/phone number for any

witnesses not employed by Borders)

Send copies of this report via e:mail to the DM and RLPM within 24 hours of the incident.

Borders Loss Prevention
Incident Form

Revised
2/10/99 nd

BI000003

**Shawn Brown GM (B0412)**

**From:**     Pat Spurlock Mgr-Inv (B0412)
**To:**       Shawn Brown GM (B0412); Leo Gordy Mgr-Sales (B0412); Phoenix Robles Mgr-Ops (B0412)
**Cc:**       Corey Thompson (Loss Prevention); Dave Kalbaugh (Loss Prevention)
**Subject:**   12/02/05 incident
**Attachments:**

Briefly: We had a situation in the store tonight around 8:20PM. Darlene White observed two men acting suspiciously in the Kids section and accused one of them of putting something in a bag. Darlene told them we had the act on tape. The man became irate and I was called to music info to smooth things out. By the time I got there (from the registers) he had called the police. Darlene and I called Corey and he advised me to give the customer Corey's number. I gave him Corey's number and explained that there was no way to remedy the situation tonight. He insisted on seeing the tape. I told him that wasn't going to happen. He accused us (Borders) of racial profiling and said he would sue us. I did not apologize for Darlene's actions nor offer any excuse. I stayed cool and told him that since I had not observed any of this and he had decided to file a complaint with the police, I would refer the incident to higher Borders authority. At 9:00 I escorted them out of the building. The police arrived about 9:10, but I did not speak with them because they did not come in.
There is more to the story, but Darlene and Bob Fath (who observed the confrontation) will need to fill out incident reports with more detail.

More later...
Pat Spurlock, IM

BI000004

## BORDERS GROUP PERFORMANCE DISCUSSION RECORD

| Empl ID: 00288170 | Location Number/Dept: B0412 Washington DC | State (e.g., "MI," "CA," "PR"):DC |
|---|---|---|

| Please check the area of the company where the employee works: | ☒ Borders Books, Music and Café Stores ☐ Borders Outlet Stores ☐ Borders Group Corporate Office | ☐ Waldenbooks Stores ☐ Borders Group Distribution Centers ☐ Other: |
|---|---|---|

| Employee Name: Darlene White | Manager/Supervisor Name:  Shawn R. Brown |
|---|---|
| Employee Title: Store Detective | Date: 12/05/05 |

### Type of performance/Follow-up discussion (Select one box):

**Performance Improvement Process:**

☒ Performance Improvement Needed (PIN)        ☐ Follow-up to Performance Improvement Needed

☐ Written Warning        ☐ Follow-up to Written Warning

☐ Final Warning        ☐ Follow-up to Final Warning

☐ Termination

**Other:**

☐ Investigation Recap        ☐ Suspension

### Detailed Performance Feedback:

**Your overall performance is not meeting Company Expectations/Standards including but not limited to the following:**

On **12/02/05** after observing over the CCTV what appeared to be a customer concealing merchandise in a shopping bag you confronted the customer in question on the salesfloor and erroneously accused him of placing merchandise in his bag.  Bob Fath Inventory Supervisor was a witness to the incident.

You have not consistently demonstrated your ability to exhibit behaviors, which are reflected in the Borders Group competencies such as Inclusive Problem Solving/Decision Making, Customer Focus, and Organizational Knowledge.

**Inclusive Problem Solving/Decision Making-** You have not demonstrated your ability to involve others in decision making by seeking out and soliciting their opinions, attitudes and feelings.  Below are some specific examples:
- By not partnering with the manager on duty or soliciting assistance from a store employee to maintain **continual uninterrupted surveillance** before approaching the alleged shoplifter you did not follow the required elements of an arrest.
- You did not partner with the manager on duty to discuss alternative approaches to use with the alleged shoplifter.

**Customer Focus-** you have not demonstrated your ability to understand customers' profile and provide service levels accordingly.  Below are some specific examples.
- By not following proper loss prevention procedures you did not build customer loyalty and satisfaction.
- By not soliciting assistance from a store employee to provide customer service you did not adhere to the **"prevention first"** philosophy.

**Organizational Knowledge-** you have not demonstrated your ability to understand how your position fits within the organization and how the role impacts profitability.  Below are some specific examples:
- By not adhering to the proper loss prevention procedures you erroneously accused a customer of shoplifting, which could have far reaching ramifications for Borders Group Inc. which could lead to legal issues and therefore affect the bottom line.
- By erroneously accusing a customer of shoplifting you have negatively affected top line sales as a direct result of loss of customer loyalty.
- You did not follow the proper procedure for handling potential shoplifters as found on the LP browser.

### Desired Results:

Effective immediately, you must meet an overall achieves level in performance as Store Detective

White  – Send to Payroll Services        Yellow – Manager/Store file        Pink-Employee copy
ISBN 0681632593

BI000005

As a Borders employee it is your responsibility to consistently demonstrated behaviors, which drive and support our business. Specifically, it is my expectation that you exhibit behaviors identified via the Borders Competencies such as Inclusive Problem Solving/Decision Making, Customer Focus, and Organizational Knowledge.

<u>Inclusive Problem Solving/Decision Making</u>- it is my expectation that you consistently seek out and solicit opinions, attitudes, and feelings of others before confronting customers.  Below are some examples of how you might demonstrate this:
- Partner with the manager on duty. Share with them your observations, and get their opinions and advice on how to proceed.
- Communicate all intentions to intervene with manager on duty.

<u>Customer Focus</u>- it is my expectation that you understand customers' profile and provide service levels accordingly.  Below are some examples of how you might demonstrate this:
- Use customer service as the first step to prevention.
- Analyze all possible out comes of approaching a suspected shoplifter.
- Make effective use of procedure and process as well as alternative approaches.
- Utilize the prevention first philosophy and solicit assistance from a staff member to provide customer service as the first deterrent to shoplifting.

<u>Organizational Knowledge</u> – It is my expectation that you understand how your position fits within the organization and how the role impacts profitability.  Below are some examples of how you might demonstrate this:
- Review all Loss Prevention guidelines by 12/10/05.
- Utilize all resources including staff members to minimize external shrink.
- Adhere to all Loss Prevention procedures when handling potential shoplifters.

Failure to improve and sustain performance at an acceptable level and/or any violation of Company policy may result in further disciplinary action up to and including termination.

**This is a Performance Improvement Needed.**

| Employee Comments: |
|---|

| | | |
|---|---|---|
| **Employee Signature:** _Darlene T W hite_ <br> (Signature only acknowledges receipt of document) | **Date:** 12/7/05 |
| **Manager/Supervisor signature:** _R D_ | **Date:** 12.7.05 |
| **HR Signature (if required):** | **Date:** |

White  ~ Send to Payroll Services     Yellow – Manager/Store file          Pink-Employee copy
ISBN 0681632593

**Management Structure Applicable to the 14th Street Borders on December 2, 2005**



BI000094



**FLOOR & WALL BOX SCHEDULE**

1. Provide 120V duplex outlet at 7" AFF.
2. Provide 120V duplex in flush floor box, switched at receptacle panel.
3. Provide 1" conduit stub from floor. Wire digital music stations to jacks mounted on casework.
4. Provide 120V circuit via whip from flush floor box (minimum 4'-0" whip).
5. Provide 1" conduit from flush floor box to accessible ceiling.
6. Provide two 120V circuits to Main Info Counter via flush floor box.
7. Provide 3" conduit stub from floor. Wire digital music stations to jacks mounted on casework.
8. Provide 2" conduit stub from wall at 7" AFF. Conduit to come from J-Box in ceiling. Wire digital music stations to jacks mounted on casework.
9. Provide 1" conduit stub from wall at 7" AFF. Conduit to come from J-Box in ceiling. Wire digital music stations to jacks mounted on casework.

NOTE: All "Star" fixtures require one pair 18 gauge shielded low voltage wire. Coordinate with electrical drawings.

REV. 05-02-00

MEZZANINE 1

**WASHINGTON, D.C.**
WASHINGTON, D.C.
BASEMENT / MEZZANINE
FIXTURE PLAN - A
SCALE: 1/8" = 1'-0"

BORDERS, INC.

# BORDERS®
## BOOKS • MUSIC • CAFE
311 MAYNARD    ANN ARBOR    MICHIGAN    48104

| DRAWING INFO | |
|---|---|
| START DATE: | 04-30-99 |
| DESIGNER(s): | AC |
| ARCHITECT: | DORSKY-HODGSON |
| DRAWING FILE: | e412base-ddla.dwg |

| REVISION DATES | | |
|---|---|---|
| FIXTURES REVISED | 05-02-00 | NEW SHELL | 05-15-99 |
| OFFICES REVISED | 05-30-00 | SSA | 05-25-99 |
| NEW RISER | 05-31-00 | SSA | 06-07-99 |
| FIXTURES REVISED | 07-24-00 | NEW SORT SHELL | 09-24-99 |
| FIXTURES REVISED | 08-14-00 | NEW SORT SHELL | 10-04-99 |
| | | NEW SHELL/FIXT. REV. | 03-06-00 |
| | | FIXTURES REVISED | 03-13-00 |
| | | NEW SHELL | 03-15-00 |
| | | DATA/ELEC./ARCHITECT | 07-24-00 |
| | | SHELL COORDINATION | 03-15-00 |
| | | SHELL COORDINATION | 03-27-00 |
| | | AISLE WIDTH/TITLE SLIP | 03-31-00 |
| | | NEW SHELL | 04-14-00 |
| | | DIGITAL MUSIC | 04-24-00 |

| STORE NUMBER |
|---|
| # 412 |
| WASHINGTON, D.C. |

DO NOT DESTROY

BI000095

Exhibit 3

Borders, Inc.

# In Store LP Programs

## LPCA / Store Detectives

### Training Manual

**April 2003**



BI000009

# Contents

**In Store LP Programs Training Manual**                                    **1**

Introduction/Overview ................................................................................. 1
    Loss Prevention Mission ....................................................................... 1
    Loss Prevention Department Structure ................................................. 2
Shrinkage Overview ................................................................................... 2
FOS/ LPCA Positions Descriptions/ Responsibilities ............................... 4
    FOS LPCA Greeter ............................................................................... 4
    LPCA ..................................................................................................... 5
Store Detectives (LPSD) ............................................................................ 7
    What is Shoplifting ............................................................................... 8
    Borders Philosophy .............................................................................. 8
    LPSD Responsibilities .......................................................................... 9
    Surveillance .......................................................................................... 9
    Shoplift Apprehensions ........................................................................ 3
Resources ..................................................................................................
    CCTV ..................................................................................................
    EAS .....................................................................................................
    Keepers ...............................................................................................
    Employee Awareness ........................................................................... 4
Reference Materials ...................................................................................
    Preparation ........................................................................................... 4
    Surveillance of a Suspected Shoplifter ................................................ 5
    Detaining Suspected Shoplifters .......................................................... 6
    Civil Liabilities .................................................................................... 10
    Court Appearance ................................................................................ 12

BI000010

### *Working with Store Detectives*

* The Loss Prevention Store Detective is assigned the role of actively deterring external shrink opportunities through prevention and apprehension of shoplifters. This job demands a variety of skills and responsibilities. The GREETER/ LPCA position works with the STORE DETECTIVE through the use of CCTV and radios to communicate potential external loss incidents and to provide assistance when needed. Situations may arise when a GREETER/ LPCA is confronted with a shoplifter and must render focused customer service to complete a shoplifting prevention. Remember: only STORE Detectives may make shoplifting apprehensions.

### *Floor-walking and Resource Management*

The LPCA has two main responsibilities: preventing shoplifting through customer service on the sales floor (also known as "floor-walking"), and working with the physical LP resources in the store. The LPAM will be responsible for establishing a schedule that details which task will perform at what time.

### *Floor-walking Preparation*

Before actually working on the sales floor, the LPCA should prepare the store and the employees for his or her presence. The following should be done:

* A Borders-designated shirt and a Borders ID must be worn. The LPCA is designed to be highly visible on the sales floor.
* The LPAM or other floor manager should be consulted for that shift's assignment.
* The management team (and Store Detectives, if applicable) should be notified that the LPCA is working on the sales floor and that he or she may need their assistance.
* The LPCA should know the store and the areas that are known to be high loss.

All staff members should know the code word for LPCA assistance.

## Store Detectives (LPSD)

* The position of Store Detective may be employed in store locations where exposure to shoplifting warrants the expense. Daily supervision of the Store Detective/s is the responsibility of the Loss Prevention Specialist (LPS) or Regional Loss Prevention Manager (RLPM). The position is charged to the store's payroll, and the Detective is considered an employee of his or her assigned store.

* The primary purpose of this position is to detect and either prevent or detain shoplifters. The Store Detective may work undercover (Plain Clothes) or in the designated Borders Loss Prevention attire. The Store Detective will also work with the RLPM/LPS and the store management team to increase employee awareness and to support other initiatives designed to reduce exposure to external shrinkage. Refer to a copy of the Store Detective Job Description for more information

BI000017

**Individual does not have the items**

If at any point during the apprehension you determine that the individual does not have the item or items that you observed him/her select and conceal, the following steps are to be taken:

* Immediately apologize for any inconvenience and terminate any further contact with the individual. An honest apology may curb a future legal litigation against you or Borders.

* Return to the store and retrace your steps in an attempt to locate the items that may have been "ditched".

* Immediately notify your LPS and RLPM by paging them. Notify the General Manager in the event that the individual returns to the store.

* If the individual returns to the store and requests to talk with someone about the incident, no comments or statements are to be made. The individual should be referred to the General Manager.

* The Store Detective must immediately write a detailed account of the incident on the "Prevention/Shoplift" report.

## Detaining the Shoplifter

Once you have escorted the person back to the processing area, you need to handle the processing of the shoplifter in timely manner. Below are the steps you should follow in processing the shoplifter:

* Call management to have a witness in the room during the processing. If the individual is female, have a female witness. (Never leave the individual alone with the witness for any reason.)

* Call or page the LPS/RLPM to review the case for booking approval

* Complete the appropriate paperwork to process the arrest. (Write the report)

* Have the individual sign the "Admission of Theft" form.

* Contact the local police to transport the suspect.

* Complete the "Held for Evidence" form and secure the evidence.

* Make a copy of the reports and forms and forwarded the copies to the LPS. All originals are to be forwarded to the RLPM the next business day.

It is the policy of Borders that, regardless of the nature of the offense committed or attitude and conduct of an arrested person that these persons are to be treated with respect, courtesy and dignity at all times.

BI000026

* If possible answer the questions with a simple "yes or no"

* If you do not remember something, simply answer "I do not recall at this time"

* Always treat the defense attorney and his/her client with respect.

To bring final closure, file an up date to your original report detailing the outcome of the court proceedings.

## LPCA / LPSD Certification

Every LPCA and Store Detective will take the LPCA / Store Detective exams before be released into their positions. The direct supervisor for these positions will review exams and determine if further training is required. A sign copy of the exam is to be placed in the person's personnel file, sent to the RLPM/ TLPM and a copy sent to the Loss Prevention office at Binc.

# Loss Prevention Resources

The use of Loss Prevention Resources that are listed below can be very beneficial to reducing losses and each LP person should be familiar with these resources.

- Review the Loss Prevention Manual
- Review all applicable in-store security training material i.e. Alarms, EAS, CCTV.

## Deterrence Marketing

The customer service discussion leads into the "deterrence marketing" aspect of shoplifting prevention. These are the physical systems or items that we have in our stores to combat shoplifting - EAS, cameras and keepers. As part of their regular responsibilities, the LPCA's will help use and maintain these resources.

### Keepers

Keepers are plastic "sleeves" that fit over CDs, cassette tapes and videotapes and must be removed at point of sale with a specially designed releaser. Keepers, both music and video, are designed to limit our losses by making product more difficult to conceal and remove from the store. Keepers are also tagged with an EAS tag as an added deterrent to shoplifting. All music or video product that is not keepered must be tagged with an EAS chicklet.

### Key points:

* Keepers are designed to reduce the opportunity to shoplift by making the act of concealing and/or removing merchandise more difficult.

* Keepers work in conjunction with the EAS gates since the EAS tag is protected by the keeper and is not easily removed from the CD or video.

* Keepers can be compromised, but it takes time to break a keeper and does draw attention to the person attempting to do so.

* The release mechanisms (keys) must be kept secure, however, to prevent unauthorized use or loss.

> The value of deterrence marketing is functionality. Empty keepers, blank screens and inactive pedestals have no Value.

BI000035

Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
RONALD NEWMAN,                  )
                                )
            Plaintiff,          )
                                )
      v.                        )        Civil Action No. 1:07-cv-0492 RWR
                                )
BORDERS, INC.                   )
                                )
            and                 )
                                )
BORDERS GROUP, INC.,            )
                                )
            Defendants.         )
_____ )

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**
**OF DOCUMENTS TO DEFENDANT BORDERS, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Ronald

Newman hereby requests that Defendant Borders, Inc. produce and make available the following

documents within thirty days of service at the office of Relman & Dane, PLLC, 1225 19th Street,

Suite 600, Washington, D.C. 20036.

**PRELIMINARY INSTRUCTIONS**

1.    _Manner of Responding_.  Your written response shall state, with respect to each

item or category, that inspection and related activities will be permitted as requested unless the

request is refused, in which event the reasons for refusal shall be stated.  If the refusal relates to

part of an item or category, the part shall be specified.

2.    _Manner of Producing_.

      a.    One legible copy of each document requested is to be produced.  Any

copy of a document that varies in any way whatsoever from the original or from any other copy

of the document, whether by reason of handwritten or other notation or any addition or omission, shall constitute a separate document and must be produced.  Plaintiff reserves the right to inspect the original of any document produced upon reasonable request.

b.      All documents produced in response to an individual request shall be physically segregated from documents produced in response to any other requests, and the request to which they are responsive shall be specifically identified.  If a document is responsive to more than one request, each of the requests to which the document is responsive shall be specifically identified.

c.      In producing the documents, all documents that are physically attached to each other shall be considered one document and left so attached.  Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or other methods, shall be left so segregated or separated.  Documents shall be retained in the order in which they are maintained in the file where they are found.

d.      All responses to requests for computerized data and all other responses existing in computerized form are to be produced in a computer-readable format on a CD-ROM, diskette, or similar data storage device.  The producing party must also identify the computer program necessary to read and access such information.

3.      *Scope of the Requests*.  All requests are for documents applicable to, relating to, or concerning the Defendant, as "Defendant" is defined in the Definitions section.  The time period for documents sought is from **January 1, 2004, to the present date**, unless otherwise specified.  Responsive documents applicable to that time period shall be produced whether they originated or were adopted prior to or during that time period.

2.      All documents related to Clifton Walker, III.

3.      All documents related to Pat Spurlock.

4.      All documents related to Darlene White.

5.      The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

6.      All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

7.      Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

8.      All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

9.      All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

10.      All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

11.      All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

12.      Documents sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

13.    Documents sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

14.    All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

15.    All documents relating to any investigation by the District of Columbia Office of Human Rights or any other government agency concerning alleged discrimination at or related to any Borders bookstore in Washington, D.C.

16.    All documents related to any allegation of racial profiling of any person in a Borders bookstore.

17.    Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

18.    All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

19.    All documents reviewed, received, or considered by any expert retained by you whose opinions may be presented at trial.

20.    All documents related to any allegation, claim or defense asserted in your Answer.

21.    All documents you relied on or referred to in responding to interrogatories served by Plaintiff.

22.    All documents you intend to introduce into evidence at trial.

Exhibit 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
RONALD NEWMAN,                      )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        Civil Action No. 1:07-cv-0492 RWR
                                    )
BORDERS, INC.                       )
                                    )
        and                         )
                                    )
BORDERS GROUP, INC.,                )
                                    )
        Defendants.                 )
_____)

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**
**OF DOCUMENTS TO DEFENDANT BORDERS GROUP, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Ronald

Newman hereby requests that Defendant Borders Group, Inc. produce and make available the

following documents within thirty days of service at the office of Relman & Dane, PLLC, 1225

19th Street, Suite 600, Washington, D.C. 20036.

**PRELIMINARY INSTRUCTIONS**

1.    *Manner of Responding.*  Your written response shall state, with respect to each

item or category, that inspection and related activities will be permitted as requested unless the

request is refused, in which event the reasons for refusal shall be stated.  If the refusal relates to

part of an item or category, the part shall be specified.

2.    *Manner of Producing.*

        a.    One legible copy of each document requested is to be produced.  Any

copy of a document that varies in any way whatsoever from the original or from any other copy

of the document, whether by reason of handwritten or other notation or any addition or omission, shall constitute a separate document and must be produced. Plaintiff reserves the right to inspect the original of any document produced upon reasonable request.

b.    All documents produced in response to an individual request shall be physically segregated from documents produced in response to any other requests, and the request to which they are responsive shall be specifically identified. If a document is responsive to more than one request, each of the requests to which the document is responsive shall be specifically identified.

c.    In producing the documents, all documents that are physically attached to each other shall be considered one document and left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or other methods, shall be left so segregated or separated. Documents shall be retained in the order in which they are maintained in the file where they are found.

d.    All responses to requests for computerized data and all other responses existing in computerized form are to be produced in a computer-readable format on a CD-ROM, diskette, or similar data storage device. The producing party must also identify the computer program necessary to read and access such information.

3.    *Scope of the Requests*. All requests are for documents applicable to, relating to, or concerning the Defendant, as "Defendant" is defined in the Definitions section. The time period for documents sought is from **__January 1, 2004, to the present date__**, unless otherwise specified. Responsive documents applicable to that time period shall be produced whether they originated or were adopted prior to or during that time period.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All documents related to Ronald Newman.

2.      All documents related to Clifton Walker, III.

3.      All documents related to Pat Spurlock.

4.      All documents related to Darlene White.

5.      The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

6.      All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

7.      Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

8.      All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

9.      All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

10.      All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

11.      All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

12.    Documents sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

13.    Documents sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

14.    All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

15.    All documents relating to any investigation by the District of Columbia Office of Human Rights or any other government agency concerning alleged discrimination at or related to any Borders bookstore in Washington, D.C.

16.    All documents related to any allegation of racial profiling of any person in a Borders bookstore.

17.    Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

18.    All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

19.    All documents reviewed, received, or considered by any expert retained by you whose opinions may be presented at trial.

20.    All documents related to any allegation, claim or defense asserted in your Answer.

21.    All documents you relied on or referred to in responding to interrogatories served by Plaintiff.

Exhibit 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
          )
RONALD NEWMAN,   )
          )
    Plaintiff,   )
          )
  v.       )   Civil Action No. 1:07-cv-0492 RWR
          )
BORDERS, INC.    )
          )
    and    )
          )
BORDERS GROUP, INC.,  )
          )
    Defendants.  )
_____)

**PLAINTIFF'S FIRST SET OF**
**INTERROGATORIES TO DEFENDANT BORDERS, INC.**

    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ronald Newman hereby requests that Defendant Borders, Inc. respond to each of the interrogatories below separately and fully, in writing and under oath, and serve answers upon undersigned counsel within thirty days after service of these Interrogatories.

**PRELIMINARY INSTRUCTIONS**

    1.  _Manner of Answering._  In answering these Interrogatories, you should furnish such information as is known to you regardless of whether this information is obtained by you, known by you, or known to or obtained by any of your attorneys or other agents or representatives.  If you are unable to answer any interrogatory in full, please explain why you are unable to answer it, state the nature of the information and knowledge you cannot furnish, and answer to the fullest extent possible.  If your answers are qualified in any manner, state the nature of the qualification.

2.      *Scope of the Requests*.  All requests are for information applicable to, relating to, or concerning the Defendant, as Defendant is defined in the Definitions section.  The time period for information sought is from **January 1, 2004, to the present date**, unless otherwise specified

3.      *In Case of Ambiguity*.  If, in responding to these Interrogatories, you encounter any ambiguity in construing any interrogatory, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

4.      *Objections*.  If you object to part of an interrogatory, state your objection and respond to the remaining portion of that interrogatory.  If an objection to an interrogatory is based upon a claim of privilege, attorney work product, or any other basis, please identify in writing each piece of information so withheld by providing the following information:

a.      the possessor(s), author(s), addressee(s), present custodian(s), and date of such information;

b.      all other persons who have seen or learned of all or part of any such information;

c.      the method by which, and reason why, each such person obtained access to such information;

d.      a summary of such information; and

e.      the nature of the privilege asserted and any statutes, rules, or cases that you contend support the assertion of privilege.

5.      *Continuing Nature of Interrogatories*.  These Interrogatories are continuing in character so as to require you to promptly amend or supplement your response if you discover or obtain further material information in accordance with Fed. R. Civ. P. 26(e).

Interrogatory No. 2.    State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

Answer:

Interrogatory No. 3.    Identify and provide the position, title, dates of employment and job responsibilities of every person who works or worked at, or has or had managerial responsibilities for, the 14th Street Borders.

Answer:

Interrogatory No. 4.    Describe in detail the basis for each defense raised in your Answer and state all facts that support each such defense.

Answer:

Exhibit 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
RONALD NEWMAN,                     )
                                                    )
              Plaintiff,                         )
                                                    )
      v.                                           )          Civil Action No. 1:07-cv-0492 RWR
                                                    )
BORDERS, INC.                          )
                                                    )
              and                               )
                                                    )
BORDERS GROUP, INC.,             )
                                                    )
              Defendants.                     )
_____)

**PLAINTIFF'S FIRST SET OF INTERROGATORIES**
**TO DEFENDANT BORDERS GROUP, INC.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ronald Newman hereby requests that Defendant Borders Group, Inc. respond to each of the interrogatories below separately and fully, in writing and under oath, and serve answers upon undersigned counsel within thirty days after service of these Interrogatories.

**PRELIMINARY INSTRUCTIONS**

1.      _Manner of Answering._  In answering these Interrogatories, you should furnish such information as is known to you regardless of whether this information is obtained by you, known by you, or known to or obtained by any of your attorneys or other agents or representatives.  If you are unable to answer any interrogatory in full, please explain why you are unable to answer it, state the nature of the information and knowledge you cannot furnish, and answer to the fullest extent possible.  If your answers are qualified in any manner, state the nature of the qualification.

2.      *Scope of the Requests*.  All requests are for information applicable to, relating to, or concerning the Defendant, as Defendant is defined in the Definitions section.  The time period for information sought is from **January 1, 2004, to the present date**, unless otherwise specified

3.      *In Case of Ambiguity*.  If, in responding to these Interrogatories, you encounter any ambiguity in construing any interrogatory, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

4.      *Objections*.  If you object to part of an interrogatory, state your objection and respond to the remaining portion of that interrogatory.  If an objection to an interrogatory is based upon a claim of privilege, attorney work product, or any other basis, please identify in writing each piece of information so withheld by providing the following information:

a.      the possessor(s), author(s), addressee(s), present custodian(s), and date of such information;

b.      all other persons who have seen or learned of all or part of any such information;

c.      the method by which, and reason why, each such person obtained access to such information;

d.      a summary of such information; and

e.      the nature of the privilege asserted and any statutes, rules, or cases that you contend support the assertion of privilege.

5.      *Continuing Nature of Interrogatories*.  These Interrogatories are continuing in character so as to require you to promptly amend or supplement your response if you discover or obtain further material information in accordance with Fed. R. Civ. P. 26(e).

11. The terms "you," "your," and "Defendant," refer to Defendant Borders Group, Inc. and its trustees, officials, agents, servants, employees, representatives, attorneys, predecessors or successors in interest, and any persons acting for or on behalf of Borders Group, Inc.

12. The term "14th Street Borders" means the Borders bookstore located at 600 14th Street, N.W., Washington, D.C.

13. The term "racial profiling" means the practice of relying, to any degree, on race, ethnicity, color, or national origin in selecting which individuals to subject to security-related activities.

14. The term "identify" shall mean that your response to the interrogatory should contain the following information:

a. When used in reference to a natural person, provide the name and last known address and telephone number of such person; the address and telephone number of the last known place of business where such person is or was employed or headquartered; a description of the information and/or knowledge requested in the interrogatory that is possessed by him or her; and the title, duties, and employer of such person during the relevant time period.

b. When used in reference to documents, reports or exhibits, provide the name and title of the author(s) or creator(s), addressee(s), persons copied, date, subject matter and character (*e.g.*, letter, memorandum, chart, etc.); information sufficient to locate each document; and a description of the information contained therein.

c. When used in reference to a course of action or conduct, oral communication, meeting, or discussion, provide the date, time, and place it occurred; the identity of each person participating; the subject matter; and whether any notes, minutes, or other memoranda of it were made.

## INTERROGATORIES

Interrogatory No. 1.   State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information

relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

Answer:

Interrogatory No. 2.   Describe in detail the basis for each defense raised in your Answer and state all facts that support each such defense.

Answer:

Exhibit 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Ronald Newman                          *

      Plaintiff,                  *

  v.                                  *          **CASE #: 1:07-cv-00492-RWR**


Borders, Inc., et al.,                 *

      Defendants.                 *

*          *          *          *          *          *          *

## DEFENDANT BORDERS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of Requests for

Production of Documents to Defendant Borders, Inc. in the above-listed case.

## GENERAL OBJECTIONS

A.     Borders objects to these Requests to the extent they seek the identity of documents or
       request information protected from discovery by the attorney-client privilege, work-
       product doctrine, the consulting expert privilege, the self-critical analysis doctrine, or any
       other privilege, or that is otherwise immune or protected from disclosure.  Borders does
       not waive any applicable protections or privileges through the production of documents
       or the supplying of information in response to these Requests.  On the contrary, Borders
       specifically preserves any and all applicable protections and privileges.

B.     Borders objects to these Requests as overbroad and unduly burdensome to the extent they
       call for the identification of "all" documents or information or "any" or "every"
       document or piece of information when all relevant facts can be obtained from fewer than
       "all" documents or "any" document.  Read literally, such Requests improperly call for the
       production of identical and duplicative documents or exact copies, which is harassing,
       overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of
       admissible evidence.

C.    Borders objects to these Requests to the extent they require Borders to obtain and produce information concerning any entity other than Defendant Borders on the grounds that such information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and because such Requests are unduly burdensome and seek information not within Borders's care, custody, or control.  Borders further objects to being required to make available for inspection and copying documents that Plaintiff already has or that are in the care, custody, and control of third parties, and thus are equally available to Plaintiff as they are to Borders.

D.    Borders objects to these Requests as overbroad, unduly burdensome, oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action.

E.    Borders objects to these Requests to the extent they seek Borders's confidential and proprietary information, including trade secrets or other confidential research, development, or commercial information, the disclosure of which will or may cause irreversible harm to Borders.

F.    Borders makes each objection to these Requests and responds to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (1) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (2) the right to object on any ground, at any time, to Requests, Interrogatories, or other discovery procedures involving or relating to the subject of the Request to which Borders has responded herein; and (3) the right at any time to revise, correct, add to, or clarify any of the objections and answers made herein.  Furthermore, any inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Borders's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

G.    Borders objects to these Requests to the extent they call for information or documents that are unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive.  In particular, Borders objects to these Requests as overbroad and unduly burdensome to the extent the information requested is publicly available and, consequently, equally available to Plaintiff as it is to Borders.

H.    Borders objects to these Requests to the extent they are vague, ambiguous, argumentative, duplicative, overbroad, unduly burdensome or oppressive, call for an unreasonable investigation on the part of Borders, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action.  Borders further objects to these Requests to the extent they seek information

2

or documents or impose obligations beyond those permitted by the Local Rules of this Court or any applicable Order of this Court.

Subject to the above objections, Borders responds as follows to Plaintiff's First Set of Requests for Production of Documents.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** All documents related to Ronald Newman.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Ronald Newman. Discovery in this matter is incomplete and ongoing. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 2:** All documents related to Clifton Walker, III.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Clifton Walker, III that can reasonably be identified as responsive to this request. Discovery in this matter is incomplete and ongoing. Borders reserves the right to supplement and/or modify this Response when and if necessary.

3

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 5:**  The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 6:**  All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in

its possession, custody, or control that relate to Borders' Loss Prevention materials from the

relevant period.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right

to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 7:**  Documents sufficient to identify every person who shopped at the 14th
Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card
records and Borders Rewards records.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege, the work-product doctrine or other provisions of law, including, but not

limited to, any and all relevant privacy laws and consumer protection and/or customer privacy

laws.  Subject to and without waiving these objections, Borders will consider in good faith a

request that identifies specific categories of documents or information that are relevant to the

issues in this lawsuit.

**REQUEST NO. 8:**  All documents related to any oral or written, formal or informal complaint
about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who
was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also

6

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control that relate to any records of conduct for Darlene White concerning the

incident on December 2, 2005 as alleged in Plaintiff's Complaint.  Borders specifically reserves

any and all objections previously stated in these Objections and Responses to Plaintiff's First Set

of Requests for Production of Documents pertaining to all documents related to Darlene White.

**REQUEST NO. 9:**  All documents related to surveys or interviews of people who shopped at
the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Interrogatory because it is vague, ambiguous,

argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by

the phrase "surveys or interviews," and seeks information that is neither relevant to the claims or

defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Borders also objects to this Request to the extent it calls for information protected from

disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law,

including, but not limited to, any and all relevant privacy laws and consumer protection and/or

customer privacy laws.  Subject to and without waiving these objections, Borders will consider

in good faith a request that identifies specific categories of documents or information that are

relevant to the issues in this lawsuit.

7

**REQUEST NO. 10:**  All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Borders' Loss Prevention materials from the relevant period.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 11:**  All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Borders' Loss Prevention materials from the relevant period.  Discovery in this matter is

BA2DOCS1/344822

incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response

when and if necessary.

**REQUEST NO. 12:**  Documents sufficient to identify the management structure applicable to
the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, and improperly vague and confusing.  Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control sufficient to identify the management structure applicable to the 14th Street

Borders on December 2, 2005.

**REQUEST NO. 13:**  Documents sufficient to show a scale layout of the 14th Street Borders as it
existed on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, and improperly vague and confusing.  Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control sufficient to show a scale layout of the 14th Street Borders as it existed on

December 2, 2005.

**REQUEST NO. 14:**  All documents related to allegations of discrimination based on events
taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

9

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders further objects to this Request on the grounds that it is improperly vague and confusing as to what is meant by the phrase "related to allegations of discrimination."  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 15:**  All documents relating to any investigation by the District of Columbia Office of Human Rights or any other government agency concerning alleged discrimination at or related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders further objects to this Request on the grounds that it is improperly vague and confusing as to what is meant by the phrase "relating to any investigation."  Borders also objects to this Request to the extent that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 16:** All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and improperly vague and confusing as to what is meant by the phrase "related to any allegation of racial profiling." Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 17:** Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders refers Plaintiff to Borders' Annual Report, which is available to the public.

BA2DOCS1/344822

Exhibit 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*          \*          \*          \*          \*          \*          \*

## DEFENDANT BORDERS GROUP, INC.'S
## OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## <u>FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of Requests for

Production of Documents to Defendant Borders Group, Inc. in the above-listed case.

## <u>GENERAL OBJECTIONS</u>

A.    Borders objects to these Requests to the extent they seek the identity of documents or
request information protected from discovery by the attorney-client privilege, work-
product doctrine, the consulting expert privilege, the self-critical analysis doctrine, or any
other privilege, or that is otherwise immune or protected from disclosure.  Borders does
not waive any applicable protections or privileges through the production of documents
or the supplying of information in response to these Requests.  On the contrary, Borders
specifically preserves any and all applicable protections and privileges.

B.    Borders objects to these Requests as overbroad and unduly burdensome to the extent they
call for the identification of "all" documents or information or "any" or "every"
document or piece of information when all relevant facts can be obtained from fewer than
"all" documents or "any" document.  Read literally, such Requests improperly call for the
production of identical and duplicative documents or exact copies, which is harassing,
overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of
admissible evidence.

C.      Borders objects to these Requests to the extent they require Borders to obtain and produce information concerning any entity other than Defendant Borders on the grounds that such information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and because such Requests are unduly burdensome and seek information not within Borders's care, custody, or control.  Borders further objects to being required to make available for inspection and copying documents that Plaintiff already has or that are in the care, custody, and control of third parties, and thus are equally available to Plaintiff as they are to Borders.

D.      Borders objects to these Requests as overbroad, unduly burdensome, oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action.

E.      Borders objects to these Requests to the extent they seek Borders's confidential and proprietary information, including trade secrets or other confidential research, development, or commercial information, the disclosure of which will or may cause irreversible harm to Borders.

F.      Borders makes each objection to these Requests and responds to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (1) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (2) the right to object on any ground, at any time, to Requests, Interrogatories, or other discovery procedures involving or relating to the subject of the Request to which Borders has responded herein; and (3) the right at any time to revise, correct, add to, or clarify any of the objections and answers made herein.  Furthermore, any inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Borders's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

G.      Borders objects to these Requests to the extent they call for information or documents that are unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive.  In particular, Borders objects to these Requests as overbroad and unduly burdensome to the extent the information requested is publicly available and, consequently, equally available to Plaintiff as it is to Borders.

H.      Borders objects to these Requests to the extent they are vague, ambiguous, argumentative, duplicative, overbroad, unduly burdensome or oppressive, call for an unreasonable investigation on the part of Borders, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action.  Borders further objects to these Requests to the extent they seek information

2

or documents or impose obligations beyond those permitted by the Local Rules of this Court or any applicable Order of this Court.

Subject to the above objections, Borders responds as follows to Plaintiff's First Set of Requests for Production of Documents.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**  All documents related to Ronald Newman.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Ronald Newman.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 2:**  All documents related to Clifton Walker, III.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Clifton Walker, III that can reasonably be identified as responsive to this request.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

3

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 5:**  The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 6:**  All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in

its possession, custody, or control that relate to Borders' Loss Prevention materials from the

relevant period. Discovery in this matter is incomplete and ongoing. Borders reserves the right

to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 7:**  Documents sufficient to identify every person who shopped at the 14th
Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card
records and Borders Rewards records.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege, the work-product doctrine or other provisions of law, including, but not

limited to, any and all relevant privacy laws and consumer protection and/or customer privacy

laws. Subject to and without waiving these objections, Borders will consider in good faith a

request that identifies specific categories of documents or information that are relevant to the

issues in this lawsuit.

**REQUEST NO. 8:**  All documents related to any oral or written, formal or informal complaint
about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who
was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege and/or work-product doctrine. Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control that relate to any records of conduct for Darlene White concerning the

incident on December 2, 2005 as alleged in Plaintiff's Complaint. Borders specifically reserves

any and all objections previously stated in these Objections and Responses to Plaintiff's First Set

of Requests for Production of Documents pertaining to all documents related to Darlene White.

**REQUEST NO. 9:** All documents related to surveys or interviews of people who shopped at
the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Interrogatory because it is vague, ambiguous,

argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by

the phrase "surveys or interviews," and seeks information that is neither relevant to the claims or

defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Borders also objects to this Request to the extent it calls for information protected from

disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law,

including, but not limited to, any and all relevant privacy laws and consumer protection and/or

customer privacy laws. Subject to and without waiving these objections, Borders will consider

in good faith a request that identifies specific categories of documents or information that are

relevant to the issues in this lawsuit.

7

**REQUEST NO. 10:**  All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Borders' Loss Prevention materials from the relevant period.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 11:**  All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Borders' Loss Prevention materials from the relevant period.  Discovery in this matter is

incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response

when and if necessary.

**REQUEST NO. 12:**  Documents sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, and improperly vague and confusing.  Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control sufficient to identify the management structure applicable to the 14th Street

Borders on December 2, 2005.

**REQUEST NO. 13:**  Documents sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, and improperly vague and confusing.  Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control sufficient to show a scale layout of the 14th Street Borders as it existed on

December 2, 2005.

**REQUEST NO. 14:**  All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders further objects to this Request on the grounds that it is improperly vague and confusing as to what is meant by the phrase "related to allegations of discrimination."  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 15:**  All documents relating to any investigation by the District of Columbia Office of Human Rights or any other government agency concerning alleged discrimination at or related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders further objects to this Request on the grounds that it is improperly vague and confusing as to what is meant by the phrase "relating to any investigation."  Borders also objects to this Request to the extent that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 16:**  All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and improperly vague and confusing as to what is meant by the phrase "related to any allegation of racial profiling."  Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 17:**  Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders refers Plaintiff to Borders' Annual Report, which is available to the public.

11

Exhibit 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Ronald Newman | * | |
| Plaintiff, | * | |
| v. | * | CASE #: 1:07-cv-00492-RWR |
| Borders, Inc., et al., | * | |
| Defendants. | * | |

\*            \*            \*            \*            \*            \*            \*

## DEFENDANT BORDERS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of

Interrogatories to Defendant Borders, Inc. in the above-listed case.

## GENERAL OBJECTIONS

A.    Borders objects to each Interrogatory to the extent it is overbroad, unduly burdensome, harassing and seeks information that is neither relevant to the issues in this case nor reasonably calculated to lead to the discovery of admissible evidence.

B.    Borders objects to each Interrogatory to the extent it seeks information regarding documents that are already in Plaintiff's possession, custody, or control, or equally available to Plaintiff, on the grounds that each Interrogatory is unreasonably cumulative and duplicative, and that the information or documents are obtainable from a source that is more convenient, less burdensome and less expensive.

C.    Borders objects to each Interrogatory to the extent it seeks information regarding documents that are protected by the attorney-client privilege, the work-product doctrine, the self-critical analysis privilege, or any other applicable privileges or doctrines that limit discovery.  Borders does not intend to waive by these Responses, or by production of documents, any privileges or claims of confidentiality associated with information or documents produced in this action.

D.      Borders objects to each Interrogatory to the extent it seeks production of confidential, trade secret, and/or proprietary information.

E.      Borders objects to each Interrogatory to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the relevant federal rules and any applicable Court orders.

F.      Borders reserves the right to and does not waive or intend to waive, by reason of its Responses to these Interrogatories, its right to:

    (1)      revise, amend, or supplement these Responses;

    (2)      object on any grounds to the use of information discovered in response to the Interrogatories for any purpose, in whole or in part, in this or any other proceeding, action, or matter;

    (3)      object on any grounds, at any time, to other discovery procedures or requests relating to the subject matter of the Interrogatories; and

    (4)      object on any grounds to the admissibility of any information produced in response to the Interrogatories.

G.      Borders objects to each Interrogatory that uses the terms or phrases "any," "every," "all," "each and every" and "any and all" to the extent that these phrases are overbroad, unduly burdensome, vague, ambiguous, confusing, argumentative, harassing and seek information that is neither relevant to the allegations in Plaintiff's complaint, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the above objections, Borders responds as follows to Plaintiff's First Set of

Interrogatories to Defendant Borders, Inc.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify the two employees referenced in the following sentence of paragraph 18 of your Answer in this action: "Borders further admits that two Borders employees confirmed the identity of Ms. White."

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders states that Borders employees, Patricia Spurlock and Robert Fath confirmed the

identity of Ms. White.

2

**INTERROGATORY NO. 2:**  State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Interrogatory because it is vague, ambiguous, argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by the phrases "allegation of racial profiling" and "submitted against you," and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Interrogatory to the extent that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**INTERROGATORY NO. 3:**  Identify and provide the position, title, dates of employment and job responsibilities of every person who works or worked at, or has or had managerial responsibilities for, the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Interrogatory because it is vague, ambiguous, overbroad and unduly burdensome.  Subject to and without waiving these objections, Borders refers

3

Exhibit 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |
| *     *     *     *     *     *     * | | |

**DEFENDANT BORDERS GROUP, INC.'S
OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of

Interrogatories to Defendant Borders Group, Inc. in the above-listed case.

**GENERAL OBJECTIONS**

A.    Borders objects to each Interrogatory to the extent it is overbroad, unduly burdensome,
harassing and seeks information that is neither relevant to the issues in this case nor
reasonably calculated to lead to the discovery of admissible evidence.

B.    Borders objects to each Interrogatory to the extent it seeks information regarding
documents that are already in Plaintiff's possession, custody, or control, or equally
available to Plaintiff, on the grounds that each Interrogatory is unreasonably cumulative
and duplicative, and that the information or documents are obtainable from a source that
is more convenient, less burdensome and less expensive.

C.    Borders objects to each Interrogatory to the extent it seeks information regarding
documents that are protected by the attorney-client privilege, the work-product doctrine,
the self-critical analysis privilege, or any other applicable privileges or doctrines that
limit discovery.  Borders does not intend to waive by these Responses, or by production
of documents, any privileges or claims of confidentiality associated with information or
documents produced in this action.

D.    Borders objects to each Interrogatory to the extent it seeks production of confidential, trade secret, and/or proprietary information.

E.    Borders objects to each Interrogatory to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the relevant Virginia Rules and any applicable Court orders.

F.    Borders reserves the right to and does not waive or intend to waive, by reason of its Responses to these Interrogatories, its right to:

   (1)    revise, amend, or supplement these Responses;
   (2)    object on any grounds to the use of information discovered in response to the Interrogatories for any purpose, in whole or in part, in this or any other proceeding, action, or matter;
   (3)    object on any grounds, at any time, to other discovery procedures or requests relating to the subject matter of the Interrogatories; and
   (4)    object on any grounds to the admissibility of any information produced in response to the Interrogatories.

G.    Borders objects to each Interrogatory that uses the terms or phrases "any," "every," "all," "each and every" and "any and all" to the extent that these phrases are overbroad, unduly burdensome, vague, ambiguous, confusing, argumentative, harassing and seek information that is neither relevant to the allegations in Plaintiff's complaint, nor reasonably calculated to lead to the discovery of admissible evidence.

   Subject to the above objections, Borders responds as follows to Plaintiff's First Set of Interrogatories to Defendant Borders Group, Inc.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**  State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

   Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Interrogatory because it is vague, ambiguous,

2

argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by the phrases "allegation of racial profiling" and "submitted against you," and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Interrogatory to the extent that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**INTERROGATORY NO. 2:** Describe in detail the basis for each defense raised in your Answer and state all facts that support each such defense.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Interrogatory because it is vague, ambiguous, overbroad and unduly burdensome. Borders also objects to this Interrogatory on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Dated: June 23, 2008                    Respectfully submitted,


_____/s/_____
Craig A. Thompson (Bar No. 500168)
Robert L. Wilkins (Bar No. 429065)
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
(202) 344-4058
*Attorneys for Defendants*

3

Exhibit 12

RELMAN & DANE PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

July 3, 2008

**Via electronic mail only**

Craig A. Thompson
Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
CAThompson@Venable.com
RLWilkins@Venable.com

　　Re:　　*Newman v. Borders, Inc., et al.*, No: 1:07-cv-0492-RWR (D.D.C.)

Dear Craig and Robert:

　　I am writing to address serious deficiencies in Borders, Inc.'s and Borders Group, Inc.'s (collectively, "Borders" or "Defendants") responses to Plaintiff's First Sets of Requests for Production of Documents and answers to Plaintiff's First Sets of Interrogatories.

　　I note at the outset that many of your objections appear to be boilerplate and unrelated to the particular discovery request. For example, you object that the request for documents sufficient to show the layout of the Borders store where the events at issue occurred (number 13) is "overbroad, unduly burdensome, and improperly vague and confusing." Because so many of your objections appear to be boilerplate, we will not address each and every one in this letter. Rather, we address herein the objections that appear to be the actual bases for your failure to produce certain documents or fully answer certain interrogatories.

　　Before turning to specific deficiencies in Defendants' answers, responses and production, let me note that to the extent we can jointly identify particular, narrow categories of documents encompassed within a broader category of documents that must otherwise be produced in full – such as 401(k) forms contained in a personnel file – we are amenable to discussing their exclusion if it is plain that they are irrelevant.

　　1.　　Defendants Must Produce a Privilege Log

　　Defendants have failed to produce a privilege log, despite objecting to 19 of the 22 document requests on the basis of privilege. The Federal Rules of Civil Procedure plainly

RELMAN & DANE PLLC

require Defendants to provide a privilege log.  *See* Fed. R. Civ. P. 26(b)(5).  Please do so promptly.

>    2.    Documents Related to Plaintiff Ronald Newman

Document request 1 concerns "[a]ll documents related to Ronald Newman."  Your written response and our review of the documents you produced strongly suggest that you are withholding responsive, non-privileged documents.  Specifically, you have not produced any records related to any purchases by Mr. Newman at Borders, even though Mr. Newman was a frequent customer prior to December 2, 2005, and often paid for items by credit card or debit card.  Your request for the same type of documents demonstrates your recognition that such records are discoverable.[1]

>    3.    Documents Related to Borders Personnel On Duty The Evening
>          of the Events At Issue

Document requests 3, 4, 5, and 8 concern personnel who were on duty the evening of the events at issue at the Borders store where the events took place.  These documents concern central participants in these events as well as additional witnesses, and are therefore highly relevant.  Nonetheless, your responses indicate that you will not produce any responsive documents unless Plaintiff narrows the scope of these requests.

Requests 3 and 4 concern "[a]ll documents related to" Pat Spurlock and Darlene White, respectively.  Ms. Spurlock and Ms. White were central actors and Borders' principal representatives in the events at issue.  *See, e.g.*, Complaint ¶¶ 15-23, 25-29.  This is confirmed by Defendants' own documents.  *See, e.g.*, BI000001, BI000004.  Mr. Newman is therefore entitled to discovery of all documents related to them.  *See Bregman v. District of Columbia*, 182 F.R.D. 352, 356, 358-59 (D.D.C. 1998) (granting motion to compel production by employer of personnel, disciplinary, and training files concerning employee who was central actor in lawsuit and "any other files" maintained by employer on that employee).

Requests 5 and 8 concern the personnel files of persons who were on duty during the five hour period between 4 P.M. and closing at the Borders store where the events at issue took place on the day of those events, and complaints about the conduct of those individuals.  The request is narrowly tailored to the files of persons who were involved in the events and the files of persons who witnessed the events and/or witnessed the behavior that evening of persons who were involved in the events.  In addition, all of these people may be able to identify other witnesses, *e.g.*, customers shopping at the store that evening. Nonetheless, your response to request 5 again indicates that you will not produce any responsive documents unless Plaintiff narrows the scope of these requests.  You refuse to produce any documents in response to request 8 other than documents concerning the conduct of Darlene White during the events at issue.

---

[1]    Your request number ten states: "Please produce any and all documents or property, which reflect or refer to purchases you have made at any Borders store since December 2, 2002.  Your responses should include, but not be limited to, receipts, bank statements, and credit card statements reflecting any such purchases."

RELMAN & DANE PLLC

In addition to Ms. Spurlock and Ms. White, Defendants' documents indicate that Bob Fath was involved in the events at issue. *See* BI000001-BI000004. Accordingly, there is no legitimate basis for withholding Mr. Fath's personnel file or complaints or reports of improper conduct by Mr. Fath. *See Bregman*, 182 F.R.D. at 356, 358-59.

With respect to persons within the scope of Document requests 5 and 8 other than Ms. Spurlock, Ms. White, and Mr. Fath, Plaintiff is willing to limit its request to documents from their personnel files suggesting in any manner that those persons ever acted dishonestly, gave an untruthful statement, or engaged in discriminatory or retaliatory behavior, and documents sufficient to identify them. Plaintiff reserves the right, however, to withdraw this limitation with respect to any person should further discovery demonstrate that the person had an active role in the events at issue or their aftermath.

4.      Documents Related to the Identification of Other Witnesses

Document requests 7 and 9 concern people who shopped at the Borders store at issue on the day of the events and therefore are potential witnesses. The requests seek documents sufficient to identify such persons and statements regarding their experience at Borders. Discovery of such information is explicitly permitted by the Federal Rules: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including . . . the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Requests 7 and 9 are reasonably calculated to lead to such information, as well as statements by customers that may address the events at issue and the behavior of the personnel involved on the day of the events.

Furthermore, it is apparent that Borders has devoted significant resources to compiling detailed information about its customers for marketing purposes, and that much of this information is collected through in-store visits and purchases and through e-mail. Despite your objection that the phrase "surveys and interviews" in Request 9 is "confusing," it is clear that the phrase encompasses surveys and interviews conducted as part of such efforts. Moreover, there can be little doubt that information responsive to both requests is maintained electronically and in a searchable format, and your objections that the requests are burdensome is therefore unpersuasive. Defendants' wholesale refusal to provide any responsive documents cannot be justified.

5.      Security Records Applicable to the Store At Issue on the Evening
        of the Events At Issue

Document request 6 seeks "[a]ll records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda." Little could be more relevant to the facts of this case, including the credibility of Ms. White and Ms. Spurlock. Indeed, Defendants' own documents confirm that, as alleged in the Complaint, Ms. White told Mr. Newman that a Borders security tape recorded him stealing.

3

RELMAN & DANE PLLC

*See* BI000002, BI000004; Complaint ¶¶ 19, 21.  They also confirm that Ms. White and Ms. Spurlock viewed a Borders security tape in the midst of the incident, as alleged in the Complaint.  *See* BI000002; Complaint ¶¶ 22-23, 25-26.

Nonetheless, you have provided only six pages of documents that are specific to security at the store on the evening in question, *see* BI000001-BI000006, and general written materials regarding shoplifting that are not specific to December 2, 2005, *see* BI000009-BI000093.  You have not produced the security videotape or any other recordings or logs.  Please supplement this production promptly by producing the videotape and all other responsive materials.

6.    Documents and Interrogatories Related to Other Incidents of Discrimination

Document requests 14, 15, and 16 and Interrogatories 1 (to Borders Group, Inc.) and 2 (to Borders, Inc.) concern other incidents of discrimination at Borders stores.  Specifically, requests 14 and 15 concern allegations of discrimination and governmental investigations of such allegations, respectively, at Borders stores in Washington, D.C. (of which there are only three, according to Defendants' website).  Request 16 and the interrogatories concern other allegations of racial profiling at any Borders store.  Defendants have failed to produce information in response to these requests.

It is well-established that, in a discrimination lawsuit, the plaintiff is entitled to introduce evidence regarding the defendant's similar treatment of others.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Admissible evidence is plainly discoverable.  *See* Fed. R. Civ. P. 26(b)(1).  These discovery requests target precisely such information.  The two that concern forms of discrimination other than racial profiling address only the store where the events took place and Defendants' two other stores in Washington D.C., which we believe are managed by the same personnel.  Only the request and interrogatories that concern racial profiling – the very practice at issue here – also addresses other stores.

In addition, you object that the phrases "related to any allegation of racial profiling," "related to allegations of discrimination," and "related to any investigation" in requests 14, 15, and 16, respectively, and the phrase "allegation of racial profiling" in the interrogatories are vague and confusing.  These objections are groundless.  You use the term "related to" in Defendants' own document requests.  With respect to "racial profiling," Mr. Wilkins has testified before the United States Senate on the subject, using that very phrase.  Moreover, the term is defined in Plaintiff's document requests.  *See, e.g.*, Document Request Definition No. 13.  With respect to "allegations of discrimination," "investigation," and "allegations," surely you are familiar with these terms.  There is no reason why the combination of these words would confuse.

7.    Documents Related to Policies, Procedures, Training, Guidance, and Instructions Concerning Security, Shoplifting, Customer Relations, and Discrimination

Document request 10 concerns the policies and procedures regarding security, shoplifting, customer relations, and discrimination applicable to the Borders store at issue on the

4

RELMAN & DANE PLLC

day of the events at issue.[2]  Documents request 11 concerns the manner in which persons working at that store have been directed regarding the same subjects – security, shoplifting, customer relations, and discrimination.  These requests are narrowly tailored to specific policy areas and related materials that are plainly relevant.  In response, however, Defendants have produced only materials related to shoplifting.  Your boilerplate objections to these requests provide no discernable basis for withholding materials regarding customer relations, discrimination, or other aspects of security.

      8.      Documents Sufficient to Show the Store's Layout

Document request 13 asks for documents "sufficient to show a scale layout of the 14th Street Borders at it existed on December 2, 2005."  Your written response indicates that you are producing such documents, and we did receive one page (BI000095) that appears to be a drawing of the lower level and the mezzanine connected to the lower level.  We have not, however, received similar documents pertaining to the upper floor, where events at issue also took place.  *See* Complaint ¶¶ 29-30.  Please produce such documents promptly.

      9.      Insurance Policy

Document request 18 concerns insurance and indemnity agreements that may apply to this matter.  Your written response identifies a policy by insurer and policy number, but you have not produced the actual policy.  Similarly, in Defendants initial disclosures, only the insurer, insurer's address, policy number, and effective date were disclosed.  Defendants are required to provide or make available for inspection and copying the actual policy both in response to Plaintiff's document request and as part of its initial disclosures.  *See* Fed. R. Civ. P. 34(b)(2)(B); *id.* 26(a)(1)(A)(iv).  Please do so promptly.

      10.      Documents Related to the Allegations, Claims, or Defenses Asserted In Defendants' Answer

Document request 20 seeks "[a]ll documents related to any allegation, claim or defense asserted in your Answer.  Defendants object and fail to provide any documents.  Please clarify whether you are withholding responsive documents pursuant to your objections, whether you intended to state that Defendants do not have possession, custody or control of any documents that are not also responsive to other document requests, or whether Defendants are stating that no non-privileged documents in their possession, custody or control are related to the allegations, claims, and defenses in their Answer.

      11.      Defendants' Objections Based On Privacy

---

[2]      While request 10 was initially propounded to address all policies and procedures applicable to the store, Plaintiff will limit the scope of the request to policies and procedures concerning security, shoplifting, customer relations, and discrimination.

RELMAN & DANE PLLC

You frequently object to document requests on the basis of unspecified privacy, consumer protection, and customer privacy laws. Such concerns may easily be addressed through redaction or the entry of a protective order. *See, e.g., Nuskey v. Lambright,* ___ F.R.D. ___, No. 06-1573 (PLF/JMF), 2008 WL 2388914, at *7 (D.D.C. June 10, 2008) ("the parties have entered into a stipulated protective order and, as a result, any privacy concerns are negligible") (internal quotation marks and citation omitted). Indeed, at your request, our Joint Rule 16.3 Statement informs the Court that a protective order may be needed and that the parties will attempt to agree to an appropriate protective order in advance of the first due date for discovery responses. *See* Joint Rule 16.3 Statement (Apr. 14, 2008) (Docket No. 15) at 5. By failing to notify us until serving your responses that you intend to withhold documents on these bases, you have needlessly delayed discovery. Please confirm that you will withdraw these objections upon entry of a protective order, and we can commence to negotiate one.

12.     Defendants' Failure to Produce Documents That They Recognize Are Discoverable

In response to document requests 3, 4, 5, 7, 9, 14, 15, and 16, you state that "Borders will consider . . . a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit." Every time you make this statement, you fail to produce any documents in response to the request. This type of response is improper. Where Borders has responsive, discoverable documents, it may not withhold them on the basis that some aspect of the document request is purportedly too broad or otherwise objectionable. *See* Fed. R. Civ. P. 34(b)(2)(C). If you persist in taking the position that these requests are in part objectionable, please promptly produce the documents that you acknowledge are discoverable, and we can separately address the validity or invalidity of your objections.

13.     Identification of Persons Assigned to the Borders Store Where the Events At Issue Occurred

Interrogatory 3 to Borders, Inc. asks Borders, Inc. to "[i]dentify and provide the position, title, dates of employment and job responsibilities of every person who works or worked at, or has or had managerial responsibilities for, the 14th Street Borders." Your response directs us to BI000094 from your document production which merely provides the names and titles of four individuals with management positions at the store. Even with respect to these individuals, you have not provided their dates of employment, job responsibilities, or the other information required by the definition of the term "identify" in Plaintiff's interrogatories. Please do so.

With respect to other persons, Plaintiff will limit the scope of the interrogatory to persons who worked at or had managerial responsibilities for the 14th Street Borders on December 2, 2005. The interrogatory regarding such individuals is reasonably calculated to lead to the discovery of admissible evidence including, *inter alia*, the identification of other witnesses, the credibility of Ms. White, Ms. Spurlock, and Mr. Fath, and other acts of discrimination by White, Spurlock, or Fath. Indeed, Defendants' own documents indicate that persons other than those noted on BI000094 were involved in the events at issue and/or their immediate aftermath. *See*

RELMAN & DANE PLLC

BI000002, BI000004.  Please provide a full response to this interrogatory, as limited herein, promptly.

14.    <u>Identification of Persons Who Assisted in Responding to Interrogatories</u>

Interrogatory 5 to Borders, Inc. asks Borders, Inc. to identify persons who assisted in preparing responses.  You refer us to the Verification page, but that page identifies only one individual (Lis Morrow) while stating that other employees of Borders, Inc. assisted in gathering information.  Please identify the other employees.

Relatedly, it is not clear whether you have provided a Verification page for the interrogatory responses of Borders Group, Inc.  We received two identical Verification pages, neither of which references Borders Group, Inc.

\*    \*    \*

Please produce the documents and provide the interrogatory responses addressed in this letter – or otherwise reply so that we may discuss the issues raised herein – by Friday, July 11, 2008.  If we do not receive a timely reply, we will prepare a motion to compel.

Sincerely,

Glenn Schlactus

Exhibit 13

RELMAN & DANE PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

July 29, 2008

**Via Electronic Mail Only**

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
CAThompson@Venable.com

Tina H. Saunders
Venable, LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
THSaunders@Venable.com

      Re:     *Newman v. Borders, Inc., et al.*, No: 1:07-cv-0492-RWR (D.D.C.)

Dear Craig and Tina:

      I am writing to memorialize our meet and confer telephone conversation of yesterday. If you believe my understanding of our conversation is mistaken, or that I have omitted anything of significance, please let me know.

**I.     Defendants' Discovery Responses**

      The following tracks the discussion of issues set forth in my letter of July 3, 2008, regarding Defendants' responses to Plaintiff's First Sets of Requests for Production of Documents and answers to Plaintiff's First Sets of Interrogatories. Other than case law that you contend supports the positions you are taking, you will provide the materials noted below by August 1, 2008. You expect to provide the case law noted below sooner.

      Expect as specifically noted below, Plaintiff does not accept the limitations that Defendants are applying to their discovery responses. As we discussed, Plaintiff will consider filing a motion to compel with respect to the issues we cannot resolve.

RELMAN & DANE PLLC

1.    <u>Defendants Must Produce a Privilege Log</u>

You agreed to produce a privilege log.

2.    <u>Documents Related to Plaintiff Ronald Newman</u>

You are continuing to search for responsive documents.  You agreed to produce or include on your privilege log all responsive documents that you locate.

3.    <u>Documents Related to Borders Personnel On Duty The Evening of the Events At Issue</u>

With respect to documents related to Darlene White, you stated that Defendants will only produce documents that are about the incident at issue in this lawsuit and documents related to any other allegations of racial profiling by Ms. White.  You stated that you have already produced all such documents.  You object to producing any other documents related to Ms. White, including documents related to other allegations of discrimination by her and other documents from her personnel files.  You agreed to provide case law that you contend supports Defendants' objections.

With respect to documents related to Pat Spurlock, you stated that Defendants will only produce documents that are about the incident at issue in this lawsuit.  You stated that you have already produced all such documents.  You object to producing any other documents related to Ms. Spurlock, including other documents from her personnel file.  Based on your reading of the Complaint, you contend that Defendants have lesser discovery obligations with respect to information related to Ms. Spurlock than Ms. White because Plaintiff's negligent supervision claim has been dismissed.  As I stated in our telephone call, your view of the Complaint is overly narrow.  Plaintiff alleges that Ms. Spurlock effectively ratified and furthered Ms. White's discrimination, *see* Compl. ¶¶ 26, 31, and played a control role in the events at issue, *see, e.g., id.* ¶¶ 21-31.  You agreed to provide case law that you contend supports Defendants' objections.

With respect to Bob Fath, you stated that Defendants will only produce documents that are about the incident at issue in this lawsuit.  You stated that you have already produced all such documents.  You object to producing any other documents related to Mr. Fath, including other documents from his personnel file.  You represented that Defendants have no documents related to complaints about, or reports of improper conduct by, Mr. Fath (you did not make a similar representation regarding any other employee).  You agreed to provide case law that you contend supports Defendants' objections.

With respect to other employees who were on duty at the 14th Street Borders between 4 P.M. and closing on December 2, 2005, you agreed to produce documents sufficient to identify them, consistent with the definition of "identify" set forth in Plaintiff's discovery requests.  You object to producing any documents from these employees' personnel files suggesting in any manner that they ever acted dishonestly, gave an untruthful statement, or engaged in discriminatory or retaliatory behavior.  We agreed to provide each other with case law regarding

RELMAN & DANE PLLC

the legitimacy of Defendants' objections. To that end, *see Waters v. United States Capitol Police Board*, 216 F.R.D. 153, 164 (D.D.C. 2003), requiring the production of such documents from the personnel files of "other employees who may have information regarding plaintiff's claims."

      4.      <u>Documents Related to the Identification of Other Witnesses</u>

You stated that Defendants will not produce any documents related to customers of Borders, regardless of whether a protective order is entered by the Court. This includes purchase records or Borders Rewards applications identifying persons who were in the 14th Street Borders after 4 P.M. on December 2, 2005. You stated that, apart from any such records, Defendants do not have any way to identify people who shopped at the store during that time period. In addition, you have not determined whether any such Borders Rewards records exist.

You stated that you have determined that no surveys or interviews of any sort were obtained by Defendants from, or conducted by Defendants with, anyone related to his or her presence in the 14th Street Borders on December 2, 2005. You also stated that Borders received no complaints related to this store on this day (although it was not stated, I understood this to exclude Mr. Newman's complaint).

      5.      <u>Security Records Applicable to the Store At Issue on the Evening of the Events At Issue</u>

You agreed to search for logs identifying security personnel who were working at the 14th Street Borders during the specified time period and for other types of logs or other documents that are responsive to this request but have not been produced. You will produce such documents if located.

You stated that Defendants have not retained any video recordings made of the 14th Street Borders on December 2, 2005.

      6.      <u>Documents and Interrogatories Related to Other Incidents of Discrimination</u>

You stated that Defendants will only produce documents related to other allegations of racial profiling at the 14th Street Borders. You have not determined whether Defendants have any such documents. You will not withhold documents based on any assertion that the terms noted in my letter are ambiguous.

You stated that Defendants will not produce documents related to allegations of types of discrimination other than racial profiling at the 14th Street Borders. I reiterate that limiting Defendants' production to documents related to only one type of discrimination, *i.e.*, racial profiling, is improper. *See, e.g., Waters*, 216 F.R.D. at 161 & n.7 (requiring production of "all complaints of discrimination on the basis of race, color, and national origin" in case alleging that employee was terminated because of racial discrimination).

3

RELMAN & DANE PLLC

You stated that Defendants will not produce documents related to allegations of racial profiling or any other form of discrimination at other stores in Washington, D.C., or elsewhere.

You will provide case law that you believe supports Defendants' objections.

7.    Documents Related to Policies, Procedures, Training, Guidance, and Instructions Concerning Security, Shoplifting, Customer Relations, and Discrimination

You stated that you have produced all responsive, non-privileged records related to loss prevention, and training for loss prevention.

You have not determined whether Defendants have additional documents concerning security, customer relations, or discrimination. You will produce such documents if located and not privileged.

Please note that, among others, documents related to the policies regarding the retention and destruction of store security video recordings are responsive to these requests.

8.    Documents Sufficient to Show the Store's Layout

You stated that no other responsive records exist. Although it appears from our conversation that no effort was made to obtain responsive records regarding the upper floor from any architect or designer retained by Defendants, I agreed not to pursue this item. Should Defendants obtain such records, however, the supplementary discovery obligations of Fed. R. Civ. P. 26(e) would apply.

In addition, I disagree with your characterization of the document Defendants produced labeled BI000095 as adequately demonstrating the layout of the upper floor. Indeed, the document explicitly states that it concerns the "Basement/Mezzanine."

9.    Insurance Policy

You agreed to produce a copy of the insurance policy.

10.    Documents Related to the Allegations, Claims, or Defenses Asserted In Defendants' Answer

You stated that Defendants do have responsive, non-privileged documents, but are not withholding any pursuant to their objections.

11.    Defendants' Objections Based On Privacy

You agreed to provide a draft protective order for my review. As I stated, this is necessary to prevent discovery from being further delayed by any need for a protective order,

4

RELMAN & DANE PLLC

either with respect to discovery Defendants have agreed to provide or that Defendants may be ordered by the Court to provide pursuant to a motion to compel.

    12.    <u>Defendants' Failure to Produce Documents That They Recognize Are Discoverable</u>

We agreed that these issues are subsumed by our discussion of other issues.

    13.    <u>Identification of Persons Assigned to the Borders Store Where the Events At Issue Occurred</u>

You agreed to provide further identifying information, reflecting the definition of "identify" set forth in Plaintiff's discovery requests, with respect to persons with managerial responsibility for the 14th Street Borders on December 2, 2005. This includes persons at a regional, district, or similar level of authority above that of the store's general manager. I agreed that it does not include all managerial employees through the level of chief executive officer.

You also agreed to provide identifying information with respect to all other persons who worked at the 14th Street Borders on December 2, 2005, after 4 P.M.

Please note that these categories include, but are not limited to, Darlene White, Pat Spurlock, and Robert Fath. To date, sufficient identifying information has not been produced with respect to any of these individuals.

    14.    <u>Identification of Persons Who Assisted in Responding to Interrogatories</u>

Defendants will supplement or amend their interrogatory responses in this regard.

## II.    Plaintiff's June 27, 2008 Discovery Responses

Plaintiff will supplement the response to Interrogatory 8 in light of the clarification you provided during our conversation.

You will provide clarification of the meaning of Interrogatory 10.

In light of the clarification of Document Request 11 you provided, I can confirm that no documents have been withheld on the bases of Plaintiff's objections.

In light of the clarification of Document Request 12 you provided, we will review this document request again.

In light of the examples you provided of the types of documents you are seeking pursuant to Document Request 13, we will review this document request again.

Plaintiff will provide additional discovery material by August 1, 2008.

RELMAN & DANE PLLC

### III.    <u>Defendants' Second Set of Interrogatories</u>

With respect to Craig's letter of June 17, 2008, which we have agreed to treat as Defendants' Second Set of Interrogatories, I agreed to provide written answers by August 1, 2008.  You will consider limiting the scope of the latter two of these interrogatories to providers of mental health care.

Sincerely,

Glenn Schlactus

cc:    Robert Wilkins
       (RLWilkins@Venable.com)

6

Exhibit 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Ronald Newman                        *

      Plaintiff,                 *

v.                                   *        **CASE #: 1:07-cv-00492-RWR**


Borders, Inc., et al.,               *

      Defendants.                *

*            *            *            *            *            *            *

## DEFENDANT BORDERS, INC.'S
## FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF'S
## <u>FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents to Defendant Borders, Inc.  Borders incorporates by reference each of the General Objections and Specific objections set forth in its Objections and Responses to Plaintiff's First Request for Production of Documents served on June 23, 2008.  Subject to the above objections, Borders supplements its responses as follows:

**<u>REQUEST NO. 1:</u>**  All documents related to Ronald Newman.

**<u>RESPONSE:</u>**

Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 5:**  The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

2

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Subject to and without waiving these objections, Borders refers to the meet and confer

telephone conference between counsel for the parties on July 28, 2008, and states that it has

produced all relevant, non-privileged documents responsive to this Request. Borders reserves

the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 6:** All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders states that it has produced all relevant, non-privileged documents responsive to

this Request. Borders reserves the right to supplement and/or modify this Response when and if

necessary.

**REQUEST NO. 7:** Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein. Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws.

3

**REQUEST NO. 8:**  All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 9:**  All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders states that there were no surveys or interviews submitted of customers who shopped at the 14th Street Borders on December 2, 2005.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

4

**REQUEST NO. 10:** All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Plaintiff has agreed to narrow this request by seeking all documents related to policies and procedures specifically concerning security, shoplifting, customer relations, or discrimination applicable to the 14th Street Borders on December 2, 2005. Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 11:** All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 14:** All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

5

BA2DOCS1/348071

evidence.  Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws.  Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders

further states that it will produce all relevant, non-privileged documents in its possession that

relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable

time period prior to the events at issue in this case, to the extent that any such complaints exist.

Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 15:**  All documents relating to any investigation by the District of Columbia

Office of Human Rights or any other government agency concerning alleged discrimination at or

related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence.  Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws.  Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 16:**  All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 18:**  All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders will make available for inspection and copying all responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 20:**  All documents related to any allegation, claim or defense asserted in your Answer.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders states that it is not withholding any responsive, non-privileged documents to this request.


Dated: August 7, 2008                    Respectfully submitted,


                        _____/s/_____
                        Craig A. Thompson (Bar No. 500168)
                        Robert L. Wilkins (Bar No. 429065)
                        Venable LLP
                        575 7th Street, NW
                        Washington, D.C. 20004
                        (202) 344-4058

                        *Attorneys for Defendants*

8

Exhibit 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*          \*          \*          \*          \*          \*          \*

**DEFENDANT BORDERS GROUP, INC.'S
FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and through undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents to Defendant Borders, Inc.  Borders incorporates by reference each of the General Objections and Specific objections set forth in its Objections and Responses to Plaintiff's First Request for Production of Documents served on June 23, 2008. Subject to the above objections, Borders supplements its responses as follows:

**REQUEST NO. 1:**  All documents related to Ronald Newman.

**RESPONSE:**

Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 5:**  The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

2

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 6:** All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 7:** Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Request to the extent it calls for information protected from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and consumer protection and/or customer privacy laws.

3

**REQUEST NO. 8:**  All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 9:**  All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders states that there were no surveys or interviews submitted of customers who shopped at the 14th Street Borders on December 2, 2005.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

4

**REQUEST NO. 10:** All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Plaintiff has agreed to narrow this request by seeking all documents related to policies and procedures specifically concerning security, shoplifting, customer relations, or discrimination applicable to the 14th Street Borders on December 2, 2005. Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 11:** All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 14:** All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence.  Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws.  Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders

further states that it will produce all relevant, non-privileged documents in its possession that

relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable

time period prior to the events at issue in this case, to the extent that any such complaints exist.

Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 15:**  All documents relating to any investigation by the District of Columbia

Office of Human Rights or any other government agency concerning alleged discrimination at or

related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

     Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence.  Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws.  Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

6

demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 16:**  All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

BA2DOCS1/348069

**REQUEST NO. 18:**  All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders will make available for inspection and copying all responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 20:**  All documents related to any allegation, claim or defense asserted in your Answer.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders states that it is not withholding any responsive, non-privileged documents to this request.


Dated: August 7, 2008                      Respectfully submitted,

                                   _____/s/_____
                                   Craig A. Thompson (Bar No. 500168)
                                   Robert L. Wilkins (Bar No. 429065)
                                   Venable LLP
                                   575 7th Street, NW
                                   Washington, D.C. 20004
                                   (202) 344-4058

                                   *Attorneys for Defendants*

8

Exhibit 16

# VENABLE® LLP

Craig A. Thompson

t 410.244.7605
f 410.244.7742
cathompson@venable.com

**VIA EMAIL**

August 1, 2008

John P. Relman
Glenn Schlactus
Relman & Dane PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C.

Re:   ***Ronald Newman v. Borders, Inc., et al.***

Dear Counsel:

        This letter will serve as Borders' response to plaintiff's letters of July 3 and 29, 2008, regarding discovery and memorializes the issues discussed during a meet and confer conference call on July 28, 2008, between counsel for both parties.  Specifically, the parties have agreed to clarify or provide supplemental responses, and/or produce documents to each party's respective discovery requests as follows:

## PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANTS

### Privilege Log:

        Borders will produce a privilege log pursuant to the Federal Rules of Civil Procedure.

### Documents Related to Ronald Newman (Request No. 1):

        Borders states that it has produced all responsive, non-privileged documents in its possession related to Plaintiff Ronald Newman.  Borders will provide supplemental documents to the extent that any such documents exist.

### Documents Related to Pat Spurlock (Request No. 3):

        Borders restates its objections regarding this request seeking all documents related to Pat Spurlock.  It remains Borders' position that this request is not reasonably tailored to lead to the discovery of evidence relevant to the claims and defenses asserted in this case.  *See Pleasants v. Allbaugh*, 208 F.R.D. 7, 5 (D.D.C. 2002) (stating "courts remain concerned about fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests and have therefore limited discovery to the issues involved in the particular case") (internal citations and quotations

**VENABLE**®LLP

August 1, 2008
Page 2

omitted).  Plaintiff has not named Ms. Spurlock in the Complaint as being an actor in the alleged conduct that forms the basis of plaintiff's racial profiling claim.  Indeed, plaintiff's negligent supervision claim has been dismissed, thus negating any valid reason for seeking the personnel file of Ms. Spurlock.  *See Hardrick v. Legal Services Corporation*, 96 F.R.D. 617, 618-19 (D.D.C. 1983) (holding that discovery should be tailored to the issues involved in the particular case and must be related to the individuals who are allegedly involved in the discriminatory conduct).  Further, it is well-settled that plaintiff is not entitled to discovery of the entire personnel file especially due to the file largely containing nonresponsive, irrelevant information that has nothing to do with the claims or defenses in this case.  *See Nuskey v. Lambright*, 2008 LEXIS 44672 at 22 (D.D.C. June 10, 2008) (stating "a personnel file need not be produced in its entirety if it contains nonresponsive information"); *Macintosh v. Building Owners and Managers Assoc. Intl., et al.*, 231 F.R.D. 106, 108-09 (D.D.C. 2005) (noting that a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove [plaintiff's] case"); *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 164 (D.D.C. 2003) (holding that plaintiff was not entitled to discovery of employee's entire personnel file); *Byrd v. Reno*, 1998 LEXIS 11855 at *15 (D.D.C. Feb. 12, 1998) (denying plaintiff's request seeking the entire personnel file of employees and limiting discovery to information relevant to plaintiff's complaint).

Plaintiff heavily relies on the case *Bregman v. District of Columbia*, 182 F.R.D. 352, 356 (1998), to support the position that he is entitled to the personnel files of unnamed participants in the alleged incident.  However, *Bregman* involved a D.C. Metropolitan Police Officer named as a defendant in a claim for false arrest and assault. The court compelled the personnel file specifically noting the fact that the officer was a named defendant and principal actor in the case.  Indeed, the court stated, "[t]here is nothing vague about that description of the files and seeking these files as to the defendant Clark is hardly overbroad; he is after all, a defendant and what his personnel files reflect about his behavior as a police officer and his training is at the very heart of the lawsuit."  (emphasis added).  *Id.*

Plaintiff refuses to narrow the scope of the requests and the legal authority plaintiff cites does not support the discovery request as propounded.  As such, Borders stands on its objections as stated herein and in its Responses to plaintiff's discovery requests.



August 1, 2008
Page 3

**<u>Documents Related to Darlene White (Request No. 4):</u>**

Borders restates its general and specific objections that plaintiff is not entitled to seek Ms. White's entire personnel file. *See* discussion related to Pat Spurlock *supra*. Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents related to Darlene White and the alleged incident.

**<u>Documents Related to Personnel Files of All Borders Employees on Duty Dec. 2, 2005, after 4PM (Request Nos. 5 and 8):</u>**

Borders restates its general and specific objections to this request. Plaintiff is not entitled to seek the personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4pm and closing. *See* discussion related to Pat Spurlock *supra*. As discussed during our July 28 call, none of the employees on duty, other than Darlene White, were named in plaintiff's Complaint as having racially profiled plaintiff. In fact, most of the employees on duty were not witnesses to the alleged incident. Thus, plaintiff's request is overbroad, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of relevant information related to the asserted claims and defenses in this case.

Plaintiff refuses to narrow the scope of the requests and did not seek discovery of personnel files of "other employees that have information regarding plaintiff's claims." Rather, plaintiff requested the <u>entire</u> personnel file of <u>all</u> employees on duty during the alleged incident. Plaintiff's reliance on *Waters v. Capitol Police Bd.* in his July 29 letter is misplaced. *Waters* certainly does not support plaintiff's sweeping request for the entire file of all employees, which necessarily includes the files of employees with no connection whatsoever to plaintiff's claims or the alleged incident. The United States District Court for the District of Columbia has made it clear that such overbroad requests will not be upheld. *See* authority cited *supra*. As such, Borders stands on its objections as stated herein and in its Responses to plaintiff's discovery requests.

**<u>Documents Related to Identification of Customers (Request Nos. 7 and 9):</u>**

Borders restates its general and specific objections to these requests. Further, it is unduly burdensome for Borders identify <u>every</u> person who shopped at the 14th Street Borders on December 2, 2005, after 4PM, as such transactions necessarily include in-store cash and/or credit transactions, and online purchases. Subject to and without

# VENABLE® LLP

August 1, 2008
Page 4

waiving these objections, Borders states that there were no customer surveys or complaints (other than Plaintiff) submitted on December 2, 2005.

**Documents Related to Loss Prevention at the 14th Street Borders on Dec. 2, 2005 (Request No. 6):**

Borders states that it has produced all responsive, non-privileged documents in its possession related to loss prevention (security) at the 14th Street Borders on Dec. 2, 2005, after 4PM.  Borders will provide supplemental documents related to any logs, memoranda, or other materials to the extent that any such documents exist.

**Documents Related to Other Discrimination at All Borders Stores in Washington, D.C. (Request Nos. 14 and 15):**

Borders restates its general and specific objections to these requests seeking all allegations of "discrimination" or "investigations" related to any Borders bookstore in Washington, D.C.  Plaintiff must propound discovery requests that are narrowly tailored to his claim of customer racial profiling.  *See Marshall v. D.C. Water & Sewage Authority*, 214 F.R.D. 23, 25 (D.D.C. 2003) (sustaining defendant's objection and stating that because "plaintiff has made neither a claim of sex discrimination nor age discrimination, the gender and age of the employees at WASA are irrelevant to the alleged race discrimination claim"); *Mitchell v. Natl. Railroad Passenger Corp., et al.*, 208 F.R.D. 455, 460 (D.D.C. 2002) (holding that discovery requests must be limited to the same form of discrimination claimed by plaintiff, to the same department, and to the reasonable time before and after the alleged discrimination); *White v. U.S. Catholic Conf.*, 1998 LEXIS 11832 at * 14-16 (D.D.C. May 26, 1998) (denying plaintiff's motion to compel other forms of discrimination unrelated to plaintiff's claims); *Rauh v. Coyne, et al.*, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (refusing to admit evidence of racial discrimination in a discriminatory discharge case based on sex and marital status).

Plaintiff has failed to cite any relevant legal authority entitling him to the expansive discovery sought regarding all allegations or investigations of discrimination related to any Borders store in Washington, D.C.  Plaintiff's reliance on *Waters v. U.S. Capitol Police Bd.* cited in his letter of July 29 is incorrect.  In fact, the judge in *Waters* specifically stated, "I have always limited discovery of other acts of discrimination to only those of the type of discrimination charged in the primary case."  *Waters*, 216 F.R.D. 153, 160 n.7.  In light of plaintiff's failure to propound discovery requests that are



August 1, 2008
Page 5

narrowly tailored to this issues in this case, specifically customer racial profiling, Borders stands on its objections to these requests.

## Documents Related to Allegations of Racial Profiling (Request No. 16):

Plaintiff has agreed to narrow the scope of this request by seeking all complaints of "racial profiling" related to the 14th Street Borders store. Borders restates its general and specific objections. Subject to and without waiving those objections, Borders states that it will produce any relevant, non-privileged documents in its possession related to any complaints or lawsuits of "racial profiling" at the 14th Street Borders store. We anticipate that counsel will agree that any complaints or lawsuits as identified above filed within a reasonable time period prior to the events at issue in this case will be considered responsive.

## Documents Related to Policies and Procedures Regarding Loss Prevention, Customer Relations, and Discrimination (Request No. 10):

Borders states that it will provide supplemental documents related to policies and procedures on Loss Prevention (security), customer relations, and discrimination to the extent that any such documents exist.

## Documents Sufficient to Show the Store's Layout (Request No. 13):

Borders states that it has produced all documents in its possession responsive to this request. Plaintiff's characterization in his July 29 letter that we have made no effort to locate documents responsive to this request is incorrect. After an exhaustive search for the scale layout of the store, we produced the documents available and applicable on December 2, 2005. We reiterate that plaintiff agreed not to pursue this request any further.

## Borders' Insurance Policy (Request No. 18):

Borders states that it will produce the insurance policy applicable to this matter for inspection and copying.



August 1, 2008
Page 6

**<u>Documents Related to Allegations, Claims, or Defenses Asserted in Defendants' Answer (Request No. 20):</u>**

Borders states that it is not withholding any responsive, non-privileged documents to this request that have not already been produced.

**<u>Interrogatory Related to All Borders Employees Who Worked at or Had Managerial Responsibilities for the Borders Store (Interrogatory No. 3):</u>**

Plaintiff has agreed to narrow the scope of this request by seeking the name, position, title, dates of employment, and job description for each person who worked at or had managerial responsibilities for the 14th Street Borders on December 2, 2005, after 4PM.

Borders states that it will supplement its response and provide the requested information to this Interrogatory as defined and stated herein.

**<u>Interrogatory Related to Persons Who Assisted in Preparing Borders Responses (Interrogatory No. 5):</u>**

Borders states that it will supplement its response to this Interrogatory and provide the requested information.

Borders further clarifies that the Verification pages for the interrogatory responses provided to plaintiff are for both Defendants, Borders, Inc. and Borders Group, Inc.

## DEFENDANTS' DISCOVERY REQUESTS TO PLAINTIFF

**<u>Interrogatory Nos. 1, 3, 4, 5, 6, 7, and 11:</u>**

Plaintiff has agreed to provide supplemental responses to these requests to the extent the requested information is available.



August 1, 2008
Page 7

**Requests Regarding Plaintiff's Mitigation of Damages (Interrogatory No. 8 and Document Request No. 11):**

Plaintiff has agreed to supplement his response regarding mitigation of non-economic damages to the extent that plaintiff has not already provided the requested information.

**Interrogatory Related to Allegations or Claims, Asserted in Plaintiff's Complaint (No. 10):**

Plaintiff asked for clarification regarding the information Borders is seeking through this interrogatory. Borders states that it is requesting that plaintiff describe and provide any documents or other tangible things upon which he intends to rely to support any allegation or claim asserted in his Complaint. *See Steinbuch v. Cutler*, 463 F. Supp. 2d 4, 9 (D.D.C. 2006) (requiring plaintiff to produce responsive documents for interrogatory requesting plaintiff to identify documents to support asserted claims). Please provide the requested information to the extent plaintiff has not already done so.

**Documents Provided to Any Public or Private Agency Related to this Case (Request No. 12):**

Plaintiff agreed to provide documents given to any public agency (governmental) or private agency (company or organization) by plaintiff in connection with this case to the extent any such documents exist.

**Documents Related to Plaintiff's Alleged Damages (Request No. 13):**

Plaintiff agreed to provide documents responsive to this request to the extent any such documents exist and have not already been produced.

**Borders June 17, 2008 Letter to Plaintiff's Counsel Regarding Plaintiff's Health Care Providers and Medical Authorizations:**

Plaintiff agreed to treat Borders' letter to plaintiff's counsel dated June 17, 2008, as an additional interrogatory request. As such, Borders' June 17, 2008, letter will be treated as Defendants' Second Set of Requests for Interrogatories, Interrogatory No. 15 pursuant to Federal Rule of Civil Procedure 33.

**VENABLE**® LLP

August 1, 2008
Page 8

During our July 28 call, plaintiff's counsel objected to providing the medical information and authorizations related to plaintiff's health care providers who have provided treatment to him in the last five years. This objection, however, is not a valid basis for failing to provide the requested information. The medical information and authorizations that Borders seeks is entirely appropriate discovery for which plaintiff must provide the requested information. *See Roberson v. Bair*, 242 F.R.D. 130 (D.D.C. 2007) ("A defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to a plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so."); *Barnett v. PA Consulting Group, Inc.*, 2007 WL 845886 at * 4 (D.D.C. Mar. 19, 2007) (noting that discovery of plaintiff's general medical records and non-privileged mental health information is relevant to plaintiff's claims of pain and suffering, humiliation, anger, anxiety, and to other factors that may have affected plaintiff's mental state other than the alleged discriminatory conduct); *Moore v. Chertoff*, 2006 LEXIS 31391 (D.D.C. May 22, 2006) (holding that defendant may seek plaintiff's medical records based on plaintiff's claims of emotional distress "to explore whether factors other than the alleged employment discrimination caused plaintiff's alleged injuries"). Plaintiff may not withhold medical records that could be probative of potential causes contributing to his alleged injuries. *Id*. at *12. Please provide the requested information responsive to this request.

**<u>Protective Order</u>:**

Borders will provide a draft Stipulated Protective Order regarding the discovery of confidential information.

Please provide further responses to our written discovery that addresses the concerns we have stated herein, and provide any further responsive documents that have not already been produced, by no later than **Friday, August 1, 2008**. I look forward to your prompt response and cooperation.



August 1, 2008
Page 9

Very truly yours,

Craig A. Thompson

cc:    Robert L. Wilkins, Esq.
       Tina H. Saunders, Esq.

Exhibit 17

# E8. Just the Facts: A Loss Prevention Quick Reference Guide

**Overview**

The Loss Prevention department is focused on assisting you in reducing shrink and protecting the assets of the company.   LP is about preventing the opportunities for losses in the store, ensuring the safety of all who work for us, as well as working to help make Borders a great place to work.  A big part of what makes up LP is **AWARENESS**.

## Benefits

The "Just the Facts Loss Prevention Quick Reference Guide" is intended to provide your team with a quick review of LP basics.

## Standard

Borders is committed to maintaining a safe and secure workplace for employees, customers and merchandise.  It is important to follow all company and store policies and procedures for accurately performing paperwork tasks, correct handling of all cash and point of sale transaction paperwork, and accurate and timely completion of merchandise returns.  Employees can help prevent theft by customers, vendors and employees by:

- Following customer service standards and procedures while on the sales floor.
- Reporting unusual customer behavior to a manager or supervisor.
- Securing products, using lockers for the personal belongings brought to work
- Having bags/packages checked when leaving the store.

Managers and Supervisors should review the "Just the Facts" key points below on a routine basis in efforts to reduce shrink.

## Process

### *Basics to Reduce Shrink:  External Losses*

**Customer Service**

- Ensure all employees have awareness of External Losses and understand that focused Customer Service is the best defense in combating External Losses.
- Managers are to be familiar with the procedures for handling shoplifters

**Warning Signs**

Behavior is the key.  Nervous/paranoid behavior is usually a red flag.  A customer showing a tendency to watch the staff more than what they are actually shopping for is another.  Customers that move multiple copies of the same item, or large amounts of different items to a secluded part of the store. Customers carrying large almost empty shopping bags or backpacks. Customers who shop hurriedly, grabbing large amounts of product without thoroughly looking at it. These all are strong indicators of shoplifting activity.

**Traffic Patterns**

BI000146

**BEST! Operations & Facilities**                    **E 8. Just The Facts:**
                                                   **LP Quick Reference Guide**

When walking around the store, zigzag throughout the store and make it a point to walk into the music department, DVD area, Kids, and into Computers and Social Science, etc and while doing this check for piles of product that are out of place (piles of DVDs in History) and pull these piles to the info desk and alert a SM, as shoplifters are likely to hide piles of product in private non-walked through areas. **To be successful a shoplifter needs time, privacy and opportunity.** By walking around the store into the corners of the store, through music, kids, etc you are taking away their privacy, time and opportunity to steal from us.

**EAS Program**

- Ensure your system is functioning properly- test system weekly/keep history of gate tests on the EAS gate logs. Report malfunctioning systems immediately by calling for Sensormatic for service.
- Ensure you are following the tagging guidelines- Tag top 3 book sections, and seeded/major lay down titles-ensure tags are placed in the back third of the book.
- Ensure all employees are responding to EAS gate alarms.
- Ensure all employees are deactivating all items at POS.

**Multimedia Protection**

- All keepers must be actively in use.
- DVD's priced under $15.00 will be tagged with an EAS tag and not keepered unless directed.
- All Keeper Releases must be secured down and locked when not in use.
- Keeper releases are to be inventoried weekly
- Music shipments inbound and outbound must be supervised when not located in a secure area.
- All Multimedia product must be either keepered or EAS Tagged. (Including holds and SPOs)
- Multimedia Source Tagging signage must be in use and displayed for customers
- All under stock coffins must be kept locked and keys secured.
- Music cage must be kept locked when unattended.
- All non-ROG vendor products must be detail received. Unprotected/ Unsupervised product must either be keepered or secured in the cage.

**CCTV System (Closed Circuit Television)**

- Camera views must be effective.
- Videotapes must be changed daily.
- 31 days of videotape must be on hand or archived.
- Management staff must be trained effectively to use the CCTV system.

## Basics to Reduce Shrink: Internal Losses

**Bag Checks**

- All bags and packages brought into the store by employees and all purchases made while working will be inspected prior to being removed from the store.
- Bag checks are to be conducted whenever an employee leaves the store

BI000147

Exhibit 18

# Borders Full Action Plan

| Q # | Risk/Recommend | P&P Reference | Risk and Recommendation Details |
|---|---|---|---|
| 34 | Recommendation: | Facilities ES-6, 1-15 | Post the multimedia tiers standards with your store's Tier highlighted in the sort room. Have SM do regular checks on returned product at the cash wrap area to ensure properly secured. Monitor multimedia cartons received to properly secure while waiting to process. |
| | Risk: | Operations & Facilities ES-13 | Unsecured exits expose the store to merchandise loss. Customers and employees can use the exits to remove merchandise without detection. Blocked exits may be a risk to our customers and employees in case of emergency. |
| 35 | Recommendation: | Operations & Facilities ES-1-5-16 | Use colored tape to mark out a "keep clear" area in the stockroom by the emergency exits. Change the batteries promptly when the low battery chirp starts, or when alarm sounds weak when testing. |
| | Risk: | | Unauthorized access to sales and locked doors leaves us exposed to possible cash and merchandise loss. |
| 36 | Recommendation: | Operations & Facilities ES-1-2 | Anytime a change is made to employees listed with the alarm company, ensure a fax is received or sent listing the active employees and changes. Keep this fax on file in the cash office as a record of changes made. |
| | Risk: | | If there is no taping of store activities, it is not available for cases of internal or external loss, or injury involving customers or employees. |
| 37 | Recommendation: | RMOG Manual & RMOG Department | Keep a log near to have the tapes to have the opening manager or supervisor to sign off daily noting the time the tape was changed and any problems. When rotating a new set of tapes, retain the previous tape until a full 31 days has cycled through. Notify Joe Hunter when there is an issue with the CCTV system, and print a copy of the email to keep posted at the CCTV until issue is resolved. |
| | Risk: | | If RMOG information is not reported correctly it has a significant impact on inventory shrink and profits for the company. Incorrect billing and vendor credits may occur if not receiving procedures are not followed. |
| 38 | Recommendation: | RMOG Manual & RMOG Department | Ensure more than one employee is trained on the procedures. Print e-mail from sent mail so it is date stamped to support weekly submission of information. |
| | Risk: | | If RMOG information is not reported correctly it has a significant impact on inventory shrink and profits for the company. Incorrect billing and vendor credits may occur if not receiving procedures are not followed. |

4

BI000161

Exhibit 19

LIST OF BORDERS' EMPLOYEES ON DECEMBER 2, 2005 AFTER 4PM

RONALD NEWMAN V. BORDERS, INC., ET AL.,
CASE #: 1:07-cv-00492-RWR

LIST OF BORDERS' EMPLOYEES ON DECEMBER 2, 2005 AFTER 4PM[1]

| 1. | Raymond Dinterman |
| | Regional Director: will supplement description of position |
| | |
| | Address: |
| | Borders Group, Inc. Corporate Headquarters |
| | 100 Phoenix Drive |
| | Ann Arbor, MI 48108 |
| | (734) 477-1100 |
| | |
| | Dates of employment: 8/02/1992-Present |
| | |
| | * (may only be contacted through Borders' counsel of record) |
| 2. | Keith Ferguson |
| | District Manager: will supplement description of position |
| | |
| | Last known address: |
| | 426 Medallion Dr |
| | Silver Spring, MD 20904-7329 |
| | (301) 890-5511 |
| | |
| | Dates of employment: 11/18/1997 to 1/23/2007 |

[1] Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and provides this document as a supplemental response to its Initial Disclosures, Plaintiff's First Set of Requests for Documents, No. 12, and Plaintiff's First Set of Interrogatories, No. 3, sufficient to identify every person who worked at or had managerial responsibilities for the 14th Street Borders store on December 2, 2005, after 4PM. Borders incorporates by reference each of the general and specific objections set forth in its Objections and Responses to plaintiff's discovery requests served on June 23, 2008. Borders reserves the right to supplement and/or modify this Response when and if necessary.

BI000185

| 5. | John O. Robles |
| | Manager - Operations: Supports the General Manager by managing Human Resources, training, physical plant and Café Operations; in addition to supporting store and company objectives via exceptional customer service. This manager oversees the recruiting, hiring, training and development functions in all areas of the store, periodically assesses physical plant conditions, and implements all company audit and loss prevention standards. The Operations Manager directly supervises the job performance of the Training Supervisor, Office Supervisor, Café Supervisor, Cashiers, and has an indirect supervisory role with entire store staff. This manager reports to the General Manager. |
| | Last known address: |
| | 11347 Polaris Drive |
| | San Diego, CA 92126 |
| | (202) 277-2300 |
| | Dates of employment: 07/28/00-11/29/07 |
| 6. | Patricia R Spurlock |
| | Manager - Inventory: Supports the General Manager in achieving store goals by managing the flow of inventory in and out of the store, in addition to supporting in achieving store and company objectives via exceptional customer service. This manager oversees whole store product flow, ensures that company shelving and alphabetization, loss prevention and audit standards are met throughout the store. This Manager supervises the job performance of the Inventory Supervisor(s), Inventory Process Team and has an indirect supervisory role with the entire store staff. This position reports to the General Manager. |
| | Last known address: |
| | 2721 Franklin Ct. |
| | Alexandria, VA 22302 |
| | (703) 820-6356 |
| | Dates of employment: 11/04/01-04/17/06 |

BA2DOCS1/348320

3

BI000187

| 9. | Robert Fath |
| | Supervisor - Inventory: Supports the General Manager in achieving store goals by managing the flow of inventory in and out of the store; in addition to supporting in achieving store and company objectives via exceptional customer service. This manager oversees whole store product flow, ensures that company shelving and alphabetization, loss prevention and audit standards are met throughout the store. This Manager supervises the job performance of the Inventory Supervisor(s), Inventory Process Team and has an indirect supervisory role with the entire store staff. This position reports to the General Manager. |
| | Address: |
| | Borders Store |
| | 600 14th Street, N.W. |
| | Washington, D.C. 20009 |
| | (202) 737-1385 |
| | Dates of employment: 04/21/05-Present |
| | * (may only be contacted through Borders' counsel of record) |
| 10. | Julian Justin Lloyd |
| | Supervisor - Office (Operations): Supports the Operations Manager/General Manager and whole store functions by completing office/payroll administration, reviewing, and creating financial reporting, accounting, and creation of daily sales floor schedules/weekly staff schedules. The Office Supervisor also oversees Audit compliance and assists with Loss Prevention policy in relation to all cash management. This Supervisor directs the daily activity and assists with the performance development of Cashiers. This position reports to the Operations Manager. In a 2 Manager Structure, this position reports to the General Manager. |
| | Last known address: |
| | 9920 Killarney Ln. |
| | Gaithersburg, MD 20877-0000 |
| | (301) 977-6673 |
| | Dates of employment: 12/15/2004 to 4/25/2006 |

BA2DOCS1/348320

BI000189

| 11. | Dave Kalbaugh<br>Regional Loss Prevention Manager: will supplement description of position<br><br>Last known address:<br>604 Military Rd.<br>Frederick MD 21702<br>(301) 228-2157<br><br>Dates of employment: 08/95-04/07 |
| --- | --- |
| 12. | Corey Thompson<br>Loss Prevention Specialist: will supplement description of position<br><br>Last known address:<br>2634 15th St., N.W.<br>Apartment 9I<br>Washington, D.C. 20009<br>(202) 518-6123<br><br>Dates of employment: 03/99-10/07 |

6

BI000190

BA2DOCS1/348320

| 13. | Darlene White |
|---|---|
| | Loss Prevention Store Detective: will supplement description of position |
| | |
| | Last known address: |
| | 1215 Fairmont St., N.W. |
| | Washington, D.C. 20009 |
| | (202) 667-4288 |
| | |
| | Dates of employment: 04/12/05-01/17/07 |
| 14. | Kimberly Stevens |
| | Inventory Process Team: Supports the Inventory Manager/General Manager and whole store functions by working within a team to complete the inventory process by executing daily flow of product to and from the sales floor. Support store objectives by delivering exceptional customer service. This position reports to the Inventory Manager. |
| | |
| | Address: |
| | Borders Store |
| | 600 14th Street, N.W. |
| | Washington, D.C. 20009 |
| | (202) 737-1385 |
| | |
| | Dates of employment: 10/30/2000-Present |
| | |
| | * (may only be contacted through Borders' counsel of record) |

7

BA2DOCS1/348320

**BI000191**

Exhibit 20

# Borders Group, Inc.

## Employee Handbook

Effective February 2003

Borders Stores

BI000170

- *Loss Prevention* provides support functions for stores in the area of shrink reduction, security and asset protection. The department includes administrative personnel working at the home office and Regional Loss Prevention Managers to support specific groups of stores.
- *Merchandising* buys the merchandise for all Waldenbooks, Borders, Borders Outlet stores and seasonal businesses, while also providing direction for merchandising, advertising, and marketing strategies for these locations.
- *Finance* provides accounting, financial planning, payroll and regular business functions. Finance includes Financial Reporting and Planning, Accounts Payable, Payroll, Purchasing, Mail Services, Audit, Inventory Control and Loss Prevention.
- *Information Technology (IT)* provides support of all computer systems and networks used by Borders Group, including programming, technical support and systems development.
- *Borders Group Distribution* Centers receive merchandise from vendors and ship merchandise to stores.

Store, Distribution Center and Corporate Office management staffs are committed to supporting the stores to ensure the company's success. Employees may contact any member of management with questions or concerns. The Corporate Office for Borders Group, Inc. is located at 100 Phoenix Drive, Ann Arbor, MI 48108.

## BORDERS STORE ORGANIZATION

### The Store
Each Borders store is made up of a team of people who work together to provide the local book and music buying community with quality customer service and an excellent selection of titles. The *General Manager* is the leader of this team. S/he oversees all aspects of store operations and staff interactions, serves as a liaison to the community and is the primary driver of sales initiatives. Any questions or concerns about the company, the store, or an employee's position within the store should be directed to the General Manager. *Managers* aid the General Manager in achieving sales goals and supervising the day-to-day operations of the store. Managers help the floor staff achieve the goals set for the store and work directly with certain members of the staff. Manager roles include: the *HR/Operations Manager, the Merchandising/Inventory Manager*, and the Café/Multimedia Manager.

Each store also has the following positions:
- *Supervisors,* who support the store by assisting managers with floor supervision, customer service issues and back office functions
- A *Special Process Team* who fills customer special requests, maintains and merchandises the periodical section, and assists with receiving room operations,
- A *Corporate Sales Coordinator who* is responsible for driving corporate and institutional sales by developing and maintaining all aspects of the house accounts program for businesses and institutions,
- *Sellers* who provide helpful, friendly, quality service to our customers, and
- *Cashiers* who provide service to customers at the cash registers and provide the last point of contact with customers before they leave the store.

### Regions and Districts
The country is divided into nine geographical regions, each supported by a Regional Director who reports to the Vice President of Store Operations. Each region is divided into districts which are supported and supervised by a District Manager (DM) who reports to the Regional Director (RD). The RD and DM assist store General Managers with all aspects of retail operations and serve as liaisons between the home office and the stores. Regional Human Resources Managers and Regional Loss Prevention Managers work with the employees in each region to provide guidance and support to employees in their respective parts of the country.

# REDACTED

9

Exhibit 21

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| | | |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*          \*          \*          \*          \*          \*          \*

**DEFENDANT BORDERS GROUP, INC.'S
FIRST SUPPLEMENTAL RESPONSES TO
<u>PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>**

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of

Interrogatories to Defendant Borders Group, Inc.  Borders incorporates by reference each of the

General Objections and Specific objections set forth in its Objections and Responses to

Plaintiff's First Set of Interrogatories served on June 23, 2008.  Subject to the above objections,

Borders supplements its responses as follows:

**<u>INTERROGATORY NO. 1:</u>**  State whether any allegation of racial profiling, whether written
or oral, has ever been submitted against you or regarding any property owned or managed by
you, whether to a local, state, or federal court or agency, or directly to you.  Provide all
information relating to any such allegation, including but not limited to, the identity of the
person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the
substance of the allegation, to whom the allegation was made, and the resolution of the
allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, states that there have been no lawsuits, agency charges, or attorney demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders further states that it will provide all information in its possession related to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**INTERROGATORY NO. 3:**  Identify all persons who assisted in preparing the answers to these interrogatories or provided information contained in the answers and state his or her title, duties, role in preparing the answers, and the interrogatory response(s) to which he or she provided information or assistance.  This identification should also indicate whether the information provided is within his or her knowledge or was obtained from some other person or source; if the information was obtained from another person or source, that person or source should also be identified.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein and states the Verification attached to Borders' Objection and Responses to Plaintiff's First Set of Interrogatories identifies all persons who assisted in preparing the answers to these Interrogatories.  Borders further states that it will identify all custodians of record who provided information contained in Borders' answers to these Interrogatories.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

Exhibit 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


**Ronald Newman**                                           *

      **Plaintiff,**                                  *

  **v.**                                                       *          **CASE #: 1:07-cv-00492-RWR**


**Borders, Inc., et al.,**                                 *

      **Defendants.**                               *

\*          \*          \*          \*          \*          \*          \*


**DEFENDANT BORDERS, INC.'S FIRST SUPPLEMENTAL RESPONSES**
**TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

     Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of

Interrogatories to Defendant Borders, Inc.  Borders incorporates by reference each of the General

Objections and Specific objections set forth in its Objections and Responses to Plaintiff's First

Set of Interrogatories served on June 23, 2008.  Subject to the above objections, Borders

supplements its responses as follows:

**INTERROGATORY NO. 2:**  State whether any allegation of racial profiling, whether written
or oral, has ever been submitted against you or regarding any property owned or managed by
you, whether to a local, state, or federal court or agency, or directly to you.  Provide all
information relating to any such allegation, including but not limited to, the identity of the
person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the
substance of the allegation, to whom the allegation was made, and the resolution of the
allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

     Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein.  Subject to and without waiving these objections, Borders refers

to the meet and confer telephone conference between counsel for the parties on July 28, 2008, states that there have been no lawsuits, agency charges, or attorney demand letters alleging "racial profiling" related to the 14th Street Borders store. Borders further states that it will provide all information in its possession related to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**INTERROGATORY NO. 3:** Identify and provide the position, title, dates of employment and job responsibilities of every person who works or worked at, or has or had managerial responsibilities for, the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Interrogatory because it is vague, ambiguous, overbroad and unduly burdensome. Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and refers Plaintiff to the document(s) produced with Borders' Supplemental Responses to Plaintiff's First Set of Requests for Documents sufficient to identify every person who worked at or had managerial responsibilities for the 14th Street Borders store on December 2, 2005, after 4PM. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
RONALD NEWMAN,                )
                                            )
              Plaintiff,              )
                                            )
       v.                              )      Civil Action No. 1:07-cv-0492-RWR
                                            )
BORDERS, INC.                    )
                                            )
              and                      )
                                            )
BORDERS GROUP, INC.,       )
                                            )
              Defendants.          )
_____)


**[PROPOSED] ORDER**

The Court having considered Plaintiff Ronald Newman's Motion to Compel Discovery

Responses, the memoranda submitted in support and opposition thereto, and any hearing held on

the matter, and there appearing good cause therefore,

IT IS HEREBY ORDERED that the motion is GRANTED in its entirety, and that:

1.      Defendants shall produce all non-privileged documents that are related to Pat

Spurlock or Darlene White;

2.      Defendants shall produce all non-privileged documents from Robert Fath's

personnel file;

3.      Defendants shall produce all non-privileged documents from the personnel files of

all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 p.m.

and closing suggesting in any way that they ever acted dishonestly, gave an untruthful statement,

or engaged in discriminatory or retaliatory behavior;

4.      Defendants shall produce documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 p.m., to the extent such persons can be identified;

5.      Defendants shall produce all non-privileged records related to security at the 14th Street Borders on December 2, 2005, after 4 p.m., including but not limited to surveillance recordings, logs, and memoranda, and including but not limited to logs related to the store security recording system;

6.      Defendants shall produce all non-privileged documents related to allegations of profiling based on race, color, or national origin made or based on events on or after January 1, 2004, taking place in whole or in part at, or related to, any Borders bookstore within the same managerial district as the 14th Street Borders, including but not limited to any investigation by the District of Columbia Office of Human Rights or any other government agency;

7.      Defendants shall produce all non-privileged documents related to allegations of other forms of discrimination based on race, color, or national origin made or based on events on or after January 1, 2004, taking place in whole or in part at, or related to, any Borders bookstore located in Washington, D.C., including but not limited to any investigation by the District of Columbia Office of Human Rights or any other government agency;

8.      Defendants shall amend their responses to Plaintiff's document request numbers 1, 3-6, 8, 10, 11, and 14-16, to make plain whether they have withheld any responsive, non-privileged documents on the basis of their interpretation of relevance, and shall produce any documents that have been withheld on that basis;

9.      Defendants shall amend their interrogatory responses consistent with paragraphs 6 and 7 of this Order;

10.     The discovery ordered to be provided in this Order shall be provided no later than fifteen days from entry of this Order, and an updated privilege log shall be provided by Defendants within the same time period if additional documents are withheld on the basis of privilege;

11.     Plaintiff is awarded his reasonable expenses and fees incurred in making his motion to compel, and shall submit a petition therefore within thirty days of entry of this Order.


SO ORDERED.


_____
RICHARD W. ROBERTS
United States District Judge

DATE:  _____