# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Ronald Newman                               *

      Plaintiff,                         *

v.                                          *     **CASE #: 1:07-cv-00492-RWR**

Borders, Inc., et al.,                      *

      Defendants.                        *

\*         \*         \*         \*         \*         \*         \*


## DEFENDANTS BORDERS, INC. AND BORDERS GROUP, INC.'S
## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

Defendants, Borders, Inc. and Borders Group, Inc. (collectively "Borders"), by and through undersigned counsel, hereby files this Opposition to Plaintiff Ronald Newman's Motion to Compel Discovery Responses, and states as follows:

This lawsuit arises out of a visit Plaintiff made to a Borders bookstore in or around December 2005, in which Plaintiff was briefly questioned by a loss prevention employee about suspected concealment of Borders merchandise. It was determined that Plaintiff was not in possession of concealed store merchandise, and no further action was taken by Borders.

Plaintiff's Complaint alleges that he entered the Borders store to buy a book (Complaint, at ¶ 10), was approached by a woman who blocked his path (¶ 15) who turned out to be a Borders security guard (¶¶ 15, 18), and who accused him of carrying concealed Borders merchandise (¶¶ 16, 17). Plaintiff did not have any Borders merchandise in the bag he was carrying (¶19), and no further actions were taken by the security guard. Plaintiff voluntarily remained in the store in order to call the police on Borders' customer service telephone line

(¶23), and waited on the first floor of the store – without any interference from Borders employees - for close to an hour for the police to arrive (¶24). When the store was closing, he was asked to leave (¶29).

## BACKGROUND OF THIS DISCOVERY DISPUTE

This case involves a customer racial profiling claim brought under 42 U.S.C. § 1981 in which Plaintiff alleges that he was accused of shoplifting at a Borders bookstore in Washington, D.C. and denied the ability to purchase a book due to his race. Plaintiff initially brought claims under Section 1981 and for negligent supervision. Borders moved to dismiss both claims and this Court granted the motion as to negligent supervision. *See* Mem. Op. & Order (January 22, 2008). Thus, the only remaining claim is the Section 1981 claim.

Contrary to Plaintiff's description of the events leading up to the Motion to Compel, Borders has made every effort to expedite discovery and resolve the issues that form the basis of Plaintiff's premature motion. In derogation of this Court's Rules and the Federal Rules of Civil Procedure, Plaintiff improperly narrowed the discovery requests in his Motion to Compel for which he now seeks court intervention. Borders has not had any chance to respond to these new requests and there has been no meet and confer on these requests as narrowed.

On May 23, 2008, Plaintiff served interrogatories and requests for production of documents on Borders. *See* Pl. First Set of Requests for Interrogatories and Documents for Production, attached as Ex. A. Thereafter, on June 23, 2008, Borders timely served its Objections and Responses and produced ninety-five pages of documents responsive to Plaintiff's discovery requests, not seven as asserted by Plaintiff in his motion. *See* Borders' Objections and Responses, attached as Ex. B. Borders served interrogatories and requests for documents on Plaintiff on May 27, 2008. Plaintiff provided responses and simultaneously produced only six pages of documents on June 27, 2008, most of which were confusing and seemingly non-

responsive to any discovery request propounded by Defendants. The parties agreed to resolve any discovery disputes amicably and scheduled a telephone conference to meet and confer on July 21. Due to unexpected scheduling conflicts, the parties rescheduled the meet and confer for July 28.

During the above-referenced meeting, Plaintiff agreed to narrow the scope of his requests seeking policies related to security, customer relations, and discrimination, and the identification of employees on duty the day of the incident. Borders agreed to produce a privilege log, additional documents, and information responsive to the discovery requests as limited by Plaintiff. Borders renewed its objections to categories of documents related to the personnel files of all employees on duty the day of the incident, the release of customer information, and producing documents based on all forms of discrimination alleged against all Borders stores in Washington, D.C.

On July 29, 2008, Plaintiff sent a letter summarizing the agreement of the parties to provide supplemental responses. *See* Jul. 29, 2008 Letter from G. Schlactus to C. Thompson, attached as Ex. C. On August 1, 2008, Borders sent a letter memorializing its position with respect to each category of documents or information as discussed during the meet and confer. *See* Aug. 1, 2008 Letter from C. Thompson to G. Schlactus and J. Relman, attached as Ex. D. Borders also sent a privilege log and draft stipulated protective order. Plaintiff sent another letter on August 6, 2008, further clarifying his position and the agreement of the parties to provide supplemental responses. *See* Aug. 6, 2008 Letter from G. Schlactus to C. Thompson, attached as Ex. E. On August 7 and 11, 2008, respectively, Borders served supplemental responses to Plaintiff's requests for documents and produced an additional ninety-six pages of responsive documents. *See* Borders' First Supplemental Responses to Plaintiff's First Set of Request for Production of Documents, attached as Ex. F. Borders provided supplemental responses to

Plaintiff's interrogatories on August 12, 2008, and sent a letter stating that it was not withholding any documents responsive to plaintiff's request. *See* Borders' First Supplemental Responses to Plaintiff's First Set of Interrogatories, attached as Ex. G; Aug. 12, 2008 Letter from C. Thompson to G. Schlactus and J. Relman, attached as Ex. H.

That same day, counsel for Plaintiff contacted counsel for Borders to discuss the terms of the draft stipulated protective order and inquired whether Borders would produce any additional documents. *See Declaration of Tina H. Saunders* (hereinafter "Saunders Declar."), Ex. I ¶ 6 Counsel for Borders offered to produce an additional document pertaining to the store hourly sales data on the day of the incident, and counsel for Plaintiff refused the offer. *Id.* Borders also represented that it would satisfy its obligation to continue to supplement its responses and provide additional documents responsive to Plaintiff's discovery requests. *Id.* Counsel for Plaintiff stated that he was not interested in supplemental documents. *Id.* Plaintiff never expressed any dissatisfaction with Borders supplemental responses. *Id.* at Ex. I ¶ 8. Nor did Plaintiff further narrow the scope of his requests. *Id.* Rather than attempting to resolve any remaining discovery issues, Plaintiff instead filed his motion to compel the very next day, on August 13, 2008. It was not until the filing of Plaintiff's motion that he further limited and redefined the scope of his discovery requests. *See* Pl. Mot. Compel at 11 (stating "[t]hrough Document Requests 14, 15, and 16 and Interrogatories 1 and 2, <u>as further narrowed herein</u>, Plaintiff seeks discovery regarding other allegations of racial profiling at the Borders store in the same managerial district as the 14th Street Borders and allegations of all kinds of discrimination (e.g., employment discrimination) based on race, color, or national origin at the three Borders stores in Washington, D.C.") (emphasis added). Borders has not had any opportunity to respond to these newly minted requests "as narrowed" in Plaintiff's motion. *Saunders Decl.*, Ex. I ¶ 11.

# ARGUMENT

## I.    PLAINTIFF FAILED TO MEET AND CONFER REGARDING BORDERS' SUPPLEMENTAL RESPONSES AND IMPROPERLY MODIFIED HIS DISCOVERY REQUESTS IN VIOLATION OF FRCP 37(a)(1) AND LCvR 7(m).

Pursuant to Fed. R. Civ. Pro. 37(a)(1) and this Court's Local Rule 7(m), Plaintiff has not made any reasonable effort to resolve the discovery disputes, without court intervention, regarding Borders' supplemental responses and additional documents produced, which is in large part the subject of his motion to compel.  In fact, Plaintiff made no attempt to confer with Borders or even to send a letter communicating any dissatisfaction with Borders' supplemental responses, and instead, filed his motion one day after receiving Borders' supplemental responses. Plaintiff made no effort at all to confer regarding his issues with Borders supplemental responses and improperly modified the requests in the text of his motion without affording Borders any opportunity to respond.  If Plaintiff had made a good faith effort to confer with Borders on these issues, then several, if not most, of the disputes Plaintiff raises in his motion likely could have been resolved without court intervention.  Plaintiff's actions are a flagrant violation of the Local Rules and an assault on the notions of judicial efficiency and professional courtesy. Accordingly, Plaintiff's Motion to Compel should be summarily denied.  *See U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 529-30 (D.D.C. 2006) (denying motion to compel and holding that the "obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation"); *Campbell v. Microsoft Corp.*, 2006 WL 463263, at 2-3 (D.D.C. Feb. 24, 2006) (upholding Magistrate Judge's decision to deny plaintiff's motion to compel where plaintiff failed to confer in good faith to resolve discovery dispute without court intervention); *Alexander v. F.B.I, et al.*, 186 F.R.D. 185, 186-87 (D.D.C. 1999) (denying motion to compel

because plaintiffs "never sought to narrow the issues raised by its motion to compel, at all, much less in good faith).

## II.    PLAINTIFF LACKS GOOD CAUSE WITH RESPECT TO EACH CATEGORY OF DOCUMENTS AND INFORMATION SOUGHT

Fed. R. Civ. P. 26(b)(1) identifies the permissible scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is <u>relevant</u> to any party's claim or defense . . . .For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1) (emphasis added). Plaintiff attempts to circumvent this Rule by seeking largely irrelevant information that is not reasonably calculated to lead to discovery of admissible evidence. Even where the discovery sought is determined to be relevant to the claims and defenses, the inquiry should be curtailed where the effort required outpaces the likely payback of expending that effort. Discovery requests that are premised on "farfetched" theories of relevance or are otherwise designed as a "fishing expedition" to discover additional theories of liability are not permissible. *See Pleasants v. Allbaugh*, 208 F.R.D. 7, 9 (D.D.C. 2002) (stating "courts remain concerned about fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests and have therefore limited discovery to the issues involved in the particular case") (internal citations and quotations omitted).

Plaintiff's requests on a whole are overbroad on their face and his Motion to Compel should be denied for that reason alone. If each request is considered individually, this fact becomes even more apparent. The following requests are discussed in the order raised by Plaintiff in his Motion to Compel.

**A.     Document Requests Nos. 3 and 4: Related to Darlene White and Patricia Spurlock**

Plaintiff has moved to compel a Response to Document Requests Nos. 3 and 4, which state as follows:

No. 3: All documents related to Darlene White.
No.4: All documents related to Patricia Spurlock.

These requests as propounded are overbroad and seek irrelevant information concerning Darlene White and Patricia Spurlock.  Plaintiff is requesting <u>all</u> documents related to these individuals although one can easily surmise that not every single piece of paper could possibly be relevant to Plaintiff's claim.  Plaintiff has not made any effort to tailor these requests to seek relevant, discoverable information, as the Federal Rules require.  Instead, Plaintiff heavily relies on the case *Bregman v. District of Columbia*, 182 F.R.D. 352, 356 (1998), to support the preposterous notion that he is entitled to all documents related to White and Spurlock.  *Bregman* involved a D.C. Metropolitan Police Officer named as a defendant in a claim for false arrest and assault.  The court compelled the personnel file of the officer specifically noting the fact that the officer was a named defendant and principal actor in the case.  The court stated, "[t]here is nothing vague about that description of the files and seeking these files as to the defendant Clark is hardly overbroad; <u>he is after all, a defendant</u> and what his personnel files reflect about his behavior as a police officer and his training is at the very heart of the lawsuit."  (emphasis added).  *Id*.  The court did not require the defendants to produce <u>all documents</u> related to the officer, and certainly did not compel the production of all documents of unnamed participants to the lawsuit.

Plaintiff has not named Ms. Spurlock in the Complaint as being a central actor in the alleged discriminatory conduct and cannot improperly "plead" new allegations of discriminatory conduct against Ms. Spurlock in his Motion to Compel.  *See* Pl. Mot. Compel, at 15.  Indeed,

Plaintiff's negligent supervision claim has been dismissed thus negating any valid reason for seeking all documents related to Ms. Spurlock. *See Hardrick v. Legal Services Corporation*, 96 F.R.D. 617, 618-19 (D.D.C. 1983) (holding that discovery should be tailored to the issues involved in the particular case and must be related to the individuals who are allegedly involved in the discriminatory conduct). Clearly, Plaintiff's factual claims of racial profiling relate solely to the alleged actions of Darlene White. *See* Compl. at ¶¶15-19.

Indeed, the same analysis is true regarding all documents related to Darlene White. This Court has held that under Federal Rule of Civil Procedure 26 a party may only obtain discovery as to a matter that is "relevant to the claim or defense of any party." *Krieger v. Fadely*, 199 F.R.D. 10, 13 (D.D.C. 2001). Relevancy is defined by the substantive nature of the claimed asserted. *Id*. Accordingly, Borders has produced non-privileged documents relevant to Plaintiff's remaining Section 1981 customer racial profiling claim—specifically documents related to the Incident, including disciplinary records and employee incident reports, Policies and Training Materials on Loss Prevention (security), Policies on Customer Relations and Discrimination, and a scale layout of the 14th Street Borders store. In addition, Borders has provided responsive answers to Plaintiff's interrogatories regarding allegations of racial profiling at the 14th Street Borders store, and provided the identities of each manager and employee on duty during the incident, including the current or last known addresses for each person. Despite Borders' production of these documents and responses, Plaintiff insists on seeking additional documents that are neither relevant nor material to his claims. This attempt to "fish" for additional information about Ms. White outside of the four corners of Plaintiff's Complaint should not be permitted.

### B.    Personnel File of Robert Fath

At the outset, Borders notes that Plaintiff never propounded a separate request for Robert Fath's personnel file. *See* Exhs. A-B. Mr. Fath is an overnight inventory supervisor who ensures that books and other merchandise are properly packed and unpacked. He happened to be on duty at the time of the incident. By Plaintiff's own admission, Mr. Fath did not participate in the alleged discriminatory conduct. *See* Pl. Mot. Compel at 9. However, Plaintiff outlandishly claims that he is entitled to Mr. Fath's full personnel file because he "interacted with Newman during the incident and closely observed the events at issue." *Id.* A plain reading of Mr. Fath's incident report as justification for the source cited by Plaintiff for the production of his personnel files reveals the harassing and overbroad nature of this request. Plaintiff's Exhibit B100002 clearly demonstrates that the "interaction and close observation" that Mr. Fath had with Plaintiff included Mr. Newman demanding that Mr. Fath call a manager. Mr. Newman, stating that the incident was going to continue beyond tonight, Mr. Newman asking Mr. Fath to call the police for him, and various other demands and outbursts. This "interaction" in no way rises to the level of making Mr. Fath a participant in the alleged violation of Sec. 1981, and certainly does not open the door to Plaintiff to request and receive Mr. Fath's entire personnel file. Once again, the courts have consistently and properly denied this type of unfair "fishing" for documents on additional theories of liability that stand far outside the universe of a Plaintiff's claim for damages. *See Pleasants*, 208 F.R.D. at 9 (stating "courts remain concerned about fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests and have therefore limited discovery to the issues involved in the particular case") (internal citations and quotations omitted).

### C.    Document Request No. 5: Personnel Files of All Persons on Duty

Plaintiff moves to compel the production of documents to Request No. 5, which states:

Request No. 5: The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

In a futile attempt to justify his sweeping requests for irrelevant information, Plaintiff states that he is entitled to the personnel files of all employees on duty because the employees likely observed or discussed the incident, observed whether white customers were treated similar to Plaintiff on that day, have information regarding discriminatory prejudices by White or Spurlock and their credibility, and can determine the location of the security videotape. *See* Pl. Mot. Compel at 9-10. These categories of information, however, illustrate that the personnel files of these employees have nothing to do with the type of information sought by Plaintiff, and certainly do not permit Plaintiffs intrusion into the files of these unnamed employees of Borders.

Plaintiff fails to articulate any valid reason why the full personnel files of all the employees on duty is at all relevant to his claim. Rather, Plaintiff unjustifiably requests the entire personnel file of all employees on duty during the alleged incident regardless of their contents. This Court has made it clear that such overbroad requests will not be upheld. *See Macintosh v. Building Owners and Managers Assoc. Intl., et al.*, 231 F.R.D. 106, 108-09 (D.D.C. 2005) (noting that a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove [plaintiff's] case") (emphasis added); *Byrd v. Reno*, 1998 LEXIS 11855 at *15 (D.D.C. Feb. 12, 1998) (denying plaintiff's request seeking the entire personnel file of employees and limiting discovery to information relevant to plaintiff's complaint).

Plaintiff's reliance on *Waters v. Capitol Police Bd.* is misplaced. The ruling in *Waters* does not support Plaintiff's sweeping request for the entire file of all employees on duty, which

necessarily includes the files of employees with no connection whatsoever to Plaintiff's claims or the alleged incident. *See Waters v. Capitol Police Bd.*, 216 F.R.D. 153, 164 (D.D.C. 2003). There, the plaintiff brought an <u>employment discrimination</u> claim against the United States Capital Police Board alleging that he was terminated due to his race. *Id.* The Court permitted very limited discovery of personnel files of employees directly involved in or related to plaintiff's claims. *Id.* The Court did not sanction unfettered discretion for plaintiff to rifle through the entire personnel file of every employee.

Further, it is well-settled that Plaintiff is not entitled to discovery of an entire personnel file, especially when the file largely contains nonresponsive, irrelevant information that has nothing to do with the claims or defenses in this case. *See Nuskey v. Lambright*, 2008 LEXIS 44672 at 22 (D.D.C. June 10, 2008) (stating "a personnel file need not be produced in its entirety if it contains nonresponsive information"); *Macintosh*, 231 F.R.D. at 108-09 (noting that a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove [plaintiff's] case"); *Waters*, 216 F.R.D. at 164 (holding that plaintiff was not entitled to discovery of employee's entire personnel file); *Byrd*, 1998 LEXIS 11855 at *15 (denying plaintiff's request seeking the entire personnel file of employees and limiting discovery to information relevant to plaintiff's complaint). Borders has produced those parts of the personnel file of employees that are relevant to Plaintiff's claims. For these reasons, Plaintiff should not be granted the above requested documents.

### D.    Document Request No. 7: Release of Customer Information

Plaintiff has moved to compel an answer to Document Request No. 7, which states as follows:

<u>Request No. 7</u>: Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

Borders vigorously objects to this discovery requiring the disclosure of sensitive customer information. Discovery of this type is particularly troubling due to the privacy rights of third parties who are not at all involved in this case. *See Lohrenz v. Donnelly, et al.*, 187 F.R.D. 1, 8-9 (D.D.C. 1999) (discussing the need to protect privacy interests of third persons not parties to a lawsuit). Plaintiff's bare allegation that customers may have witnessed the alleged incident cannot justify the production of highly sensitive, confidential information that is irrelevant and immaterial to Plaintiff's claims. Obviously, Borders' customers will likely be upset to be contacted without any warning or regard to their privacy rights by counsel about this case. Plaintiff cannot reasonably claim that he is entitled to review the credit card and other customer transactions to identify every person who shopped at the 14th Street Borders, between 4PM and closing, and certainly cannot reasonably argue that such information would assist with identifying potential witnesses to the alleged events. It is beyond comprehension that Plaintiff would demand that this Court allow the intrusion upon the privacy rights of Borders' customers and the harassment of third parties with no connection to the lawsuit. Further, the theoried rationale for seeking this private information is not reasonable, as there is no way to properly identify all or any Borders' customers who were in the store at the time of the alleged incident. The possible identification of one or more customers, without the ability to identify all, would be more prejudicial than probative, as the results would necessarily be skewed to those who actually purchased merchandise by credit card.

In addition, compliance with these broad requests would be extremely burdensome for Borders. Borders estimates that there were approximately 774 line-item transactions (cash, check, electronic gift card, and credit card transactions) that occurred between 4PM and closing on December 2, 2005. *See Declaration of DePriest Dockins* (hereinafter "Dockins Decl."), Ex.

J, ¶ 8.  First, the transactions that Plaintiff is requesting includes in-store and online purchases, the latter category of which is clearly irrelevant.  Second, it is impossible for Borders to identify every customer who shopped at the store as the transactions include cash, check, and electronic gift card purchases for which there is no way to identify those customers.  *Id*. at ¶ 6.  Of the customers who made purchases by credit card, Borders does not maintain the customer information and only has masked credit card data of the transactions.  *Id*. at ¶ 7.  Borders would have to seek the customer data from third party credit card companies to the extent they can even provide this information.  *Id*.  The time and expense involved in this massive undertaking clearly outweighs Plaintiff's ill-perceived need for the information.  There can be no reasonable dispute that the burden upon Borders to wade through 774 line-item transactions would be immense.  *Id*. at ¶ 9.  In other words, despite the extensive hours that Borders already has expended to provide documents and information relevant to Plaintiff's claim, he seeks to increase this burden by potentially requiring many additional hours of time and manpower to produce information that amounts to nothing more than a fishing expedition of confidential, irrelevant information.[1]

This burden imposed upon Borders is enhanced by the confidential nature of these records.  Clearly, the credit card and check transactions sought in these requests contain confidential information relating to Borders' customers.  Just as important, this confidential information belongs to *non-parties*, such as credit card companies, who along with Borders, presumably has agreed not to disclose personal customer information.  While the use of a protective order may justify the production of some confidential records, where they are relevant to the case, a protective order cannot justify the sweeping review of irrelevant confidential information that Plaintiff seeks to undertake here.  Further, Borders does not have the authority

---

[1] Borders notes that the parties are only entitled to seven (7) depositions on each side.  Rummaging through up to 774 line-item transactions to identify potential witnesses would be an absurd waste of time and expense given the limited nature of the discovery in this case.

to enter into a protective order on behalf of non-party credit card companies regarding the release of their customer information.  Plaintiff fails to provide any reasonable or legitimate basis for the disclosure of the names of customers and other personal information of persons who shopped at the 14th Street Borders store on the day of the incident.  Borders should not be compelled to respond to overly burdensome, overbroad, and prejudicial discovery requests based solely on the bald speculation that he might find some of the requested information useful.

Pursuant to Rule 26, this Court may limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 269(b)(2)(iii).  Therefore, even if Plaintiff could show that the information sought is in some way relevant, which it is not, the Motion to Compel should be denied because (at best) the marginal relevance of the information is greatly outweighed by the undue burden and expense of producing it.

### E.    Document Request No. 6: Records Related to Security

Plaintiff moves to compel the production of documents responsive to Request No. 6, which states:

Request No. 6: All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

Plaintiff's assertion that Borders is withholding documents related to this request is disingenuous and contrary to the good faith representations made by counsel for Boarders regarding this request.  Borders has produced all documents responsive to this request and has stated repeatedly that it will continue to search for additional responsive documents and produce them to the extent they exist.  Borders could have simply stated that it complied with the request and stop there, but has attempted to act in good faith by continuing to search for responsive documents.  No documents are being held on the grounds of relevance, privilege, or any other objection.  *See* Ex. H.  Plaintiff's attempt to move this Honorable Court to a response from

Borders notwithstanding the above highlights his unwillingness to cooperate, and further demonstrates his desire to create a nonexistent discovery dispute.

**F.    Document Request No. 16 and Interrogatory Nos. 1 and 2: Related to Allegations of Racial Profiling**

Plaintiff's motion confounds and misrepresents the requests related to allegations of racial profiling as propounded to Borders.  The requests state:

Request No. 16: All documents related to any allegation of racial profiling of any person in a Borders Bookstore.

Interrogatory Nos. 1 (to Borders Group, Inc.) and 2 (to Borders, Inc.): State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

Essentially, these sweeping requests seek any allegation of racial profiling of any person that has _ever_ been submitted against Borders, which necessarily includes all stores both nationally and internationally owned and managed by Borders since the company's inception.  It was not until the filing of Plaintiff's motion that he supposedly narrowed the requests seeking allegations of racial profiling in the "managerial district," based on supplemental documents he received from Borders five days before hastily filing the motion.  _See_ Pl. Mot. Compel, at 11, 19. As stated more fully above, Borders was not afforded a good faith opportunity to respond to the "narrowed" request, as it was revised in the content of the Motion to Compel.  Nonetheless, assuming that the court considers, arguendo, the request as drafted in the motion, it remains impermissibly overbroad.

This Court repeatedly has held that discovery based on allegations of discrimination must be limited to the same form of discrimination claimed by plaintiff, to the same department or agency, and must be within a reasonable time before and after the discrimination alleged.  _See_

*Mitchell v. Natl. Railroad Passenger Corp., et al.*, 208 F.R.D. 455, 460 (D.D.C. 2002) (holding that discovery requests must be limited to the same form of discrimination claimed by plaintiff, to the same department, and to the reasonable time before and after the alleged discrimination); *Childers v. Slater*, 1998 WL 429849, at *3-4 (D.D.C. May 15, 1998) (holding that "seeking information about all discrimination actions filed against an entire agency sweeps too broadly as such a request involves cases which are irrelevant to the issues before the court."); *White v. U.S. Catholic Conf.*, 1998 LEXIS 11832, at * 14-16 (D.D.C. May 26, 1998) (denying plaintiff's motion to compel other forms of discrimination unrelated to plaintiff's claims).

Applying this standard, Plaintiff's requests as modified or otherwise still goes well beyond the scope of permissible discovery in a case involving allegations of customer racial profiling.  It is worth noting that Plaintiff's document request and interrogatory as drafted, only requested information specifically related to racial profiling and not all forms of racial discrimination.  *See* Exhs. A-B; Pl. Mot. Compel at 11 (stating "[t]hrough Document Requests 14, 15, and 16 and Interrogatories 1 and 2, <u>as further narrowed herein</u>, Plaintiff seeks discovery regarding other allegations of racial profiling at the Borders store in the same managerial district as the 14th Street Borders and allegations of all kinds of discrimination (e.g., employment discrimination) based on race, color, or national origin at the three Borders stores in Washington, D.C.") (emphasis added).  Plaintiff now seeks to expand his requests to include other forms of racial discrimination that are completely irrelevant to the claims at issue in this case.  *See* Pl. Mot. Compel at 11, 18-19.  The recent opinion of *Denham v. Saks, Inc*. illustrates that one form of racial discrimination cannot be used to prove racial discrimination in a different context.  *See Denham v. Saks, Inc.*, 2008 WL 2952308 (N.D. Ill. July 30, 2008).  In *Denham*, an African-American asset protection investigator claimed that he was fired after he complained that Saks Fifth Avenue employees were engaged in racial profiling of customers.  *Id*. at * 1-2.  Plaintiff

filed suit under Title VII alleging that he was discharged because of his race or because he complained about the racial profiling of customers. *Id*. at *3. Saks filed a motion for summary judgment and the federal district court of Illinois entered judgment in favor of the employer. *Id*. at *8. The court reasoned that plaintiff's Title VII claim failed because it was not objectively reasonable for plaintiff to believe that opposing his co-workers' treatment of members of the public concerned an employment practice. *Id*. at *7. Indeed, the court stated:

> Moreover, assuming arguendo that Saks had required Denham to conduct racial profiling of its African-American customers, it would still have been unreasonable for Denham to believe that his complaints about such activity concerned conduct protected under Title VII. This is because Denham's complaints were not that the sales associate's alleged discriminatory behavior affected him in a different way than it affected other asset protection investigators of other races….Rather, Denham complained about how the sales associates' behavior affected all of the asset protection investigators….Therefore, because Denham's complaints focused on the unequal treatment of Sak's African-American *customers* and not the unequal treatment of Sak's *employees*, it was not objectively reasonable for Denham to believe that he was complaining about activity protected under Title VII.

*Id*. at *8 (internal citations omitted). Concluding that Denham could not proceed on his Title VII retaliation claim against Saks, the court granted summary judgment to the employer. *Id*.

Likewise, here, Plaintiff's claim focuses on the unequal treatment of Borders' customers and not the unequal treatment of Borders' employees. Thus, it is not objectively reasonable for Plaintiff to seek documents related to all forms of racial discrimination, which may necessarily include allegations of employment discrimination, in his discovery requests to prove his sole claim of customer racial profiling.

Plaintiff's modified request seeking allegations of racial profiling in Borders' "managerial district" is equally unavailing. This court has held that discovery must be limited to the place where the alleged discriminatory act occurred. *See Mitchell*, 208 F.R.D. at 460; *White*,

1998 LEXIS 11832, at * 14-16.  In fact, the case cited by Plaintiff unequivocally states that the geographic scope of discovery should be focused on the source of the complained discrimination. *See McCoo v. Denny's Inc., et al.*, 192 F.R.D. 675, 687 (D.Kan. 2000) (Limiting plaintiff's request and holding that "the focus here should be upon the restaurant where the alleged discriminatory conduct occurred").

With respect to the time-period of alleged racial profiling, the request asks Borders to state whether any allegation of racial profiling, whether written or oral, has <u>ever</u> been submitted against Borders.  Obviously, this request seeks all allegations over an infinite amount of time, which is why Borders stated in its supplemental response that it would provide complaints of racial profiling within a reasonable time-period prior to the events at issue.  As with other requests, Plaintiff just narrowed the scope of this request in his Motion to Compel.  *See* Pl. Mot. Compel at 20.  Nonetheless, Borders will agree to produce any responsive, non-privileged documents related to allegations of racial profiling at the 14th Street Borders Store from December 2004 through December 2006.[2]

In light of Plaintiff's failure to confer on these issues and propound discovery requests that are narrowly tailored to the issue in this case, the motion should be denied.

### G.    Document Request Nos. 14 and 15: Related to All Forms of Discrimination

Plaintiff's requests regarding other forms of discrimination state as follows:

<u>Request No. 14</u>: All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

<u>Request No. 15</u>: All documents relating to any investigation by the District of Columbia Office of Human Rights or any other government agency concerning alleged discrimination at or related to any Borders bookstore in Washington, D.C.

---

[2] Plaintiff also totally recreates Borders response to state that it is refusing to provide information other than lawsuits, agency charges, and attorney demand letters.  Once again, this type of misleading tactic underscores Plaintiff's attempt to create a nonexistent discovery issue.  Borders has not withheld documents and information or objected to these requests based on the form of the allegation of racial profiling.  *See* Exhs. F-G.

As explained *supra*, Plaintiff's requests regarding all forms of discrimination alleged against any Borders store in Washington, D.C. is not appropriate discovery. This court consistently has refused to allow discovery of all forms of discrimination and limited the discovery to the same type of discrimination alleged by plaintiff. *See Childers*, 1998 WL 429849, at *3-4 (holding that "seeking information about all discrimination actions filed against an entire agency sweeps too broadly as such a request involves cases which are irrelevant to the issues before the court."); *Marshall v. D.C. Water & Sewage Authority*, 214 F.R.D. 23, 25 (D.D.C. 2003) (sustaining defendant's objection and stating that because "plaintiff has made neither a claim of sex discrimination nor age discrimination, the gender and age of the employees at WASA are irrelevant to the alleged race discrimination claim"); *Mitchell*, 208 F.R.D. at 460 (holding that discovery requests must be limited to the same form of discrimination claimed by plaintiff, to the same department, and to the reasonable time before and after the alleged discrimination); *White*, 1998 LEXIS 11832 at * 14-16 (denying plaintiff's motion to compel other forms of discrimination unrelated to plaintiff's claims); *Rauh v. Coyne, et al.*, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (refusing to admit evidence of racial discrimination in a discriminatory discharge case based on sex and marital status).

Plaintiff fails to articulate any legally valid reason as to why he is entitled to other forms of discrimination wholly unrelated to his claim of racial profiling. It is well-settled that information regarding any other forms of discrimination is immaterial to establishing that Plaintiff was denied the ability to contract based on race. In this case, Plaintiff cannot plausibly argue that the information he seeks will in any way assist him in pursuing his remaining claim.

Further, as stated above, the request must be limited to the 14th Street Borders store where the alleged discrimination occurred. *See Mitchell*, 208 F.R.D. at 460; *White*, 1998 LEXIS

11832, at * 14-16.  Plaintiff has failed to cite any relevant legal authority entitling him to the expansive discovery sought regarding all allegations or investigations of discrimination related to any Borders store in Washington, D.C.  Therefore, the motion should be denied.

### III.    Withholding Documents Based on Objections

Again, Plaintiff's representation that Borders is withholding documents based on relevance is without basis and is purposefully misleading.  Borders has not objected to any request on the basis of relevance where it produced or agreed to produce documents and then simultaneously withheld documents to those same requests on the grounds of relevance.  Any assertion to the contrary is simply untrue.  Counsel for Borders has stated on several occasions to Plaintiff that it is not withholding documents that it agreed to produce on the basis of relevance, privilege, or any other objection.  *See* Ex. H.  Plaintiff improperly mischaracterizes Borders' response to infer the negative, when, in fact, Borders has satisfied its discovery obligations under the Federal Rules to produce responsive documents.  Plaintiff simply could have sought clarification of Borders responses, even though the responses are clear, rather than filing this Motion to Compel and wasting valuable time and judicial resources on such a frivolous issue.

### CONCLUSION

For the foregoing reasons, Borders respectfully requests this Court to deny Plaintiff's Motion to Compel Discovery Responses and award Borders reasonable expenses incurred in opposing the Motion.

### REQUEST FOR HEARING

Pursuant to LC v R 7(f), Borders hereby requests a hearing on Plaintiff's Motion to Compel Discovery Responses and Borders' Opposition thereto.

Respectfully submitted,


_____/s/ Craig A. Thompson_____
Craig A. Thompson (Bar No. 500168)
Robert L. Wilkins (Bar No. 429065)
Tina H. Saunders (Bar No. MD16449)
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
(202) 344-4058

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of August, 2008, a copy of Defendant

Borders, Inc. and Borders Group, Inc.'s Opposition to Plaintiff Ronald Newman's Motion to

Compel Discovery Responses was served on the following by Notice of Electronic Filing:

> John P. Relman
> Glenn Schlactus
> Relman & Dane PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, D.C. 20036
> (202) 728-1888 (o)
> (2020) 728-0848 (fax)
>
> *Attorneys for Plaintiff*

> _____/s/ Craig A. Thompson_____
> Craig A. Thompson

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RONALD NEWMAN,                    )
                                 )
              Plaintiff,          )
                                 )
       v.                         )        Civil Action No. 1:07-cv-0492 RWR
                                 )
BORDERS, INC.                     )
                                 )
              and                 )
                                 )
BORDERS GROUP, INC.,              )
                                 )
              Defendants.         )
_____ )

**PLAINTIFF'S FIRST SET OF**
**INTERROGATORIES TO DEFENDANT BORDERS, INC.**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ronald

Newman hereby requests that Defendant Borders, Inc. respond to each of the interrogatories

below separately and fully, in writing and under oath, and serve answers upon undersigned

counsel within thirty days after service of these Interrogatories.

**PRELIMINARY INSTRUCTIONS**

1.      *Manner of Answering.*  In answering these Interrogatories, you should furnish

such information as is known to you regardless of whether this information is obtained by you,

known by you, or known to or obtained by any of your attorneys or other agents or

representatives.  If you are unable to answer any interrogatory in full, please explain why you are

unable to answer it, state the nature of the information and knowledge you cannot furnish, and

answer to the fullest extent possible.  If your answers are qualified in any manner, state the

nature of the qualification.

2.    *Scope of the Requests*.  All requests are for information applicable to, relating to, or concerning the Defendant, as Defendant is defined in the Definitions section.  The time period for information sought is from **January 1, 2004, to the present date**, unless otherwise specified

3.    *In Case of Ambiguity*.  If, in responding to these Interrogatories, you encounter any ambiguity in construing any interrogatory, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

4.    *Objections*.  If you object to part of an interrogatory, state your objection and respond to the remaining portion of that interrogatory.  If an objection to an interrogatory is based upon a claim of privilege, attorney work product, or any other basis, please identify in writing each piece of information so withheld by providing the following information:

a.    the possessor(s), author(s), addressee(s), present custodian(s), and date of such information;

b.    all other persons who have seen or learned of all or part of any such information;

c.    the method by which, and reason why, each such person obtained access to such information;

d.    a summary of such information; and

e.    the nature of the privilege asserted and any statutes, rules, or cases that you contend support the assertion of privilege.

5.    *Continuing Nature of Interrogatories*.  These Interrogatories are continuing in character so as to require you to promptly amend or supplement your response if you discover or obtain further material information in accordance with Fed. R. Civ. P. 26(e).

## DEFINITIONS

As used in these interrogatories, the following terms are to be interpreted in accordance with the following definitions.  Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure:

1. The singular form shall be deemed to apply to the plural where applicable, and *vice versa*, and the masculine gender shall apply to the feminine gender where applicable.  The present tense includes the past and future tenses.

2. The words "and" and "or" are intended to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3. The term "communication" shall mean the transmittal of information by any means.

4. The terms "concerning," "relating to," or "regarding" shall mean referring to, involving, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, evidencing, summarizing, or bearing upon.

5. The term "defenses" means any and all affirmative defenses set forth in your Answer to the Complaint in this action.

6. The terms "document" or "documents" mean the original and all nonidentical copies of handwritten, printed, typed, written, recorded, graphic, photographic, or other matter of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, advertisements, agreements, analyses, appointment books, books of account, brochures, calendars, catalogs, charts, checks, circulars, computer data,

3

computer disks, computer generated or computer stored information, computer programming materials, contracts, correspondence, date books, diagrams, diaries, diskettes, drafts, drawings, electronic mail messages, electronically stored information, faxes, graphs, guidelines, instructions, inter-office or intra-office communications or memoranda, invoices, ledgers, letters, licenses, logs, manuals, maps, memoranda, meeting minutes, microfilm, minutes, motion picture film, notebooks, notes, opinions, opinions or reports of consultants, pamphlets, payments, plans, photographs, press releases, receipts, records, regulations, reports, sketches, sound recordings, statements, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or reports of investigations or negotiations, surveys, telegrams, telexes, timesheets, videos, vouchers, word processing materials (however stored or maintained), and working papers, and all other means, and all other writings.

7.     The term "employee" means all employees including officials, agents, managers, professionals, staff, office and clerical employees, trainees, and any other person compensated by Defendant, regardless of whether he or she is considered or classified as an independent contractor.

8.     The terms "person" and "persons" mean the plural as well as the singular and include any natural person, alive or deceased; any firm, partnership, joint venture, joint stock company, unincorporated association or society, municipal or other corporation; any state, its agencies or political subdivisions, any court, the federal government, any other government entity; or any form of legal entity.

9.     The term "Interrogatories" refers to interrogatories served on you by Ronald Newman in this matter.

4

10.    The term "electronically stored information" includes information stored in a medium from which it can be retrieved and examined, including information that is stored by an end user, application, operating system or file system, and includes file system data, content, metadata, file name data, application data and operating system data. "Electronically stored information" includes data of any type, in any format, including data resident at any physical location on any type of electronic media, regardless of the "logical" characteristics or properties assigned to the data by any operating system or application, including any data from which intelligence can be perceived with or without the use of any detection devices, software programs, applications, devices, file systems, or operating systems, including devices, programs, applications, file systems and operating systems other than those presently used or available to defendant to interpret data on electronic media. "Electronically stored information" includes, without limitation, user-created data such as word processing documents, spreadsheets, graphics, animations, presentations, email and attachments, audio, video and audiovisual recordings, and voicemail that are related to a claim or defense of a party, or which identifies a person or thing that is, in turn, discoverable. Specifically, "electronically stored information" includes:

a.    data resident in the following areas of any electronic media:

    i.    file and RAM slack areas,
    ii.    unallocated areas of electronic media,
    iii.    swap file areas,
    iv.    allocated areas of electronic media, and

b.    data that identifies all the logical and physical characteristics of all data produced in response to this request, including but not limited to:

    i.    file modification, access, and created date and times,
    ii.    sector location at which the data exists,
    iii.    identification of the electronic media on which the data is resident.

11.    The terms "you," "your," and "Defendant," refer to Defendant Borders, Inc. and its trustees, officials, agents, servants, employees, representatives, attorneys, predecessors or successors in interest, and any persons acting for or on behalf of Borders, Inc.

12.    The term "14th Street Borders" means the Borders bookstore located at 600 14th Street, N.W., Washington, D.C.

13.    The term "racial profiling" means the practice of relying, to any degree, on race, ethnicity, color, or national origin in selecting which individuals to subject to security-related activities.

14.    The term "identify" shall mean that your response to the interrogatory should contain the following information:

a.    When used in reference to a natural person, provide the name and last known address and telephone number of such person; the address and telephone number of the last known place of business where such person is or was employed or headquartered; a description of the information and/or knowledge requested in the interrogatory that is possessed by him or her; and the title, duties, and employer of such person during the relevant time period.

b.    When used in reference to documents, reports or exhibits, provide the name and title of the author(s) or creator(s), addressee(s), persons copied, date, subject matter and character (*e.g.*, letter, memorandum, chart, etc.); information sufficient to locate each document; and a description of the information contained therein.

c.    When used in reference to a course of action or conduct, oral communication, meeting, or discussion, provide the date, time, and place it occurred; the identity of each person participating; the subject matter; and whether any notes, minutes, or other memoranda of it were made.

## INTERROGATORIES

Interrogatory No. 1.    Identify the two employees referenced in the following sentence of paragraph 18 of your Answer in this action:  "Borders further admits that two Borders employees confirmed the identity of Ms. White."

Answer:

6

Interrogatory No. 2.    State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

Answer:

Interrogatory No. 3.    Identify and provide the position, title, dates of employment and job responsibilities of every person who works or worked at, or has or had managerial responsibilities for, the 14th Street Borders.

Answer:

Interrogatory No. 4.    Describe in detail the basis for each defense raised in your Answer and state all facts that support each such defense.

Answer:

7

Interrogatory No. 5.   Identify all persons who assisted in preparing the answers to these interrogatories or provided information contained in the answers and state his or her title, duties, role in preparing the answers, and the interrogatory response(s) to which he or she provided information or assistance.  This identification should also indicate whether the information provided is within his or her knowledge or was obtained from some other person or source; if the information was obtained from another person or source, that person or source should also be identified.

Answer:

Date:  May 23, 2008

Respectfully submitted,

_____ /s/ Glenn Schlactus_____
John P. Relman (D.C. Bar No. 405500)
Glenn Schlactus (D.C. Bar No. 475950)
RELMAN & DANE PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888 (o)
(202) 728-0848 (fax)

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2008, I caused Plaintiff Ronald Newman's First Set Of Interrogatories To Defendant Borders, Inc. to be served on the following by United States first-class mail, postage prepaid, and by electronic mail, addressed as follows:

Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
RLWilkins@Venable.com
*Attorney for Defendant*

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
CAThompson@Venable.com
*Attorney for Defendant*

/s/    Nayna Gupta

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| RONALD NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-0492 RWR |
| | ) | |
| BORDERS, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BORDERS GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT BORDERS, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Ronald

Newman hereby requests that Defendant Borders, Inc. produce and make available the following

documents within thirty days of service at the office of Relman & Dane, PLLC, 1225 19th Street,

Suite 600, Washington, D.C. 20036.

**PRELIMINARY INSTRUCTIONS**

1.    *Manner of Responding.* Your written response shall state, with respect to each

item or category, that inspection and related activities will be permitted as requested unless the

request is refused, in which event the reasons for refusal shall be stated. If the refusal relates to

part of an item or category, the part shall be specified.

2.    *Manner of Producing.*

    a.    One legible copy of each document requested is to be produced. Any

copy of a document that varies in any way whatsoever from the original or from any other copy

of the document, whether by reason of handwritten or other notation or any addition or omission, shall constitute a separate document and must be produced. Plaintiff reserves the right to inspect the original of any document produced upon reasonable request.

b.      All documents produced in response to an individual request shall be physically segregated from documents produced in response to any other requests, and the request to which they are responsive shall be specifically identified. If a document is responsive to more than one request, each of the requests to which the document is responsive shall be specifically identified.

c.      In producing the documents, all documents that are physically attached to each other shall be considered one document and left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or other methods, shall be left so segregated or separated. Documents shall be retained in the order in which they are maintained in the file where they are found.

d.      All responses to requests for computerized data and all other responses existing in computerized form are to be produced in a computer-readable format on a CD-ROM, diskette, or similar data storage device. The producing party must also identify the computer program necessary to read and access such information.

3.      *Scope of the Requests*. All requests are for documents applicable to, relating to, or concerning the Defendant, as "Defendant" is defined in the Definitions section. The time period for documents sought is from **January 1, 2004, to the present date**, unless otherwise specified. Responsive documents applicable to that time period shall be produced whether they originated or were adopted prior to or during that time period.

2

4.      *Possession, Custody, Control*.  Where documents or things in the possession, custody, or control of any individual, agency, office, firm, corporation, or partnership are requested, such request also pertains to documents in the possession, custody, or control of employees, agents, guardians, partners, representatives, and—unless privileged or protected— attorneys of such individuals, agencies, offices, firms, corporations, or partnerships.

5.      *In Case of Ambiguity*.  If, in responding to these Requests, you encounter any ambiguity in construing any request, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

6.      *Objections*.  If an objection to a request is based upon a claim of privilege, attorney work product, or any other basis, please identify, contemporaneously with producing responses to these Requests, in writing each document so withheld by providing the following information:

a.      the date or approximate date of the document;

b.      the type of document (*e.g.*, letter, memorandum);

c.      a description of the subject matter of the document;

d.      each and every person who prepared, signed, or participated in the preparation of the document or any copy thereof;

e.      each and every person who received the document or any copy thereof;

f.      the present custodian(s) of each document;

g.      a list of attachments or enclosures to the document; and

h.      the nature of the privilege asserted and any statutes, rules, or cases that you contend support the assertion of privilege.

3

7.    *Segregable Portions of Privileged Documents.*  Identify and produce all segregable portions of any responsive document to which a claim of privilege, attorney work product, or other basis for withholding the document does not apply.

8.    *Continuing Nature of Document Requests.*  These Requests for Production of Documents are continuing in character so as to require you to promptly amend or supplement your response if you discover or obtain further materials in accordance with Fed. R. Civ. P. 26(e).

9.    *Lost or Destroyed Documents.*  If any document requested herein has been lost, discarded, or destroyed, please furnish a list identifying each such document as completely as possible including, without limitation, the following information:  its author and addressee, each person to whom copies of the document were furnished or to whom the contents thereof were communicated, a comprehensive summary of the substance of the document, the date (or approximate date) of its disposal, the manner of its disposal, the reason for its disposal, the person authorizing its disposal, and the person disposing of the document.

## DEFINITIONS

As used in these document requests, the following terms are to be interpreted in accordance with the following definitions.  Notwithstanding any definition below, each word, term, or phrase used in these document requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure:

1.    The singular form shall be deemed to apply to the plural where applicable, and *vice versa*, and the masculine gender shall apply to the feminine gender where applicable.  The present tense includes the past and future tenses.

4

2.    The words "and" and "or" are intended to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3.    The term "communication" shall mean the transmittal of information by any means.

4.    The terms "concerning," "relating to," or "regarding" shall mean referring to, involving, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, evidencing, summarizing, or bearing upon.

5.    The term "defenses" means any and all affirmative defenses set forth in your Answer to the Complaint in this action.

6.    The terms "document" or "documents" mean the original and all nonidentical copies of handwritten, printed, typed, written, recorded, graphic, photographic, or other matter of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, advertisements, agreements, analyses, appointment books, books of account, brochures, calendars, catalogs, charts, checks, circulars, computer data, computer disks, computer generated or computer stored information, computer programming materials, contracts, correspondence, date books, diagrams, diaries, diskettes, drafts, drawings, electronic mail messages, electronically stored information, faxes, graphs, guidelines, instructions, inter-office or intra-office communications or memoranda, invoices, ledgers, letters, licenses, logs, manuals, maps, memoranda, meeting minutes, microfilm, minutes, motion picture film, notebooks, notes, opinions, opinions or reports of consultants, pamphlets, payments, plans, photographs, press releases, receipts, records, regulations, reports, sketches, sound recordings, statements, studies, summaries or records of telephone conversations, summaries or records of

personal conversations or interviews, summaries or reports of investigations or negotiations, surveys, telegrams, telexes, timesheets, videos, vouchers, word processing materials (however stored or maintained), and working papers, and all other means, and all other writings.

7.    The term "employee" means all employees including officials, agents, managers, professionals, staff, office and clerical employees, trainees, and any other person compensated by Defendant, regardless of whether he or she is considered or classified as an independent contractor.

8.    The terms "person" and "persons" mean the plural as well as the singular and include any natural person, alive or deceased; any firm, partnership, joint venture, joint stock company, unincorporated association or society, municipal or other corporation; any state, its agencies or political subdivisions, any court, the federal government, any other government entity; or any form of legal entity.

9.    The term "Interrogatories" refers to interrogatories served on you by Ronald Newman in this matter.

10.    The term "electronically stored information" includes information stored in a medium from which it can be retrieved and examined, including information that is stored by an end user, application, operating system or file system, and includes file system data, content, metadata, file name data, application data and operating system data. "Electronically stored information" includes data of any type, in any format, including data resident at any physical location on any type of electronic media, regardless of the "logical" characteristics or properties assigned to the data by any operating system or application, including any data from which intelligence can be perceived with or without the use of any detection devices, software programs, applications, devices, file systems, or operating systems, including devices, programs,

6

applications, file systems and operating systems other than those presently used or available to defendant to interpret data on electronic media. "Electronically stored information" includes, without limitation, user-created data such as word processing documents, spreadsheets, graphics, animations, presentations, email and attachments, audio, video and audiovisual recordings, and voicemail that are related to a claim or defense of a party, or which identifies a person or thing that is, in turn, discoverable. Specifically, "electronically stored information" includes:

    a.    data resident in the following areas of any electronic media:

        i.    file and RAM slack areas,
        ii.    unallocated areas of electronic media,
        iii.    swap file areas,
        iv.    allocated areas of electronic media, and

    b.    data that identifies all the logical and physical characteristics of all data produced in response to this request, including but not limited to:

        i.    file modification, access, and created date and times,
        ii.    sector location at which the data exists,
        iii.    identification of the electronic media on which the data is resident.

    11.    The terms "you," "your," and "Defendant," refer to Defendant Borders, Inc. and its trustees, officials, agents, servants, employees, representatives, attorneys, predecessors or successors in interest, and any persons acting for or on behalf of Borders, Inc.

    12.    The term "14th Street Borders" means the Borders bookstore located at 600 14th Street, N.W., Washington, D.C.

    13.    The term "racial profiling" means the practice of relying, to any degree, on race, ethnicity, color, or national origin in selecting which individuals to subject to security-related activities.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

    1.    All documents related to Ronald Newman.

2.    All documents related to Clifton Walker, III.

3.    All documents related to Pat Spurlock.

4.    All documents related to Darlene White.

5.    The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

6.    All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

7.    Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

8.    All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

9.    All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

10.    All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

11.    All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

12.    Documents sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

8

13.     Documents sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

14.     All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

15.     All documents relating to any investigation by the District of Columbia Office of Human Rights or any other government agency concerning alleged discrimination at or related to any Borders bookstore in Washington, D.C.

16.     All documents related to any allegation of racial profiling of any person in a Borders bookstore.

17.     Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

18.     All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

19.     All documents reviewed, received, or considered by any expert retained by you whose opinions may be presented at trial.

20.     All documents related to any allegation, claim or defense asserted in your Answer.

21.     All documents you relied on or referred to in responding to interrogatories served by Plaintiff.

22.     All documents you intend to introduce into evidence at trial.

9

Date:  May 23, 2008                         Respectfully submitted,

                                           /s/  Glenn Schlactus
                                            John P. Relman (D.C. Bar No. 405500)
                                            Glenn Schlactus (D.C. Bar No. 475950)
                                            RELMAN & DANE PLLC
                                            1225 19th Street, N.W.
                                            Suite 600
                                            Washington, D.C. 20036
                                            (202) 728-1888 (o)
                                            (202) 728-0848 (fax)

                                            *Attorneys for Plaintiff*

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2008, I caused Plaintiff Ronald Newman's First Set Of Requests For Production Of Documents To Defendant Borders, Inc. to be served on the following by United States first-class mail, postage prepaid, and by electronic mail, addressed as follows:

Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004
RLWilkins@Venable.com
*Attorney for Defendant*

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004
CAThompson@Venable.com
*Attorney for Defendant*

/s/ Nayna Gupta

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RONALD NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-0492 RWR |
| | ) | |
| BORDERS, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BORDERS GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT BORDERS GROUP, INC.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Ronald Newman hereby requests that Defendant Borders Group, Inc. respond to each of the interrogatories below separately and fully, in writing and under oath, and serve answers upon undersigned counsel within thirty days after service of these Interrogatories.

### PRELIMINARY INSTRUCTIONS

1.    *Manner of Answering.*  In answering these Interrogatories, you should furnish such information as is known to you regardless of whether this information is obtained by you, known by you, or known to or obtained by any of your attorneys or other agents or representatives.  If you are unable to answer any interrogatory in full, please explain why you are unable to answer it, state the nature of the information and knowledge you cannot furnish, and answer to the fullest extent possible.  If your answers are qualified in any manner, state the nature of the qualification.

2.    *Scope of the Requests.*  All requests are for information applicable to, relating to, or concerning the Defendant, as Defendant is defined in the Definitions section.  The time period for information sought is from **January 1, 2004, to the present date**, unless otherwise specified

3.    *In Case of Ambiguity.*  If, in responding to these Interrogatories, you encounter any ambiguity in construing any interrogatory, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

4.    *Objections.*  If you object to part of an interrogatory, state your objection and respond to the remaining portion of that interrogatory.  If an objection to an interrogatory is based upon a claim of privilege, attorney work product, or any other basis, please identify in writing each piece of information so withheld by providing the following information:

a.    the possessor(s), author(s), addressee(s), present custodian(s), and date of such information;

b.    all other persons who have seen or learned of all or part of any such information;

c.    the method by which, and reason why, each such person obtained access to such information;

d.    a summary of such information; and

e.    the nature of the privilege asserted and any statutes, rules, or cases that you contend support the assertion of privilege.

5.    *Continuing Nature of Interrogatories.*  These Interrogatories are continuing in character so as to require you to promptly amend or supplement your response if you discover or obtain further material information in accordance with Fed. R. Civ. P. 26(e).

**DEFINITIONS**

As used in these interrogatories, the following terms are to be interpreted in accordance with the following definitions. Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure:

1.    The singular form shall be deemed to apply to the plural where applicable, and *vice versa*, and the masculine gender shall apply to the feminine gender where applicable. The present tense includes the past and future tenses.

2.    The words "and" and "or" are intended to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3.    The term "communication" shall mean the transmittal of information by any means.

4.    The terms "concerning," "relating to," or "regarding" shall mean referring to, involving, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, evidencing, summarizing, or bearing upon.

5.    The term "defenses" means any and all affirmative defenses set forth in your Answer to the Complaint in this action.

6.    The terms "document" or "documents" mean the original and all nonidentical copies of handwritten, printed, typed, written, recorded, graphic, photographic, or other matter of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, advertisements, agreements, analyses, appointment books, books of account, brochures, calendars, catalogs, charts, checks, circulars, computer data,

3

computer disks, computer generated or computer stored information, computer programming materials, contracts, correspondence, date books, diagrams, diaries, diskettes, drafts, drawings, electronic mail messages, electronically stored information, faxes, graphs, guidelines, instructions, inter-office or intra-office communications or memoranda, invoices, ledgers, letters, licenses, logs, manuals, maps, memoranda, meeting minutes, microfilm, minutes, motion picture film, notebooks, notes, opinions, opinions or reports of consultants, pamphlets, payments, plans, photographs, press releases, receipts, records, regulations, reports, sketches, sound recordings, statements, studies, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or reports of investigations or negotiations, surveys, telegrams, telexes, timesheets, videos, vouchers, word processing materials (however stored or maintained), and working papers, and all other means, and all other writings.

7.  The term "employee" means all employees including officials, agents, managers, professionals, staff, office and clerical employees, trainees, and any other person compensated by Defendant, regardless of whether he or she is considered or classified as an independent contractor.

8.  The terms "person" and "persons" mean the plural as well as the singular and include any natural person, alive or deceased; any firm, partnership, joint venture, joint stock company, unincorporated association or society, municipal or other corporation; any state, its agencies or political subdivisions, any court, the federal government, any other government entity; or any form of legal entity.

9.  The term "Interrogatories" refers to interrogatories served on you by Ronald Newman in this matter.

4

10.    The term "electronically stored information" includes information stored in a medium from which it can be retrieved and examined, including information that is stored by an end user, application, operating system or file system, and includes file system data, content, metadata, file name data, application data and operating system data. "Electronically stored information" includes data of any type, in any format, including data resident at any physical location on any type of electronic media, regardless of the "logical" characteristics or properties assigned to the data by any operating system or application, including any data from which intelligence can be perceived with or without the use of any detection devices, software programs, applications, devices, file systems, or operating systems, including devices, programs, applications, file systems and operating systems other than those presently used or available to defendant to interpret data on electronic media. "Electronically stored information" includes, without limitation, user-created data such as word processing documents, spreadsheets, graphics, animations, presentations, email and attachments, audio, video and audiovisual recordings, and voicemail that are related to a claim or defense of a party, or which identifies a person or thing that is, in turn, discoverable. Specifically, "electronically stored information" includes:

a.    data resident in the following areas of any electronic media:

    i.      file and RAM slack areas,
    ii.     unallocated areas of electronic media,
    iii.    swap file areas,
    iv.    allocated areas of electronic media, and

b.    data that identifies all the logical and physical characteristics of all data produced in response to this request, including but not limited to:

    i.      file modification, access, and created date and times,
    ii.     sector location at which the data exists,
    iii.    identification of the electronic media on which the data is resident.

11.    The terms "you," "your," and "Defendant," refer to Defendant Borders Group, Inc. and its trustees, officials, agents, servants, employees, representatives, attorneys, predecessors or successors in interest, and any persons acting for or on behalf of Borders Group, Inc.

12.    The term "14th Street Borders" means the Borders bookstore located at 600 14th Street, N.W., Washington, D.C.

13.    The term "racial profiling" means the practice of relying, to any degree, on race, ethnicity, color, or national origin in selecting which individuals to subject to security-related activities.

14.    The term "identify" shall mean that your response to the interrogatory should contain the following information:

a.    When used in reference to a natural person, provide the name and last known address and telephone number of such person; the address and telephone number of the last known place of business where such person is or was employed or headquartered; a description of the information and/or knowledge requested in the interrogatory that is possessed by him or her; and the title, duties, and employer of such person during the relevant time period.

b.    When used in reference to documents, reports or exhibits, provide the name and title of the author(s) or creator(s), addressee(s), persons copied, date, subject matter and character (*e.g.*, letter, memorandum, chart, etc.); information sufficient to locate each document; and a description of the information contained therein.

c.    When used in reference to a course of action or conduct, oral communication, meeting, or discussion, provide the date, time, and place it occurred; the identity of each person participating; the subject matter; and whether any notes, minutes, or other memoranda of it were made.

## INTERROGATORIES

Interrogatory No. 1.    State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information

relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

Answer:


Interrogatory No. 2.    Describe in detail the basis for each defense raised in your Answer and state all facts that support each such defense.

Answer:

7

Interrogatory No. 3.    Identify all persons who assisted in preparing the answers to these interrogatories or provided information contained in the answers and state his or her title, duties, role in preparing the answers, and the interrogatory response(s) to which he or she provided information or assistance.  This identification should also indicate whether the information provided is within his or her knowledge or was obtained from some other person or source; if the information was obtained from another person or source, that person or source should also be identified.

Answer:

Date:  May 23, 2008

Respectfully submitted,

_____ /s/ Glenn Schlactus _____
John P. Relman (D.C. Bar No. 405500)
Glenn Schlactus (D.C. Bar No. 475950)
RELMAN & DANE PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888 (o)
(202) 728-0848 (fax)

*Attorneys for Plaintiff*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2008, I caused Plaintiff Ronald Newman's First Set Of Interrogatories To Defendant Borders Group, Inc. to be served on the following by United States first-class mail, postage prepaid, and by electronic mail, addressed as follows:

Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004
RLWilkins@Venable.com
*Attorney for Defendant*

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C.  20004
CAThompson@Venable.com
*Attorney for Defendant*

/s/____Nayna Gupta_____

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RONALD NEWMAN, )<br><br>Plaintiff, )<br><br>v. )<br><br>BORDERS, INC. )<br><br>and )<br><br>BORDERS GROUP, INC., )<br><br>Defendants. ) | Civil Action No. 1:07-cv-0492 RWR |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS TO DEFENDANT BORDERS GROUP, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Ronald

Newman hereby requests that Defendant Borders Group, Inc. produce and make available the

following documents within thirty days of service at the office of Relman & Dane, PLLC, 1225

19th Street, Suite 600, Washington, D.C. 20036.

**PRELIMINARY INSTRUCTIONS**

1.    *Manner of Responding*.  Your written response shall state, with respect to each

item or category, that inspection and related activities will be permitted as requested unless the

request is refused, in which event the reasons for refusal shall be stated.  If the refusal relates to

part of an item or category, the part shall be specified.

2.    *Manner of Producing*.

a.    One legible copy of each document requested is to be produced.  Any

copy of a document that varies in any way whatsoever from the original or from any other copy

of the document, whether by reason of handwritten or other notation or any addition or omission, shall constitute a separate document and must be produced. Plaintiff reserves the right to inspect the original of any document produced upon reasonable request.

        b.     All documents produced in response to an individual request shall be physically segregated from documents produced in response to any other requests, and the request to which they are responsive shall be specifically identified. If a document is responsive to more than one request, each of the requests to which the document is responsive shall be specifically identified.

        c.     In producing the documents, all documents that are physically attached to each other shall be considered one document and left so attached. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or other methods, shall be left so segregated or separated. Documents shall be retained in the order in which they are maintained in the file where they are found.

        d.     All responses to requests for computerized data and all other responses existing in computerized form are to be produced in a computer-readable format on a CD-ROM, diskette, or similar data storage device. The producing party must also identify the computer program necessary to read and access such information.

        3.     *Scope of the Requests.* All requests are for documents applicable to, relating to, or concerning the Defendant, as "Defendant" is defined in the Definitions section. The time period for documents sought is from **January 1, 2004, to the present date**, unless otherwise specified. Responsive documents applicable to that time period shall be produced whether they originated or were adopted prior to or during that time period.

4.     *Possession, Custody, Control.*  Where documents or things in the possession, custody, or control of any individual, agency, office, firm, corporation, or partnership are requested, such request also pertains to documents in the possession, custody, or control of employees, agents, guardians, partners, representatives, and—unless privileged or protected— attorneys of such individuals, agencies, offices, firms, corporations, or partnerships.

5.     *In Case of Ambiguity.*  If, in responding to these Requests, you encounter any ambiguity in construing any request, instruction, or definition, set forth the matter deemed ambiguous and the construction used in responding.

6.     *Objections.*  If an objection to a request is based upon a claim of privilege, attorney work product, or any other basis, please identify, contemporaneously with producing responses to these Requests, in writing each document so withheld by providing the following information:

    a.    the date or approximate date of the document;

    b.    the type of document (*e.g.*, letter, memorandum);

    c.    a description of the subject matter of the document;

    d.    each and every person who prepared, signed, or participated in the preparation of the document or any copy thereof;

    e.    each and every person who received the document or any copy thereof;

    f.    the present custodian(s) of each document;

    g.    a list of attachments or enclosures to the document; and

    h.    the nature of the privilege asserted and any statutes, rules, or cases that you contend support the assertion of privilege.

7.    *Segregable Portions of Privileged Documents.*  Identify and produce all segregable portions of any responsive document to which a claim of privilege, attorney work product, or other basis for withholding the document does not apply.

8.    *Continuing Nature of Document Requests.*  These Requests for Production of Documents are continuing in character so as to require you to promptly amend or supplement your response if you discover or obtain further materials in accordance with Fed. R. Civ. P. 26(e).

9.    *Lost or Destroyed Documents.*  If any document requested herein has been lost, discarded, or destroyed, please furnish a list identifying each such document as completely as possible including, without limitation, the following information:  its author and addressee, each person to whom copies of the document were furnished or to whom the contents thereof were communicated, a comprehensive summary of the substance of the document, the date (or approximate date) of its disposal, the manner of its disposal, the reason for its disposal, the person authorizing its disposal, and the person disposing of the document.

### DEFINITIONS

As used in these document requests, the following terms are to be interpreted in accordance with the following definitions.  Notwithstanding any definition below, each word, term, or phrase used in these document requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure:

1.    The singular form shall be deemed to apply to the plural where applicable, and *vice versa*, and the masculine gender shall apply to the feminine gender where applicable.  The present tense includes the past and future tenses.

4

2.    The words "and" and "or" are intended to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

3.    The term "communication" shall mean the transmittal of information by any means.

4.    The terms "concerning," "relating to," or "regarding" shall mean referring to, involving, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, evidencing, summarizing, or bearing upon.

5.    The term "defenses" means any and all affirmative defenses set forth in your Answer to the Complaint in this action.

6.    The terms "document" or "documents" mean the original and all nonidentical copies of handwritten, printed, typed, written, recorded, graphic, photographic, or other matter of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, advertisements, agreements, analyses, appointment books, books of account, brochures, calendars, catalogs, charts, checks, circulars, computer data, computer disks, computer generated or computer stored information, computer programming materials, contracts, correspondence, date books, diagrams, diaries, diskettes, drafts, drawings, electronic mail messages, electronically stored information, faxes, graphs, guidelines, instructions, inter-office or intra-office communications or memoranda, invoices, ledgers, letters, licenses, logs, manuals, maps, memoranda, meeting minutes, microfilm, minutes, motion picture film, notebooks, notes, opinions, opinions or reports of consultants, pamphlets, payments, plans, photographs, press releases, receipts, records, regulations, reports, sketches, sound recordings, statements, studies, summaries or records of telephone conversations, summaries or records of

5

personal conversations or interviews, summaries or reports of investigations or negotiations, surveys, telegrams, telexes, timesheets, videos, vouchers, word processing materials (however stored or maintained), and working papers, and all other means, and all other writings.

7.     The term "employee" means all employees including officials, agents, managers, professionals, staff, office and clerical employees, trainees, and any other person compensated by Defendant, regardless of whether he or she is considered or classified as an independent contractor.

8.     The terms "person" and "persons" mean the plural as well as the singular and include any natural person, alive or deceased; any firm, partnership, joint venture, joint stock company, unincorporated association or society, municipal or other corporation; any state, its agencies or political subdivisions, any court, the federal government, any other government entity; or any form of legal entity.

9.     The term "Interrogatories" refers to interrogatories served on you by Ronald Newman in this matter.

10.    The term "electronically stored information" includes information stored in a medium from which it can be retrieved and examined, including information that is stored by an end user, application, operating system or file system, and includes file system data, content, metadata, file name data, application data and operating system data. "Electronically stored information" includes data of any type, in any format, including data resident at any physical location on any type of electronic media, regardless of the "logical" characteristics or properties assigned to the data by any operating system or application, including any data from which intelligence can be perceived with or without the use of any detection devices, software programs, applications, devices, file systems, or operating systems, including devices, programs,

6

applications, file systems and operating systems other than those presently used or available to defendant to interpret data on electronic media. "Electronically stored information" includes, without limitation, user-created data such as word processing documents, spreadsheets, graphics, animations, presentations, email and attachments, audio, video and audiovisual recordings, and voicemail that are related to a claim or defense of a party, or which identifies a person or thing that is, in turn, discoverable. Specifically, "electronically stored information" includes:

a.    data resident in the following areas of any electronic media:

      i.    file and RAM slack areas,
      ii.    unallocated areas of electronic media,
      iii.    swap file areas,
      iv.    allocated areas of electronic media, and

b.    data that identifies all the logical and physical characteristics of all data produced in response to this request, including but not limited to:

      i.    file modification, access, and created date and times,
      ii.    sector location at which the data exists,
      iii.    identification of the electronic media on which the data is resident.

11.    The terms "you," "your," and "Defendant," refer to Defendant Borders Group, Inc. and its trustees, officials, agents, servants, employees, representatives, attorneys, predecessors or successors in interest, and any persons acting for or on behalf of Borders Group, Inc.

12.    The term "14th Street Borders" means the Borders bookstore located at 600 14th Street, N.W., Washington, D.C.

13.    The term "racial profiling" means the practice of relying, to any degree, on race, ethnicity, color, or national origin in selecting which individuals to subject to security-related activities.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All documents related to Ronald Newman.

2.    All documents related to Clifton Walker, III.

3.    All documents related to Pat Spurlock.

4.    All documents related to Darlene White.

5.    The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

6.    All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

7.    Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

8.    All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

9.    All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

10.    All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

11.    All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

12.    Documents sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

13.    Documents sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

14.    All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

15.    All documents relating to any investigation by the District of Columbia Office of Human Rights or any other government agency concerning alleged discrimination at or related to any Borders bookstore in Washington, D.C.

16.    All documents related to any allegation of racial profiling of any person in a Borders bookstore.

17.    Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

18.    All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

19.    All documents reviewed, received, or considered by any expert retained by you whose opinions may be presented at trial.

20.    All documents related to any allegation, claim or defense asserted in your Answer.

21.    All documents you relied on or referred to in responding to interrogatories served by Plaintiff.

22.    All documents you intend to introduce into evidence at trial.

Date:  May 23, 2008                         Respectfully submitted,

                                            ___/s/  Glenn Schlactus_____
                                            John P. Relman (D.C. Bar No. 405500)
                                            Glenn Schlactus (D.C. Bar No. 475950)
                                            RELMAN & DANE PLLC
                                            1225 19th Street, N.W.
                                            Suite 600
                                            Washington, D.C. 20036
                                            (202) 728-1888 (o)
                                            (202) 728-0848 (fax)

                                            *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of May, 2008, I caused Plaintiff Ronald Newman's First Set Of Requests For Production Of Documents To Defendant Borders Group, Inc. to be served on the following by United States by first-class mail, postage prepaid, and by electronic mail, addressed as follows:

Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
RLWilkins@Venable.com
*Attorney for Defendant*

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
CAThompson@Venable.com
*Attorney for Defendant*

/s/   Nayna Gupta_____

11

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| v. | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*

### DEFENDANT BORDERS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of

Interrogatories to Defendant Borders, Inc. in the above-listed case.

### GENERAL OBJECTIONS

A.    Borders objects to each Interrogatory to the extent it is overbroad, unduly burdensome, harassing and seeks information that is neither relevant to the issues in this case nor reasonably calculated to lead to the discovery of admissible evidence.

B.    Borders objects to each Interrogatory to the extent it seeks information regarding documents that are already in Plaintiff's possession, custody, or control, or equally available to Plaintiff, on the grounds that each Interrogatory is unreasonably cumulative and duplicative, and that the information or documents are obtainable from a source that is more convenient, less burdensome and less expensive.

C.    Borders objects to each Interrogatory to the extent it seeks information regarding documents that are protected by the attorney-client privilege, the work-product doctrine, the self-critical analysis privilege, or any other applicable privileges or doctrines that limit discovery. Borders does not intend to waive by these Responses, or by production of documents, any privileges or claims of confidentiality associated with information or documents produced in this action.

D.   Borders objects to each Interrogatory to the extent it seeks production of confidential, trade secret, and/or proprietary information.

E.   Borders objects to each Interrogatory to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the relevant federal rules and any applicable Court orders.

F.   Borders reserves the right to and does not waive or intend to waive, by reason of its Responses to these Interrogatories, its right to:

> (1)   revise, amend, or supplement these Responses;
> (2)   object on any grounds to the use of information discovered in response to the Interrogatories for any purpose, in whole or in part, in this or any other proceeding, action, or matter;
> (3)   object on any grounds, at any time, to other discovery procedures or requests relating to the subject matter of the Interrogatories; and
> (4)   object on any grounds to the admissibility of any information produced in response to the Interrogatories.

G.   Borders objects to each Interrogatory that uses the terms or phrases "any," "every," "all," "each and every" and "any and all" to the extent that these phrases are overbroad, unduly burdensome, vague, ambiguous, confusing, argumentative, harassing and seek information that is neither relevant to the allegations in Plaintiff's complaint, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the above objections, Borders responds as follows to Plaintiff's First Set of

Interrogatories to Defendant Borders, Inc.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify the two employees referenced in the following sentence of paragraph 18 of your Answer in this action: "Borders further admits that two Borders employees confirmed the identity of Ms. White."

## RESPONSE:

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders states that Borders employees, Patricia Spurlock and Robert Fath confirmed the

identity of Ms. White.

2

**INTERROGATORY NO. 2:**  State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Interrogatory because it is vague, ambiguous, argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by the phrases "allegation of racial profiling" and "submitted against you," and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Interrogatory to the extent that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**INTERROGATORY NO. 3:**  Identify and provide the position, title, dates of employment and job responsibilities of every person who works or worked at, or has or had managerial responsibilities for, the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Interrogatory because it is vague, ambiguous, overbroad and unduly burdensome.  Subject to and without waiving these objections, Borders refers

3

Plaintiff to the document(s) identified in Borders' Objections and Responses to Plaintiff's First

Set of Requests for Documents sufficient to show the management structure applicable to the

14th Street Borders on December 2, 2005.

**INTERROGATORY NO. 4:** Describe in detail the basis for each defense raised in your
Answer and state all facts that support each such defense.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Interrogatory because it is vague, ambiguous, overbroad

and unduly burdensome. Borders also objects to this Request to the extent it calls for

information protected from disclosure by the attorney-client privilege and/or work-product

doctrine.

**INTERROGATORY NO. 5:** Identify all persons who assisted in preparing the answers to
these interrogatories or provided information contained in the answers and state his or her title,
duties, role in preparing the answers, and the interrogatory response(s) to which he or she
provided information or assistance. This identification should also indicate whether the
information provided is within his or her knowledge or was obtained from some other person or
source; if the information was obtained from another person or source, that person or source
should also be identified.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein, and refers Plaintiff to the Verification page attached hereto.

Dated: June 23, 2008                    Respectfully submitted,


_____/s/_____
Craig A. Thompson (Bar No. 500168)
Robert L. Wilkins (Bar No. 429065)
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
(202) 344-4058

*Attorneys for Defendants*

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2008, a copy of Defendant Borders,

Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories was sent via electronic

mail and first class mail, postage prepaid, to:

John P. Relman
Glenn Schlactus
Relman & Dane PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888 (o)
(2020) 728-0848 (fax)

*Attorneys for Plaintiff*


_____/s/_____
Craig A. Thompson

5

## VERIFICATION

I, Lis Morrow, hereby verify that I am employed by Borders, Inc. and am qualified to execute this Verification. The statements of fact made on behalf of Borders in its Objections and Responses to Plaintiff's First Set of Interrogatories are based upon information gathered by me, other employees of Borders Inc., and the Company's counsel. The language of this Response is counsel's and not mine. I have read this Response and to the extent it is based upon information, which I have given to the Company's counsel, I verify under penalty of perjury that the foregoing is true and correct.

Executed on:  June 23, 2008

Lis Morrow
Senior Human Resources Manager
Borders, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| v. | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |
| *        *        * | *        *        *        * | |

## DEFENDANT BORDERS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of Requests for Production of Documents to Defendant Borders, Inc. in the above-listed case.

## GENERAL OBJECTIONS

A.   Borders objects to these Requests to the extent they seek the identity of documents or request information protected from discovery by the attorney-client privilege, work-product doctrine, the consulting expert privilege, the self-critical analysis doctrine, or any other privilege, or that is otherwise immune or protected from disclosure. Borders does not waive any applicable protections or privileges through the production of documents or the supplying of information in response to these Requests. On the contrary, Borders specifically preserves any and all applicable protections and privileges.

B.   Borders objects to these Requests as overbroad and unduly burdensome to the extent they call for the identification of "all" documents or information or "any" or "every" document or piece of information when all relevant facts can be obtained from fewer than "all" documents or "any" document. Read literally, such Requests improperly call for the production of identical and duplicative documents or exact copies, which is harassing, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

C.    Borders objects to these Requests to the extent they require Borders to obtain and produce information concerning any entity other than Defendant Borders on the grounds that such information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and because such Requests are unduly burdensome and seek information not within Borders's care, custody, or control. Borders further objects to being required to make available for inspection and copying documents that Plaintiff already has or that are in the care, custody, and control of third parties, and thus are equally available to Plaintiff as they are to Borders.

D.    Borders objects to these Requests as overbroad, unduly burdensome, oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action.

E.    Borders objects to these Requests to the extent they seek Borders's confidential and proprietary information, including trade secrets or other confidential research, development, or commercial information, the disclosure of which will or may cause irreversible harm to Borders.

F.    Borders makes each objection to these Requests and responds to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (1) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (2) the right to object on any ground, at any time, to Requests, Interrogatories, or other discovery procedures involving or relating to the subject of the Request to which Borders has responded herein; and (3) the right at any time to revise, correct, add to, or clarify any of the objections and answers made herein. Furthermore, any inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Borders's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

G.    Borders objects to these Requests to the extent they call for information or documents that are unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive. In particular, Borders objects to these Requests as overbroad and unduly burdensome to the extent the information requested is publicly available and, consequently, equally available to Plaintiff as it is to Borders.

H.    Borders objects to these Requests to the extent they are vague, ambiguous, argumentative, duplicative, overbroad, unduly burdensome or oppressive, call for an unreasonable investigation on the part of Borders, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action. Borders further objects to these Requests to the extent they seek information

or documents or impose obligations beyond those permitted by the Local Rules of this Court or any applicable Order of this Court.

Subject to the above objections, Borders responds as follows to Plaintiff's First Set of Requests for Production of Documents.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**  All documents related to Ronald Newman.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Ronald Newman.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 2:**  All documents related to Clifton Walker, III.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Clifton Walker, III that can reasonably be identified as responsive to this request.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

3

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

4

**REQUEST NO. 5:** The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 6:** All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in

its possession, custody, or control that relate to Borders' Loss Prevention materials from the

relevant period. Discovery in this matter is incomplete and ongoing. Borders reserves the right

to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 7:** Documents sufficient to identify every person who shopped at the 14th
Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card
records and Borders Rewards records.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege, the work-product doctrine or other provisions of law, including, but not

limited to, any and all relevant privacy laws and consumer protection and/or customer privacy

laws. Subject to and without waiving these objections, Borders will consider in good faith a

request that identifies specific categories of documents or information that are relevant to the

issues in this lawsuit.

**REQUEST NO. 8:** All documents related to any oral or written, formal or informal complaint
about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who
was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also

BA2DOCS1/344822

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege and/or work-product doctrine. Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control that relate to any records of conduct for Darlene White concerning the

incident on December 2, 2005 as alleged in Plaintiff's Complaint. Borders specifically reserves

any and all objections previously stated in these Objections and Responses to Plaintiff's First Set

of Requests for Production of Documents pertaining to all documents related to Darlene White.

**REQUEST NO. 9:** All documents related to surveys or interviews of people who shopped at
the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Interrogatory because it is vague, ambiguous,

argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by

the phrase "surveys or interviews," and seeks information that is neither relevant to the claims or

defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Borders also objects to this Request to the extent it calls for information protected from

disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law,

including, but not limited to, any and all relevant privacy laws and consumer protection and/or

customer privacy laws. Subject to and without waiving these objections, Borders will consider

in good faith a request that identifies specific categories of documents or information that are

relevant to the issues in this lawsuit.

BA2DOCS1/344822

**REQUEST NO. 10:**  All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, and improperly vague and confusing.  Borders also objects to this Request to the

extent it calls for information protected from disclosure by the attorney-client privilege and/or

work-product doctrine.  Subject to and without waiving these objections, Borders will produce

responsive, non-privileged documents in its possession, custody, or control that relate to

Borders' Loss Prevention materials from the relevant period.  Discovery in this matter is

incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response

when and if necessary.

**REQUEST NO. 11:**  All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, and improperly vague and confusing.  Borders also objects to this Request to the

extent it calls for information protected from disclosure by the attorney-client privilege and/or

work-product doctrine.  Subject to and without waiving these objections, Borders will produce

responsive, non-privileged documents in its possession, custody, or control that relate to

Borders' Loss Prevention materials from the relevant period.  Discovery in this matter is

8

incomplete and ongoing. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 12:** Documents sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

**REQUEST NO. 13:** Documents sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

**REQUEST NO. 14:** All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

9

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders

further objects to this Request on the grounds that it is improperly vague and confusing as to

what is meant by the phrase "related to allegations of discrimination." Borders also objects to

this Request to the extent it calls for information protected from disclosure by the attorney-client

privilege, the work-product doctrine or other provisions of law, including, but not limited to, any

and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to

and without waiving these objections, Borders will consider in good faith a request that identifies

specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 15:** All documents relating to any investigation by the District of Columbia
Office of Human Rights or any other government agency concerning alleged discrimination at or
related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders

further objects to this Request on the grounds that it is improperly vague and confusing as to

what is meant by the phrase "relating to any investigation." Borders also objects to this Request

to the extent that it calls for information protected from disclosure by the attorney-client

privilege, the work-product doctrine or other provisions of law, including, but not limited to, any

and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to

and without waiving these objections, Borders will consider in good faith a request that identifies

specific categories of documents or information that are relevant to the issues in this lawsuit.

10

**REQUEST NO. 16:** All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and improperly vague and confusing as to what is meant by the phrase "related to any allegation of racial profiling." Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 17:** Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders refers Plaintiff to Borders' Annual Report, which is available to the public.

11

**REQUEST NO. 18:**  All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders states that it was covered by the following policy during the time period identified in Plaintiff's Complaint: Liberty Mutual Fire Insurance Company; Policy Number RG2-641-004284-025.

**REQUEST NO. 19:**  All documents reviewed, received, or considered by any expert retained by you whose opinions may be presented at trial.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Borders will designate the expert witnesses it intends to call at trial and produce expert material in accordance with the pre-trial scheduling order entered in this case.

**REQUEST NO. 20:**  All documents related to any allegation, claim or defense asserted in your Answer.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing.  Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.

12

**REQUEST NO. 21:** All documents you relied on or referred to in responding to interrogatories served by Plaintiff.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders states that all documents identified in its Objections and Responses to Plaintiff's First Set of Interrogatories have been produced.

**REQUEST NO. 22:** All documents you intend to introduce into evidence at trial.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Dated: June 23, 2008                     Respectfully submitted,


                                    _____/s/_____
                                    Craig A. Thompson (Bar No. 500168)
                                    Robert L. Wilkins (Bar No. 429065)
                                    Venable LLP
                                    575 7th Street, NW
                                    Washington, D.C. 20004
                                    (202) 344-4058

                                    *Attorneys for Defendants*

                                    13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2008, a copy of Defendant Borders,

Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Production of Documents

was sent via electronic mail and first class mail, postage prepaid, to:

> John P. Relman
> Glenn Schlactus
> Relman & Dane PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, D.C. 20036
> (202) 728-1888 (o)
> (2020) 728-0848 (fax)
>
> *Attorneys for Plaintiff*

_____/s/_____
Craig A. Thompson

BA2DOCS1/344822

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*

## DEFENDANT BORDERS GROUP, INC.'S
## OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of

Interrogatories to Defendant Borders Group, Inc. in the above-listed case.

### GENERAL OBJECTIONS

A.    Borders objects to each Interrogatory to the extent it is overbroad, unduly burdensome, harassing and seeks information that is neither relevant to the issues in this case nor reasonably calculated to lead to the discovery of admissible evidence.

B.    Borders objects to each Interrogatory to the extent it seeks information regarding documents that are already in Plaintiff's possession, custody, or control, or equally available to Plaintiff, on the grounds that each Interrogatory is unreasonably cumulative and duplicative, and that the information or documents are obtainable from a source that is more convenient, less burdensome and less expensive.

C.    Borders objects to each Interrogatory to the extent it seeks information regarding documents that are protected by the attorney-client privilege, the work-product doctrine, the self-critical analysis privilege, or any other applicable privileges or doctrines that limit discovery. Borders does not intend to waive by these Responses, or by production of documents, any privileges or claims of confidentiality associated with information or documents produced in this action.

D.    Borders objects to each Interrogatory to the extent it seeks production of confidential, trade secret, and/or proprietary information.

E.    Borders objects to each Interrogatory to the extent it seeks discovery that is inconsistent with or enlarges the scope of permissible discovery under the relevant Virginia Rules and any applicable Court orders.

F.    Borders reserves the right to and does not waive or intend to waive, by reason of its Responses to these Interrogatories, its right to:

    (1)    revise, amend, or supplement these Responses;

    (2)    object on any grounds to the use of information discovered in response to the Interrogatories for any purpose, in whole or in part, in this or any other proceeding, action, or matter;

    (3)    object on any grounds, at any time, to other discovery procedures or requests relating to the subject matter of the Interrogatories; and

    (4)    object on any grounds to the admissibility of any information produced in response to the Interrogatories.

G.    Borders objects to each Interrogatory that uses the terms or phrases "any," "every," "all," "each and every" and "any and all" to the extent that these phrases are overbroad, unduly burdensome, vague, ambiguous, confusing, argumentative, harassing and seek information that is neither relevant to the allegations in Plaintiff's complaint, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to the above objections, Borders responds as follows to Plaintiff's First Set of

Interrogatories to Defendant Borders Group, Inc.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**  State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you.  Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Interrogatory because it is vague, ambiguous,

2

argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by the phrases "allegation of racial profiling" and "submitted against you," and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Interrogatory to the extent that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**INTERROGATORY NO. 2:** Describe in detail the basis for each defense raised in your Answer and state all facts that support each such defense.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Interrogatory because it is vague, ambiguous, overbroad and unduly burdensome. Borders also objects to this Interrogatory on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Dated: June 23, 2008                    Respectfully submitted,


                                        _____/s/_____
                                        Craig A. Thompson (Bar No. 500168)
                                        Robert L. Wilkins (Bar No. 429065)
                                        Venable LLP
                                        575 7th Street, NW
                                        Washington, D.C. 20004
                                        (202) 344-4058

                                        *Attorneys for Defendants*

                                        3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2008, a copy of Defendant Borders

Group, Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories was sent via

electronic mail and first class mail, postage prepaid, to:

> John P. Relman
> Glenn Schlactus
> Relman & Dane PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, D.C. 20036
> (202) 728-1888 (o)
> (2020) 728-0848 (fax)
>
> *Attorneys for Plaintiff*


_____/s/_____
Craig A. Thompson

BA2DOCS1/345026

## **VERIFICATION**

I, Lis Morrow, hereby verify that I am employed by Borders, Inc. and am

qualified to execute this Verification.  The statements of fact made on behalf of Borders

in its Objections and Responses to Plaintiff's First Set of Interrogatories are based upon

information gathered by me, other employees of Borders Inc., and the Company's

counsel.  The language of this Response is counsel's and not mine.  I have read this

Response and to the extent it is based upon information, which I have given to the

Company's counsel, I verify under penalty of perjury that the foregoing is true and

correct.


Executed on:  June 23, 2008

Lis Morrow
Senior Human Resources Manager
Borders, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*        \*        \*        \*        \*        \*        \*

### DEFENDANT BORDERS GROUP, INC.'S
### OBJECTIONS AND RESPONSES TO PLAINTIFF'S
### FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its Objections and Responses to Plaintiff's First Set of Requests for

Production of Documents to Defendant Borders Group, Inc. in the above-listed case.

### GENERAL OBJECTIONS

A.    Borders objects to these Requests to the extent they seek the identity of documents or
request information protected from discovery by the attorney-client privilege, work-
product doctrine, the consulting expert privilege, the self-critical analysis doctrine, or any
other privilege, or that is otherwise immune or protected from disclosure. Borders does
not waive any applicable protections or privileges through the production of documents
or the supplying of information in response to these Requests. On the contrary, Borders
specifically preserves any and all applicable protections and privileges.

B.    Borders objects to these Requests as overbroad and unduly burdensome to the extent they
call for the identification of "all" documents or information or "any" or "every"
document or piece of information when all relevant facts can be obtained from fewer than
"all" documents or "any" document. Read literally, such Requests improperly call for the
production of identical and duplicative documents or exact copies, which is harassing,
overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of
admissible evidence.

C.     Borders objects to these Requests to the extent they require Borders to obtain and produce information concerning any entity other than Defendant Borders on the grounds that such information is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, and because such Requests are unduly burdensome and seek information not within Borders's care, custody, or control. Borders further objects to being required to make available for inspection and copying documents that Plaintiff already has or that are in the care, custody, and control of third parties, and thus are equally available to Plaintiff as they are to Borders.

D.     Borders objects to these Requests as overbroad, unduly burdensome, oppressive, and as seeking information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action.

E.     Borders objects to these Requests to the extent they seek Borders's confidential and proprietary information, including trade secrets or other confidential research, development, or commercial information, the disclosure of which will or may cause irreversible harm to Borders.

F.     Borders makes each objection to these Requests and responds to these Requests without waiving or intending to waive, but on the contrary, preserving and intending to preserve: (1) the right to object, on the grounds of competency, privilege, relevance, or materiality, or any other proper grounds, to the use of such documents or information for any purpose, in whole or in part, in any subsequent proceedings, in this action or in any other action; (2) the right to object on any ground, at any time, to Requests, Interrogatories, or other discovery procedures involving or relating to the subject of the Request to which Borders has responded herein; and (3) the right at any time to revise, correct, add to, or clarify any of the objections and answers made herein. Furthermore, any inadvertent production of any document shall not constitute a waiver of any privilege or any other ground for objecting to discovery with respect to such document or any other document, or with respect to the subject matter thereof or the information contained therein; nor shall such inadvertent production waive Borders's right to demand that such documents be returned or to object to the use of the document or the information contained therein during this or any other proceeding.

G.     Borders objects to these Requests to the extent they call for information or documents that are unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive. In particular, Borders objects to these Requests as overbroad and unduly burdensome to the extent the information requested is publicly available and, consequently, equally available to Plaintiff as it is to Borders.

H.     Borders objects to these Requests to the extent they are vague, ambiguous, argumentative, duplicative, overbroad, unduly burdensome or oppressive, call for an unreasonable investigation on the part of Borders, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action. Borders further objects to these Requests to the extent they seek information

2

or documents or impose obligations beyond those permitted by the Local Rules of this Court or any applicable Order of this Court.

Subject to the above objections, Borders responds as follows to Plaintiff's First Set of Requests for Production of Documents.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**  All documents related to Ronald Newman.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Ronald Newman.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 2:**  All documents related to Clifton Walker, III.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Clifton Walker, III that can reasonably be identified as responsive to this request.  Discovery in this matter is incomplete and ongoing.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

3

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

4

**REQUEST NO. 5:** The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 6:** All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in

its possession, custody, or control that relate to Borders' Loss Prevention materials from the

relevant period. Discovery in this matter is incomplete and ongoing. Borders reserves the right

to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 7:** Documents sufficient to identify every person who shopped at the 14th
Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card
records and Borders Rewards records.

**RESPONSE:**

      Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege, the work-product doctrine or other provisions of law, including, but not

limited to, any and all relevant privacy laws and consumer protection and/or customer privacy

laws. Subject to and without waiving these objections, Borders will consider in good faith a

request that identifies specific categories of documents or information that are relevant to the

issues in this lawsuit.

**REQUEST NO. 8:** All documents related to any oral or written, formal or informal complaint
about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who
was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

      Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also

BA2DOCS1/345027

objects to this Request to the extent it calls for information protected from disclosure by the

attorney-client privilege and/or work-product doctrine.  Subject to and without waiving these

objections, Borders will produce responsive, non-privileged documents in its possession,

custody, or control that relate to any records of conduct for Darlene White concerning the

incident on December 2, 2005 as alleged in Plaintiff's Complaint.  Borders specifically reserves

any and all objections previously stated in these Objections and Responses to Plaintiff's First Set

of Requests for Production of Documents pertaining to all documents related to Darlene White.

**REQUEST NO. 9:**  All documents related to surveys or interviews of people who shopped at
the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Borders further objects to this Interrogatory because it is vague, ambiguous,

argumentative, overbroad, unduly burdensome, harassing, and confusing as to what is meant by

the phrase "surveys or interviews," and seeks information that is neither relevant to the claims or

defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Borders also objects to this Request to the extent it calls for information protected from

disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law,

including, but not limited to, any and all relevant privacy laws and consumer protection and/or

customer privacy laws.  Subject to and without waiving these objections, Borders will consider

in good faith a request that identifies specific categories of documents or information that are

relevant to the issues in this lawsuit.

7

**REQUEST NO. 10:** All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Borders' Loss Prevention materials from the relevant period. Discovery in this matter is incomplete and ongoing. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 11:** All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control that relate to Borders' Loss Prevention materials from the relevant period. Discovery in this matter is

8

incomplete and ongoing. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 12:** Documents sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control sufficient to identify the management structure applicable to the 14th Street Borders on December 2, 2005.

**REQUEST NO. 13:** Documents sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Subject to and without waiving these objections, Borders will produce responsive, non-privileged documents in its possession, custody, or control sufficient to show a scale layout of the 14th Street Borders as it existed on December 2, 2005.

**REQUEST NO. 14:** All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

9

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders

further objects to this Request on the grounds that it is improperly vague and confusing as to

what is meant by the phrase "related to allegations of discrimination." Borders also objects to

this Request to the extent it calls for information protected from disclosure by the attorney-client

privilege, the work-product doctrine or other provisions of law, including, but not limited to, any

and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to

and without waiving these objections, Borders will consider in good faith a request that identifies

specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 15:** All documents relating to any investigation by the District of Columbia
Office of Human Rights or any other government agency concerning alleged discrimination at or
related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders further objects to this Request on the grounds that it is overbroad, unduly

burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of

any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders

further objects to this Request on the grounds that it is improperly vague and confusing as to

what is meant by the phrase "relating to any investigation." Borders also objects to this Request

to the extent that it calls for information protected from disclosure by the attorney-client

privilege, the work-product doctrine or other provisions of law, including, but not limited to, any

and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to

and without waiving these objections, Borders will consider in good faith a request that identifies

specific categories of documents or information that are relevant to the issues in this lawsuit.

10

**REQUEST NO. 16:** All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and improperly vague and confusing as to what is meant by the phrase "related to any allegation of racial profiling." Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege, the work-product doctrine or other provisions of law, including, but not limited to, any and all relevant privacy laws and consumer protection and/or customer privacy laws. Subject to and without waiving these objections, Borders will consider in good faith a request that identifies specific categories of documents or information that are relevant to the issues in this lawsuit.

**REQUEST NO. 17:** Documents sufficient to identify your net worth and revenues from and including 2007 to the present.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence. Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders refers Plaintiff to Borders' Annual Report, which is available to the public.

11

**REQUEST NO. 18:** All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders states that it was covered by the following policy during the time period identified in Plaintiff's Complaint: Liberty Mutual Fire Insurance Company; Policy Number RG2-641-004284-025.

**REQUEST NO. 19:** All documents reviewed, received, or considered by any expert retained by you whose opinions may be presented at trial.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Borders will designate the expert witnesses it intends to call at trial and produce expert material in accordance with the pre-trial scheduling order entered in this case.

**REQUEST NO. 20:** All documents related to any allegation, claim or defense asserted in your Answer.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.

12

**REQUEST NO. 21:** All documents you relied on or referred to in responding to interrogatories served by Plaintiff.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request to the extent it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving these objections, Borders states that all documents identified in its Objections and Responses to Plaintiff's First Set of Interrogatories have been produced.

**REQUEST NO. 22:** All documents you intend to introduce into evidence at trial.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, and improperly vague and confusing. Borders also objects to this Request on the grounds that it calls for information protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Dated: June 23, 2008                           Respectfully submitted,


                                    _____/s/_____
                                    Craig A. Thompson (Bar No. 500168)
                                    Robert L. Wilkins (Bar No. 429065)
                                    Venable LLP
                                    575 7th Street, NW
                                    Washington, D.C. 20004
                                    (202) 344-4058

                                    *Attorneys for Defendants*

                                           13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2008, a copy of Defendant Borders

Group, Inc.'s Objections and Responses to Plaintiff's First Set of Requests for Production of

Documents was sent via electronic mail and first class mail, postage prepaid, to:

John P. Relman
Glenn Schlactus
Relman & Dane PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C. 20036
(202) 728-1888 (o)
(2020) 728-0848 (fax)

*Attorneys for Plaintiff*

_____/s/_____
Craig A. Thompson

14

# EXHIBIT C

RELMAN & DANE PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

July 29, 2008

**Via Electronic Mail Only**

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
CAThompson@Venable.com

Tina H. Saunders
Venable, LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
THSaunders@Venable.com

      Re:    *Newman v. Borders, Inc., et al.*, No: 1:07-cv-0492-RWR (D.D.C.)

Dear Craig and Tina:

      I am writing to memorialize our meet and confer telephone conversation of yesterday. If you believe my understanding of our conversation is mistaken, or that I have omitted anything of significance, please let me know.

**I.    Defendants' Discovery Responses**

      The following tracks the discussion of issues set forth in my letter of July 3, 2008, regarding Defendants' responses to Plaintiff's First Sets of Requests for Production of Documents and answers to Plaintiff's First Sets of Interrogatories. Other than case law that you contend supports the positions you are taking, you will provide the materials noted below by August 1, 2008. You expect to provide the case law noted below sooner.

      Expect as specifically noted below, Plaintiff does not accept the limitations that Defendants are applying to their discovery responses. As we discussed, Plaintiff will consider filing a motion to compel with respect to the issues we cannot resolve.

RELMAN & DANE PLLC

1.    <u>Defendants Must Produce a Privilege Log</u>

You agreed to produce a privilege log.

2.    <u>Documents Related to Plaintiff Ronald Newman</u>

You are continuing to search for responsive documents.  You agreed to produce or include on your privilege log all responsive documents that you locate.

3.    <u>Documents Related to Borders Personnel On Duty The Evening of the Events At Issue</u>

With respect to documents related to Darlene White, you stated that Defendants will only produce documents that are about the incident at issue in this lawsuit and documents related to any other allegations of racial profiling by Ms. White.  You stated that you have already produced all such documents.  You object to producing any other documents related to Ms. White, including documents related to other allegations of discrimination by her and other documents from her personnel files.  You agreed to provide case law that you contend supports Defendants' objections.

With respect to documents related to Pat Spurlock, you stated that Defendants will only produce documents that are about the incident at issue in this lawsuit.  You stated that you have already produced all such documents.  You object to producing any other documents related to Ms. Spurlock, including other documents from her personnel file.  Based on your reading of the Complaint, you contend that Defendants have lesser discovery obligations with respect to information related to Ms. Spurlock than Ms. White because Plaintiff's negligent supervision claim has been dismissed.  As I stated in our telephone call, your view of the Complaint is overly narrow.  Plaintiff alleges that Ms. Spurlock effectively ratified and furthered Ms. White's discrimination, *see* Compl. ¶¶ 26, 31, and played a control role in the events at issue, *see, e.g., id.* ¶¶ 21-31.  You agreed to provide case law that you contend supports Defendants' objections.

With respect to Bob Fath, you stated that Defendants will only produce documents that are about the incident at issue in this lawsuit.  You stated that you have already produced all such documents.  You object to producing any other documents related to Mr. Fath, including other documents from his personnel file.  You represented that Defendants have no documents related to complaints about, or reports of improper conduct by, Mr. Fath (you did not make a similar representation regarding any other employee).  You agreed to provide case law that you contend supports Defendants' objections.

With respect to other employees who were on duty at the 14th Street Borders between 4 P.M. and closing on December 2, 2005, you agreed to produce documents sufficient to identify them, consistent with the definition of "identify" set forth in Plaintiff's discovery requests.  You object to producing any documents from these employees' personnel files suggesting in any manner that they ever acted dishonestly, gave an untruthful statement, or engaged in discriminatory or retaliatory behavior.  We agreed to provide each other with case law regarding

2

RELMAN & DANE PLLC

the legitimacy of Defendants' objections. To that end, *see Waters v. United States Capitol Police Board*, 216 F.R.D. 153, 164 (D.D.C. 2003), requiring the production of such documents from the personnel files of "other employees who may have information regarding plaintiff's claims."

4.    Documents Related to the Identification of Other Witnesses

You stated that Defendants will not produce any documents related to customers of Borders, regardless of whether a protective order is entered by the Court. This includes purchase records or Borders Rewards applications identifying persons who were in the 14th Street Borders after 4 P.M. on December 2, 2005. You stated that, apart from any such records, Defendants do not have any way to identify people who shopped at the store during that time period. In addition, you have not determined whether any such Borders Rewards records exist.

You stated that you have determined that no surveys or interviews of any sort were obtained by Defendants from, or conducted by Defendants with, anyone related to his or her presence in the 14th Street Borders on December 2, 2005. You also stated that Borders received no complaints related to this store on this day (although it was not stated, I understood this to exclude Mr. Newman's complaint).

5.    Security Records Applicable to the Store At Issue on the Evening
of the Events At Issue

You agreed to search for logs identifying security personnel who were working at the 14th Street Borders during the specified time period and for other types of logs or other documents that are responsive to this request but have not been produced. You will produce such documents if located.

You stated that Defendants have not retained any video recordings made of the 14th Street Borders on December 2, 2005.

6.    Documents and Interrogatories Related to Other Incidents of Discrimination

You stated that Defendants will only produce documents related to other allegations of racial profiling at the 14th Street Borders. You have not determined whether Defendants have any such documents. You will not withhold documents based on any assertion that the terms noted in my letter are ambiguous.

You stated that Defendants will not produce documents related to allegations of types of discrimination other than racial profiling at the 14th Street Borders. I reiterate that limiting Defendants' production to documents related to only one type of discrimination, *i.e.*, racial profiling, is improper. *See, e.g., Waters*, 216 F.R.D. at 161 & n.7 (requiring production of "all complaints of discrimination on the basis of race, color, and national origin" in case alleging that employee was terminated because of racial discrimination).

3

RELMAN & DANE PLLC

You stated that Defendants will not produce documents related to allegations of racial profiling or any other form of discrimination at other stores in Washington, D.C., or elsewhere.

You will provide case law that you believe supports Defendants' objections.

7.    Documents Related to Policies, Procedures, Training, Guidance, and Instructions Concerning Security, Shoplifting, Customer Relations, and Discrimination

You stated that you have produced all responsive, non-privileged records related to loss prevention, and training for loss prevention.

You have not determined whether Defendants have additional documents concerning security, customer relations, or discrimination. You will produce such documents if located and not privileged.

Please note that, among others, documents related to the policies regarding the retention and destruction of store security video recordings are responsive to these requests.

8.    Documents Sufficient to Show the Store's Layout

You stated that no other responsive records exist. Although it appears from our conversation that no effort was made to obtain responsive records regarding the upper floor from any architect or designer retained by Defendants, I agreed not to pursue this item. Should Defendants obtain such records, however, the supplementary discovery obligations of Fed. R. Civ. P. 26(e) would apply.

In addition, I disagree with your characterization of the document Defendants produced labeled BI000095 as adequately demonstrating the layout of the upper floor. Indeed, the document explicitly states that it concerns the "Basement/Mezzanine."

9.    Insurance Policy

You agreed to produce a copy of the insurance policy.

10.   Documents Related to the Allegations, Claims, or Defenses Asserted In Defendants' Answer

You stated that Defendants do have responsive, non-privileged documents, but are not withholding any pursuant to their objections.

11.   Defendants' Objections Based On Privacy

You agreed to provide a draft protective order for my review. As I stated, this is necessary to prevent discovery from being further delayed by any need for a protective order,

4

RELMAN & DANE PLLC

either with respect to discovery Defendants have agreed to provide or that Defendants may be ordered by the Court to provide pursuant to a motion to compel.

    12.    <u>Defendants' Failure to Produce Documents That They Recognize Are Discoverable</u>

We agreed that these issues are subsumed by our discussion of other issues.

    13.    <u>Identification of Persons Assigned to the Borders Store Where the Events At Issue Occurred</u>

You agreed to provide further identifying information, reflecting the definition of "identify" set forth in Plaintiff's discovery requests, with respect to persons with managerial responsibility for the 14th Street Borders on December 2, 2005. This includes persons at a regional, district, or similar level of authority above that of the store's general manager. I agreed that it does not include all managerial employees through the level of chief executive officer.

You also agreed to provide identifying information with respect to all other persons who worked at the 14th Street Borders on December 2, 2005, after 4 P.M.

Please note that these categories include, but are not limited to, Darlene White, Pat Spurlock, and Robert Fath. To date, sufficient identifying information has not been produced with respect to any of these individuals.

    14.    <u>Identification of Persons Who Assisted in Responding to Interrogatories</u>

Defendants will supplement or amend their interrogatory responses in this regard.

**II.**    **<u>Plaintiff's June 27, 2008 Discovery Responses</u>**

Plaintiff will supplement the response to Interrogatory 8 in light of the clarification you provided during our conversation.

You will provide clarification of the meaning of Interrogatory 10.

In light of the clarification of Document Request 11 you provided, I can confirm that no documents have been withheld on the bases of Plaintiff's objections.

In light of the clarification of Document Request 12 you provided, we will review this document request again.

In light of the examples you provided of the types of documents you are seeking pursuant to Document Request 13, we will review this document request again.

Plaintiff will provide additional discovery material by August 1, 2008.

5

RELMAN & DANE PLLC

### III.    **Defendants' Second Set of Interrogatories**

With respect to Craig's letter of June 17, 2008, which we have agreed to treat as Defendants' Second Set of Interrogatories, I agreed to provide written answers by August 1, 2008.  You will consider limiting the scope of the latter two of these interrogatories to providers of mental health care.

Sincerely,

Glenn Schlactus

cc:    Robert Wilkins
       (RLWilkins@Venable.com)

6

# EXHIBIT D

# VENABLE®LLP

**VIA EMAIL**

August 1, 2008

John P. Relman
Glenn Schlactus
Relman & Dane PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C.

Craig A. Thompson
t 410.244.7605
f 410.244.7742
cathompson@venable.com

Re:    *Ronald Newman v. Borders, Inc., et al.*

Dear Counsel:

This letter will serve as Borders' response to plaintiff's letters of July 3 and 29, 2008, regarding discovery and memorializes the issues discussed during a meet and confer conference call on July 28, 2008, between counsel for both parties. Specifically, the parties have agreed to clarify or provide supplemental responses, and/or produce documents to each party's respective discovery requests as follows:

## PLAINTIFF'S DISCOVERY REQUESTS TO DEFENDANTS

**Privilege Log:**

Borders will produce a privilege log pursuant to the Federal Rules of Civil Procedure.

**Documents Related to Ronald Newman (Request No. 1):**

Borders states that it has produced all responsive, non-privileged documents in its possession related to Plaintiff Ronald Newman. Borders will provide supplemental documents to the extent that any such documents exist.

**Documents Related to Pat Spurlock (Request No. 3):**

Borders restates its objections regarding this request seeking all documents related to Pat Spurlock. It remains Borders' position that this request is not reasonably tailored to lead to the discovery of evidence relevant to the claims and defenses asserted in this case. *See Pleasants v. Allbaugh*, 208 F.R.D. 7, 5 (D.D.C. 2002) (stating "courts remain concerned about fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests and have therefore limited discovery to the issues involved in the particular case") (internal citations and quotations

# VENABLE®LLP

August 1, 2008
Page 2

omitted).  Plaintiff has not named Ms. Spurlock in the Complaint as being an actor in the alleged conduct that forms the basis of plaintiff's racial profiling claim.  Indeed, plaintiff's negligent supervision claim has been dismissed, thus negating any valid reason for seeking the personnel file of Ms. Spurlock.  *See Hardrick v. Legal Services Corporation*, 96 F.R.D. 617, 618-19 (D.D.C. 1983) (holding that discovery should be tailored to the issues involved in the particular case and must be related to the individuals who are allegedly involved in the discriminatory conduct).  Further, it is well-settled that plaintiff is not entitled to discovery of the entire personnel file especially due to the file largely containing nonresponsive, irrelevant information that has nothing to do with the claims or defenses in this case.  *See Nuskey v. Lambright*, 2008 LEXIS 44672 at 22 (D.D.C. June 10, 2008) (stating "a personnel file need not be produced in its entirety if it contains nonresponsive information"); *Macintosh v. Building Owners and Managers Assoc. Intl., et al.*, 231 F.R.D. 106, 108-09 (D.D.C. 2005) (noting that a litigant does not get the entire personnel file because of the possibility that there is something in it that may prove [plaintiff's] case"); *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 164 (D.D.C. 2003) (holding that plaintiff was not entitled to discovery of employee's entire personnel file); *Byrd v. Reno*, 1998 LEXIS 11855 at *15 (D.D.C. Feb. 12, 1998) (denying plaintiff's request seeking the entire personnel file of employees and limiting discovery to information relevant to plaintiff's complaint).

Plaintiff heavily relies on the case *Bregman v. District of Columbia*, 182 F.R.D. 352, 356 (1998), to support the position that he is entitled to the personnel files of unnamed participants in the alleged incident.  However, *Bregman* involved a D.C. Metropolitan Police Officer named as a defendant in a claim for false arrest and assault. The court compelled the personnel file specifically noting the fact that the officer was a named defendant and principal actor in the case.  Indeed, the court stated, "[t]here is nothing vague about that description of the files and seeking these files as to the defendant Clark is hardly overbroad; he is after all, a defendant and what his personnel files reflect about his behavior as a police officer and his training is at the very heart of the lawsuit." (emphasis added).  *Id.*

Plaintiff refuses to narrow the scope of the requests and the legal authority plaintiff cites does not support the discovery request as propounded.  As such, Borders stands on its objections as stated herein and in its Responses to plaintiff's discovery requests.



August 1, 2008
Page 3

**Documents Related to Darlene White (Request No. 4):**

Borders restates its general and specific objections that plaintiff is not entitled to seek Ms. White's entire personnel file. *See* discussion related to Pat Spurlock *supra.* Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents related to Darlene White and the alleged incident.

**Documents Related to Personnel Files of All Borders Employees on Duty Dec. 2, 2005, after 4PM (Request Nos. 5 and 8):**

Borders restates its general and specific objections to this request. Plaintiff is not entitled to seek the personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4pm and closing. *See* discussion related to Pat Spurlock *supra.* As discussed during our July 28 call, none of the employees on duty, other than Darlene White, were named in plaintiff's Complaint as having racially profiled plaintiff. In fact, most of the employees on duty were not witnesses to the alleged incident. Thus, plaintiff's request is overbroad, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of relevant information related to the asserted claims and defenses in this case.

Plaintiff refuses to narrow the scope of the requests and did not seek discovery of personnel files of "other employees that have information regarding plaintiff's claims." Rather, plaintiff requested the entire personnel file of all employees on duty during the alleged incident. Plaintiff's reliance on *Waters v. Capitol Police Bd.* in his July 29 letter is misplaced. *Waters* certainly does not support plaintiff's sweeping request for the entire file of all employees, which necessarily includes the files of employees with no connection whatsoever to plaintiff's claims or the alleged incident. The United States District Court for the District of Columbia has made it clear that such overbroad requests will not be upheld. *See* authority cited *supra.* As such, Borders stands on its objections as stated herein and in its Responses to plaintiff's discovery requests.

**Documents Related to Identification of Customers (Request Nos. 7 and 9):**

Borders restates its general and specific objections to these requests. Further, it is unduly burdensome for Borders identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4PM, as such transactions necessarily include in-store cash and/or credit transactions, and online purchases. Subject to and without



August 1, 2008
Page 4

waiving these objections, Borders states that there were no customer surveys or complaints (other than Plaintiff) submitted on December 2, 2005.

### Documents Related to Loss Prevention at the 14th Street Borders on Dec. 2, 2005 (Request No. 6):

Borders states that it has produced all responsive, non-privileged documents in its possession related to loss prevention (security) at the 14th Street Borders on Dec. 2, 2005, after 4PM.  Borders will provide supplemental documents related to any logs, memoranda, or other materials to the extent that any such documents exist.

### Documents Related to Other Discrimination at All Borders Stores in Washington, D.C. (Request Nos. 14 and 15):

Borders restates its general and specific objections to these requests seeking all allegations of "discrimination" or "investigations" related to any Borders bookstore in Washington, D.C.  Plaintiff must propound discovery requests that are narrowly tailored to his claim of customer racial profiling.  *See Marshall v. D.C. Water & Sewage Authority*, 214 F.R.D. 23, 25 (D.D.C. 2003) (sustaining defendant's objection and stating that because "plaintiff has made neither a claim of sex discrimination nor age discrimination, the gender and age of the employees at WASA are irrelevant to the alleged race discrimination claim"); *Mitchell v. Natl. Railroad Passenger Corp., et al.*, 208 F.R.D. 455, 460 (D.D.C. 2002) (holding that discovery requests must be limited to the same form of discrimination claimed by plaintiff, to the same department, and to the reasonable time before and after the alleged discrimination); *White v. U.S. Catholic Conf.*, 1998 LEXIS 11832 at * 14-16 (D.D.C. May 26, 1998) (denying plaintiff's motion to compel other forms of discrimination unrelated to plaintiff's claims); *Rauh v. Coyne, et al.*, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (refusing to admit evidence of racial discrimination in a discriminatory discharge case based on sex and marital status).

Plaintiff has failed to cite any relevant legal authority entitling him to the expansive discovery sought regarding all allegations or investigations of discrimination related to any Borders store in Washington, D.C.  Plaintiff's reliance on *Waters v. U.S. Capitol Police Bd.* cited in his letter of July 29 is incorrect.  In fact, the judge in *Waters* specifically stated, "I have always limited discovery of other acts of discrimination to only those of the type of discrimination charged in the primary case."  *Waters*, 216 F.R.D. 153, 160 n.7.  In light of plaintiff's failure to propound discovery requests that are

VENABLE®LLP

August 1, 2008
Page 5

narrowly tailored to this issues in this case, specifically customer racial profiling, Borders stands on its objections to these requests.

### Documents Related to Allegations of Racial Profiling (Request No. 16):

Plaintiff has agreed to narrow the scope of this request by seeking all complaints of "racial profiling" related to the 14th Street Borders store. Borders restates its general and specific objections. Subject to and without waiving those objections, Borders states that it will produce any relevant, non-privileged documents in its possession related to any complaints or lawsuits of "racial profiling" at the 14th Street Borders store. We anticipate that counsel will agree that any complaints or lawsuits as identified above filed within a reasonable time period prior to the events at issue in this case will be considered responsive.

### Documents Related to Policies and Procedures Regarding Loss Prevention, Customer Relations, and Discrimination (Request No. 10):

Borders states that it will provide supplemental documents related to policies and procedures on Loss Prevention (security), customer relations, and discrimination to the extent that any such documents exist.

### Documents Sufficient to Show the Store's Layout (Request No. 13):

Borders states that it has produced all documents in its possession responsive to this request. Plaintiff's characterization in his July 29 letter that we have made no effort to locate documents responsive to this request is incorrect. After an exhaustive search for the scale layout of the store, we produced the documents available and applicable on December 2, 2005. We reiterate that plaintiff agreed not to pursue this request any further.

### Borders' Insurance Policy (Request No. 18):

Borders states that it will produce the insurance policy applicable to this matter for inspection and copying.

# VENABLE®LLP

August 1, 2008
Page 6

### Documents Related to Allegations, Claims, or Defenses Asserted in Defendants' Answer (Request No. 20):

Borders states that it is not withholding any responsive, non-privileged documents to this request that have not already been produced.

### Interrogatory Related to All Borders Employees Who Worked at or Had Managerial Responsibilities for the Borders Store (Interrogatory No. 3):

Plaintiff has agreed to narrow the scope of this request by seeking the name, position, title, dates of employment, and job description for each person who worked at or had managerial responsibilities for the 14th Street Borders on December 2, 2005, after 4PM.

Borders states that it will supplement its response and provide the requested information to this Interrogatory as defined and stated herein.

### Interrogatory Related to Persons Who Assisted in Preparing Borders Responses (Interrogatory No. 5):

Borders states that it will supplement its response to this Interrogatory and provide the requested information.

Borders further clarifies that the Verification pages for the interrogatory responses provided to plaintiff are for both Defendants, Borders, Inc. and Borders Group, Inc.

## DEFENDANTS' DISCOVERY REQUESTS TO PLAINTIFF

### Interrogatory Nos. 1, 3, 4, 5, 6, 7, and 11:

Plaintiff has agreed to provide supplemental responses to these requests to the extent the requested information is available.



August 1, 2008
Page 7

### Requests Regarding Plaintiff's Mitigation of Damages (Interrogatory No. 8 and Document Request No. 11):

Plaintiff has agreed to supplement his response regarding mitigation of non-economic damages to the extent that plaintiff has not already provided the requested information.

### Interrogatory Related to Allegations or Claims, Asserted in Plaintiff's Complaint (No. 10):

Plaintiff asked for clarification regarding the information Borders is seeking through this interrogatory. Borders states that it is requesting that plaintiff describe and provide any documents or other tangible things upon which he intends to rely to support any allegation or claim asserted in his Complaint. *See Steinbuch v. Cutler*, 463 F. Supp. 2d 4, 9 (D.D.C. 2006) (requiring plaintiff to produce responsive documents for interrogatory requesting plaintiff to identify documents to support asserted claims). Please provide the requested information to the extent plaintiff has not already done so.

### Documents Provided to Any Public or Private Agency Related to this Case (Request No. 12):

Plaintiff agreed to provide documents given to any public agency (governmental) or private agency (company or organization) by plaintiff in connection with this case to the extent any such documents exist.

### Documents Related to Plaintiff's Alleged Damages (Request No. 13):

Plaintiff agreed to provide documents responsive to this request to the extent any such documents exist and have not already been produced.

### Borders June 17, 2008 Letter to Plaintiff's Counsel Regarding Plaintiff's Health Care Providers and Medical Authorizations:

Plaintiff agreed to treat Borders' letter to plaintiff's counsel dated June 17, 2008, as an additional interrogatory request. As such, Borders' June 17, 2008, letter will be treated as Defendants' Second Set of Requests for Interrogatories, Interrogatory No. 15 pursuant to Federal Rule of Civil Procedure 33.

# VENABLE<sup>®</sup>LLP

August 1, 2008
Page 8

During our July 28 call, plaintiff's counsel objected to providing the medical information and authorizations related to plaintiff's health care providers who have provided treatment to him in the last five years. This objection, however, is not a valid basis for failing to provide the requested information. The medical information and authorizations that Borders seeks is entirely appropriate discovery for which plaintiff must provide the requested information. *See Roberson v. Bair*, 242 F.R.D. 130 (D.D.C. 2007) ("A defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to a plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so."); *Barnett v. PA Consulting Group, Inc.*, 2007 WL 845886 at * 4 (D.D.C. Mar. 19, 2007) (noting that discovery of plaintiff's general medical records and non-privileged mental health information is relevant to plaintiff's claims of pain and suffering, humiliation, anger, anxiety, and to other factors that may have affected plaintiff's mental state other than the alleged discriminatory conduct); *Moore v. Chertoff*, 2006 LEXIS 31391 (D.D.C. May 22, 2006) (holding that defendant may seek plaintiff's medical records based on plaintiff's claims of emotional distress "to explore whether factors other than the alleged employment discrimination caused plaintiff's alleged injuries"). Plaintiff may not withhold medical records that could be probative of potential causes contributing to his alleged injuries. *Id.* at *12. Please provide the requested information responsive to this request.

**Protective Order:**

Borders will provide a draft Stipulated Protective Order regarding the discovery of confidential information.

Please provide further responses to our written discovery that addresses the concerns we have stated herein, and provide any further responsive documents that have not already been produced, by no later than **Friday, August 1, 2008**. I look forward to your prompt response and cooperation.

# VENABLE<sup>®</sup>LLP

August 1, 2008
Page 9

Very truly yours,

Craig A. Thompson

cc:    Robert L. Wilkins, Esq.
        Tina H. Saunders, Esq.

# EXHIBIT E

RELMAN & DANE PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

August 6, 2008

**Via Electronic Mail Only**

Craig A. Thompson
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004
CAThompson@Venable.com

Tina H. Saunders
Venable, LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
THSaunders@Venable.com

   Re: *Newman v. Borders, Inc., et al.*, No: 1:07-cv-0492-RWR (D.D.C.)

Dear Craig and Tina:

   I am writing in response to Craig's letter of August 1, 2008, and further to our meet and confer telephone conversation of July 28, 2008.

   Under the heading "Documents Related to Identification of Customers (Request Nos. 7 and 9)," you state that "there were no customer surveys or complaints (other than Plaintiff) submitted on December 2, 2005." From our telephone conversation, however, I understood Borders to be representing that no surveys or complaints were obtained <u>about</u> that particular day, as opposed to <u>on</u> that particular day. Please provide clarification.

   Under the heading "Documents Related to Allegations of Racial Profiling (Request No. 16)," you state that "Plaintiff has agreed to narrow the scope of this request by seeking all complaints of 'racial profiling' related to the 14th Street Borders store." Your statement is incorrect. You have merely described the limitation that Borders is unilaterally and unjustifiably imposing.

   Under the heading "Interrogatory Related to All Borders Employees Who Worked at or Had Managerial Responsibilities for the Borders Store (Interrogatory No. 3)," you also

RELMAN & DANE PLLC

erroneously describe Plaintiff's position by omitting certain information described in the definition of "identify" included in Plaintiff's First Set of Interrogatories.

In our July 28 conversation, you agreed to provide clarification of Interrogatory 10 served by Borders. On its face, the interrogatory appears to be seeking Plaintiff's trial exhibit list. You stated on July 28 that such is not Borders' intent. The interrogatory states:

> If you intend to rely upon any documents or other tangible things to support a position that you have taken or intend to take in this action, including any claim for damages, provide a description, by category and location, of all such documents and other tangible things or property, and identify all persons having possession, custody, or control of them.

Under the heading "Interrogatory Related to Allegations or Claims, Asserted in Plaintiff's Complaint (No. 10)," you now state that Borders is seeking discovery of documents or things "upon which [Plaintiff] intends to rely to support any allegation or claim asserted in his Complaint." This is not a clarification, but rather a restatement of the interrogatory. Moreover, your citation to the Court's discussion of Interrogatory 75 in *Steinbuch v. Cutler*, 463 F. Supp. 2d 4 (2006), is inapposite because the interrogatory there did not use any variation of your "intend to rely upon" phrase. Accordingly, Plaintiff continues to object to this interrogatory. Subject to, and without waiver of any objection, I can confirm that Plaintiff does not currently intend to rely on any documents or tangible things that have not been produced or made available for inspection during discovery in this case.

We have reviewed Borders' Document Requests 12 and 13 in light of our July 28 conversation and determined that there are no additional responsive materials.

With respect to your letter that we have agreed to treat at Defendants' Second Set of Interrogatories, Plaintiff did not agree to treat all three inquiries in that letter as a single interrogatory. Rather, we view them as three interrogatories, numbers 15 through 17. Unless Defendants serve a significant number of additional interrogatories, however, this will remain immaterial.

Under the heading "Borders June 17, 2008 Letter to Plaintiff's Counsel Regarding Plaintiff's Health Care Providers and Medical Authorizations," you persist in demanding discovery concerning all of "plaintiff's health care providers who have provided treatment to him in the last five years," regardless of the nature of any such treatment. The cases you cite, however, demonstrate that Borders is not entitled to such broad discovery into every aspect of Mr. Newman's private medical history. Each case limits discovery to "relevant" medical records, and none permits the kind of invasive fishing expedition that Borders is pursuing. *Roberson v. Bair*, 242 F.R.D. 130, 136 (D.D.C. 2007); *Barnett v. PA Consulting Group, Inc.*, No. 04-1245, 2007 WL 845886, at *4 (D.D.C. Mar. 19, 2007) (Roberts, J.); *Moore v. Chertoff*, No. 00-953, 2006 WL 1442447, at *2, *3 (D.D.C. May 22, 2006) (Roberts, J.). These authorities further demonstrate that medical records concerning matters that are not associated with the kind of emotional distress alleged in the complaint are not relevant. *See, e.g., Barnett*, 2007 WL

2

RELMAN & DANE PLLC

845886, at *5. Applying these cases, it is plain that Plaintiff's response to Interrogatory 12 establishes that his medical information and records are not relevant and are not subject to discovery.

Although you agreed in our July 28 conversation to provide supplemental discovery materials by August 1, 2008, you have not done so. Borders' continued delay in providing discovery that should have been produced in June is inappropriate, and we will bring these delays to the attention of the Court if necessary. In the meantime, I received Tina's voice mail message promising production by today, and expect to receive all outstanding discovery from Borders accordingly.

Sincerely,

Glenn Schlactus

cc:    Robert Wilkins
       (RLWilkins@Venable.com)

3

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| v. | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*        \*        \*        \*        \*        \*        \*

**DEFENDANT BORDERS, INC.'S
FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF'S
<u>FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of Requests

for Production of Documents to Defendant Borders, Inc.  Borders incorporates by reference each

of the General Objections and Specific objections set forth in its Objections and Responses to

Plaintiff's First Request for Production of Documents served on June 23, 2008.  Subject to the

above objections, Borders supplements its responses as follows:

**REQUEST NO. 1:**  All documents related to Ronald Newman.

**RESPONSE:**

Borders states that it has produced all relevant, non-privileged documents responsive to

this Request.  Borders reserves the right to supplement and/or modify this Response when and if

necessary.

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 5:**  The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

2

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Subject to and without waiving these objections, Borders refers to the meet and confer

telephone conference between counsel for the parties on July 28, 2008, and states that it has

produced all relevant, non-privileged documents responsive to this Request. Borders reserves

the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 6:** All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders states that it has produced all relevant, non-privileged documents responsive to

this Request. Borders reserves the right to supplement and/or modify this Response when and if

necessary.

**REQUEST NO. 7:** Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein. Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws.

3

**REQUEST NO. 8:**  All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 9:**  All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Borders also objects to this Request to the extent it calls for information protected from disclosure by any and all relevant privacy laws and consumer protection and/or customer privacy laws.  Subject to and without waiving these objections, Borders states that there were no surveys or interviews submitted of customers who shopped at the 14th Street Borders on December 2, 2005.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

4

**REQUEST NO. 10:** All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Plaintiff has agreed to narrow this request by seeking all documents related to policies and procedures specifically concerning security, shoplifting, customer relations, or discrimination applicable to the 14th Street Borders on December 2, 2005. Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 11:** All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 14:** All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

5

evidence. Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws. Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

demand letters alleging "racial profiling" related to the 14th Street Borders store. Borders

further states that it will produce all relevant, non-privileged documents in its possession that

relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable

time period prior to the events at issue in this case, to the extent that any such complaints exist.

Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 15:** All documents relating to any investigation by the District of Columbia

Office of Human Rights or any other government agency concerning alleged discrimination at or

related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein. Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws. Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

6

demand letters alleging "racial profiling" related to the 14th Street Borders store. Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 16:** All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney demand letters alleging "racial profiling" related to the 14th Street Borders store. Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist. Borders reserves the right to supplement and/or modify this Response when and if necessary.

7

**REQUEST NO. 18:**  All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders will make available for inspection and copying all responsive, non-privileged documents in its possession, custody, or control.

**REQUEST NO. 20:**  All documents related to any allegation, claim or defense asserted in your Answer.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Subject to and without waiving these objections, Borders states that it is not withholding any responsive, non-privileged documents to this request.

Dated: August 7, 2008                    Respectfully submitted,

                                   _____/s/_____
                                   Craig A. Thompson (Bar No. 500168)
                                   Robert L. Wilkins (Bar No. 429065)
                                   Venable LLP
                                   575 7th Street, NW
                                   Washington, D.C. 20004
                                   (202) 344-4058

                                   *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of August, 2008, a copy of Defendant Borders,

Inc.'s First Supplemental Responses to Plaintiff's First Set of Requests for Production of

Documents was sent via electronic mail to:

> John P. Relman
> Glenn Schlactus
> Relman & Dane PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, D.C. 20036
> (202) 728-1888 (o)
> (2020) 728-0848 (fax)
>
> *Attorneys for Plaintiff*

_____/s/_____
Craig A. Thompson

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*         \*         \*         \*         \*         \*         \*

## DEFENDANT BORDERS GROUP, INC.'S
## FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF'S
## <u>FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and

through undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of

Requests for Production of Documents to Defendant Borders, Inc. Borders incorporates by

reference each of the General Objections and Specific objections set forth in its Objections and

Responses to Plaintiff's First Request for Production of Documents served on June 23, 2008.

Subject to the above objections, Borders supplements its responses as follows:

**REQUEST NO. 1:** All documents related to Ronald Newman.

**RESPONSE:**

Borders states that it has produced all relevant, non-privileged documents responsive to

this Request. Borders reserves the right to supplement and/or modify this Response when and if

necessary.

**REQUEST NO. 3:**  All documents related to Pat Spurlock.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 4:**  All documents related to Darlene White.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Borders states that it has produced all relevant, non-privileged documents responsive to this Request.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 5:**  The complete personnel files of all persons who were on duty at the 14th Street Borders on December 2, 2005, between 4 P.M. and closing.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

2

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Subject to and without waiving these objections, Borders refers to the meet and confer

telephone conference between counsel for the parties on July 28, 2008, and states that it has

produced all relevant, non-privileged documents responsive to this Request. Borders reserves

the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 6:**  All records related to security at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to surveillance recordings, logs, and memoranda.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein. Borders states that it has produced all relevant, non-privileged documents responsive to

this Request. Borders reserves the right to supplement and/or modify this Response when and if

necessary.

**REQUEST NO. 7:**  Documents sufficient to identify every person who shopped at the 14th Street Borders on December 2, 2005, after 4 P.M., including but not limited to credit card records and Borders Rewards records.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein. Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws.

**REQUEST NO. 8:**  All documents related to any oral or written, formal or informal complaint about, or report of improper conduct by, Pat Spurlock, Darlene White, or any other person who was on duty at the 14th Street Borders on December 2, 2005, after 4 P.M.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence.  Subject to and without waiving these objections, Borders refers to the meet and confer

telephone conference between counsel for the parties on July 28, 2008, and states that it has

produced all relevant, non-privileged documents responsive to this Request.  Borders reserves

the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 9:**  All documents related to surveys or interviews of people who shopped at the 14th Street Borders on December 2, 2005.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein.  Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence.  Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws and consumer protection and/or customer

privacy laws.  Subject to and without waiving these objections, Borders states that there were no

surveys or interviews submitted of customers who shopped at the 14th Street Borders on

December 2, 2005.  Borders reserves the right to supplement and/or modify this Response when

and if necessary.

4

BA2DOCS1/348069

**REQUEST NO. 10:** All documents related to policies and procedures applicable on December 2, 2005, to the 14th Street Borders, including but not limited to policies and procedures related to security, shoplifting, customer relations, or discrimination.

**RESPONSE:**

Plaintiff has agreed to narrow this request by seeking all documents related to policies

and procedures specifically concerning security, shoplifting, customer relations, or

discrimination applicable to the 14th Street Borders on December 2, 2005. Borders hereby

incorporates and restates its general and specific objections described above as if fully set forth

herein. Subject to and without waiving these objections, Borders states that it has produced all

relevant, non-privileged documents responsive to this Request. Borders reserves the right to

supplement and/or modify this Response when and if necessary.

**REQUEST NO. 11:** All documents related to any training, guidance, or instructions concerning security, shoplifting, customer relations, or discrimination conducted for or made available to persons who work or worked at the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein. Subject to and without waiving these objections, Borders states

that it has produced all relevant, non-privileged documents responsive to this Request. Borders

reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 14:** All documents related to allegations of discrimination based on events taking place in whole or in part at, or related to, any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein. Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

5

evidence. Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws. Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

demand letters alleging "racial profiling" related to the 14th Street Borders store. Borders

further states that it will produce all relevant, non-privileged documents in its possession that

relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable

time period prior to the events at issue in this case, to the extent that any such complaints exist.

Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 15:** All documents relating to any investigation by the District of Columbia

Office of Human Rights or any other government agency concerning alleged discrimination at or

related to any Borders bookstore in Washington, D.C.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein. Borders further objects to this Request on the grounds that it is

overbroad, unduly burdensome, harassing, and seeks information that is neither relevant to the

claims or defenses of any party nor reasonably calculated to lead to the discovery of admissible

evidence. Borders also objects to this Request to the extent it calls for information protected

from disclosure by any and all relevant privacy laws, Borders' customer privacy policies, and

consumer protection and/or customer privacy laws. Subject to and without waiving these

objections, Borders refers to the meet and confer telephone conference between counsel for the

parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney

6

demand letters alleging "racial profiling" related to the 14th Street Borders store. Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist. Borders reserves the right to supplement and/or modify this Response when and if necessary.

**REQUEST NO. 16:** All documents related to any allegation of racial profiling of any person in a Borders bookstore.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and states that there have been no lawsuits, agency charges, or attorney demand letters alleging "racial profiling" related to the 14th Street Borders store. Borders further states that it will produce all relevant, non-privileged documents in its possession that relate to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist. Borders reserves the right to supplement and/or modify this Response when and if necessary.

7

**REQUEST NO. 18:**  All insurance and indemnity agreements under which an insurer or guarantor may be liable to satisfy part or all of a judgment which may be entered in this action, or to indemnify or reimburse for payments made to satisfy such judgment, or to indemnify or reimburse for payments made for defending this action.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Subject to and without waiving these objections, Borders will make available for

inspection and copying all responsive, non-privileged documents in its possession, custody, or

control.

**REQUEST NO. 20:**  All documents related to any allegation, claim or defense asserted in your

Answer.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein.  Subject to and without waiving these objections, Borders states that it is not withholding

any responsive, non-privileged documents to this request.


Dated: August 7, 2008                    Respectfully submitted,


_____/s/_____
Craig A. Thompson (Bar No. 500168)
Robert L. Wilkins (Bar No. 429065)
Venable LLP
575 7th Street, NW
Washington, D.C. 20004
(202) 344-4058

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of August, 2008, a copy of Defendant Borders

Group, Inc.'s First Supplemental Responses to Plaintiff's First Set of Requests for Production of

Documents was sent via electronic mail to:

> John P. Relman
> Glenn Schlactus
> Relman & Dane PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, D.C. 20036
> (202) 728-1888 (o)
> (2020) 728-0848 (fax)
>
> *Attorneys for Plaintiff*

_____/s/_____
Craig A. Thompson

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| v. | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*        \*        \*        \*        \*        \*        \*

### DEFENDANT BORDERS, INC.'S FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Now comes Defendant, Borders, Inc. (hereinafter "Borders"), by and through undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of Interrogatories to Defendant Borders, Inc. Borders incorporates by reference each of the General Objections and Specific objections set forth in its Objections and Responses to Plaintiff's First Set of Interrogatories served on June 23, 2008. Subject to the above objections, Borders supplements its responses as follows:

**INTERROGATORY NO. 2:** State whether any allegation of racial profiling, whether written or oral, has ever been submitted against you or regarding any property owned or managed by you, whether to a local, state, or federal court or agency, or directly to you. Provide all information relating to any such allegation, including but not limited to, the identity of the person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the substance of the allegation, to whom the allegation was made, and the resolution of the allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described above as if fully set forth herein. Subject to and without waiving these objections, Borders refers

to the meet and confer telephone conference between counsel for the parties on July 28, 2008, states that there have been no lawsuits, agency charges, or attorney demand letters alleging "racial profiling" related to the 14th Street Borders store.  Borders further states that it will provide all information in its possession related to any complaints of "racial profiling" at the 14th Street Borders store within a reasonable time period prior to the events at issue in this case, to the extent that any such complaints exist.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

**INTERROGATORY NO. 3:**  Identify and provide the position, title, dates of employment and job responsibilities of every person who works or worked at, or has or had managerial responsibilities for, the 14th Street Borders.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein.  Borders further objects to this Interrogatory because it is vague, ambiguous, overbroad and unduly burdensome.  Subject to and without waiving these objections, Borders refers to the meet and confer telephone conference between counsel for the parties on July 28, 2008, and refers Plaintiff to the document(s) produced with Borders' Supplemental Responses to Plaintiff's First Set of Requests for Documents sufficient to identify every person who worked at or had managerial responsibilities for the 14th Street Borders store on December 2, 2005, after 4PM. Borders reserves the right to supplement and/or modify this Response when and if necessary.

2

**INTERROGATORY NO. 5:**  Identify all persons who assisted in preparing the answers to these interrogatories or provided information contained in the answers and state his or her title, duties, role in preparing the answers, and the interrogatory response(s) to which he or she provided information or assistance.  This identification should also indicate whether the information provided is within his or her knowledge or was obtained from some other person or source; if the information was obtained from another person or source, that person or source should also be identified.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth herein and states the Verification attached to Borders' Objection and Responses to Plaintiff's First Set of Interrogatories identifies all persons who assisted in preparing the answers to these Interrogatories.  Borders further states that it will identify all custodians of record who provided information contained in Borders' answers to these Interrogatories.  Borders reserves the right to supplement and/or modify this Response when and if necessary.

Dated: August 12, 2008                    Respectfully submitted,


                                    _____/s/_____
                                    Craig A. Thompson (Bar No. 500168)
                                    Robert L. Wilkins (Bar No. 429065)
                                    Venable LLP
                                    575 7th Street, NW
                                    Washington, D.C. 20004
                                    (202) 344-4058

                                    *Attorneys for Defendants*

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2008, a copy of Defendant

Borders, Inc.'s First Supplemental Responses to Plaintiff's First Set of Interrogatories was sent

via electronic mail to:

>John P. Relman
>Glenn Schlactus
>Relman & Dane PLLC
>1225 19th Street, N.W.
>Suite 600
>Washington, D.C. 20036
>(202) 728-1888 (o)
>(2020) 728-0848 (fax)
>
>*Attorneys for Plaintiff*

_____/s/_____
Craig A. Thompson

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*        \*        \*        \*        \*        \*        \*

**DEFENDANT BORDERS GROUP, INC.'S
FIRST SUPPLEMENTAL RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Now comes Defendant, Borders Group, Inc. (hereinafter "Borders"), by and through

undersigned counsel, submit its First Supplemental Responses to Plaintiff's First Set of

Interrogatories to Defendant Borders Group, Inc.  Borders incorporates by reference each of the

General Objections and Specific objections set forth in its Objections and Responses to

Plaintiff's First Set of Interrogatories served on June 23, 2008.  Subject to the above objections,

Borders supplements its responses as follows:

**INTERROGATORY NO. 1:** State whether any allegation of racial profiling, whether written
or oral, has ever been submitted against you or regarding any property owned or managed by
you, whether to a local, state, or federal court or agency, or directly to you.  Provide all
information relating to any such allegation, including but not limited to, the identity of the
person(s) making the allegation, the dates of the allegation and the alleged racial profiling, the
substance of the allegation, to whom the allegation was made, and the resolution of the
allegation, and identify all documents relating to each such allegation.

**RESPONSE:**

Borders hereby incorporates and restates its general and specific objections described

above as if fully set forth herein.  Subject to and without waiving these objections, Borders refers

to the meet and confer telephone conference between counsel for the parties on July 28, 2008,

states that there have been no lawsuits, agency charges, or attorney demand letters alleging

"racial profiling" related to the 14th Street Borders store.  Borders further states that it will

provide all information in its possession related to any complaints of "racial profiling" at the

14th Street Borders store within a reasonable time period prior to the events at issue in this case,

to the extent that any such complaints exist.  Borders reserves the right to supplement and/or

modify this Response when and if necessary.

**INTERROGATORY NO. 3:**  Identify all persons who assisted in preparing the answers to
these interrogatories or provided information contained in the answers and state his or her title,
duties, role in preparing the answers, and the interrogatory response(s) to which he or she
provided information or assistance.  This identification should also indicate whether the
information provided is within his or her knowledge or was obtained from some other person or
source; if the information was obtained from another person or source, that person or source
should also be identified.

**RESPONSE:**

Borders hereby incorporates its general objections described above as if fully set forth

herein and states the Verification attached to Borders' Objection and Responses to Plaintiff's

First Set of Interrogatories identifies all persons who assisted in preparing the answers to these

Interrogatories.  Borders further states that it will identify all custodians of record who provided

information contained in Borders' answers to these Interrogatories.  Borders reserves the right to

supplement and/or modify this Response when and if necessary.

2

Dated: August 12, 2008          Respectfully submitted,


                     /s/
               Craig A. Thompson (Bar No. 500168)
               Robert L. Wilkins (Bar No. 429065)
               Venable LLP
               575 7th Street, NW
               Washington, D.C. 20004
               (202) 344-4058

               *Attorneys for Defendants*

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2008, a copy of Defendant

Borders Group, Inc.'s First Supplemental Responses to Plaintiff's First Set of Interrogatories was

sent via electronic mail and first class mail, postage prepaid, to:

> John P. Relman
> Glenn Schlactus
> Relman & Dane PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, D.C. 20036
> (202) 728-1888 (o)
> (2020) 728-0848 (fax)
>
> *Attorneys for Plaintiff*

_____/s/_____
Craig A. Thompson

4

# EXHIBIT H

# VENABLE LLP

Craig A. Thompson

t 410.244.7605
f 410.244.7742
cathompson@venable.com

**VIA EMAIL**

August 12, 2008

John P. Relman
Glenn Schlactus
Relman & Dane PLLC
1225 19th Street, N.W.
Suite 600
Washington, D.C.

Re:    *Ronald Newman v. Borders, Inc., et al.*

Dear Counsel:

On August 8, 2008, Borders produced additional documents, BI000170 through BI000184, responsive to plaintiff's Document Request No. 10 seeking all documents related to policies and procedures on security (Loss Prevention), customer relations, and discrimination. Borders produced the portions of the documents that are responsive to plaintiff's request and redacted only those portions that contain non-responsive information. Borders further states that it is not objecting to this request on the basis of relevance or privilege and is not withholding any documents or information responsive to this request.

Should you need further clarification regarding the foregoing, please feel free to contact me.

Very truly yours,

Craig A. Thompson

cc:    Robert L. Wilkins, Esq.
       Tina H. Saunders, Esq.

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ronald Newman                          *

    Plaintiff,                         *

v.                                     *       CASE #: 1:07-cv-00492-RWR

Borders, Inc., et al.,                 *

    Defendants.                        *

\*         \*         \*         \*         \*         \*         \*

## DECLARATION OF TINA SAUNDERS IN SUPPORT OF DEFENDANT BORDERS, INC. AND BORDERS GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

I, Tina Saunders, declare under penalty of perjury that the following statements are true and correct. Except as indicated otherwise, all statements herein are based upon my personal knowledge, information, and belief.

1.    I am over eighteen years old and am competent to testify to the matters herein.

2.    I make this Declaration in support of Borders, Inc. and Borders Group, Inc.'s (collectively "Borders") Opposition to Plaintiff's Motion to Compel Discovery Responses.

3.    I am an associate attorney at Venable LLP and I serve as co-counsel on behalf of the defendants Borders in this matter.

4.    On August 7, 2008, Borders served their First Set of Supplemental Responses to Plaintiff's Request for Production of Documents.

5.    On August 11, 2008, Borders produced ninety-six pages of additional documents to Plaintiff.

6.    On August 12, 2008, Borders served their First Set of Supplemental Responses to Plaintiff's Interrogatories. That same day, I received a telephone call from counsel for Plaintiff, Glenn Schlactus. During that conversation, Mr. Schlactus offered revisions to a draft stipulated protective order that I previously sent to him on August 1, 2008. Counsel for the parties reached an agreement regarding changes to the protective order. Mr. Schlactus then inquired whether Borders would produce any additional documents without specifying the categories of documents or document requests to which he was referring. I offered to produce a document that showed the hourly sales data for the 14th Street Borders store on December 2, 2005. Mr. Schlactus refused the offer and stated that the information was not responsive. I told Mr. Schlactus that Borders would continue to supplement its responses and provide documents to the extent that any such documents existed. Mr. Schlactus replied that he was not interested in supplemental documents. I reiterated that Borders would satisfy its obligation to provide supplemental documents to Plaintiff's discovery requests.

7.    The next day, on August 13, 2008, Plaintiff filed his Motion to Compel Discovery Responses.

8.    Plaintiff never expressed any dissatisfaction with Borders' supplemental responses. Nor did Plaintiff redefine or limit the scope of his discovery requests prior to the filing of his motion.

9.    It was not until the filing of Plaintiff's motion that he narrowed the scope of his discovery requests.

11.    Borders has not had any opportunity to respond to Plaintiff's redefined discovery requests. The parties have not conferred about Borders' supplemental responses or additional documents produced.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2008

Tina Saunders

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Ronald Newman** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CASE #: 1:07-cv-00492-RWR** |
| **Borders, Inc., et al.,** | * | |
| **Defendants.** | * | |

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

## DECLARATION OF DEPRIEST DOCKINS IN SUPPORT OF DEFENDANT BORDERS, INC. AND BORDERS GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

I, DePriest Dockins, declare under penalty of perjury that the following statements are true and correct. Except as indicated otherwise, all statements herein are based upon my personal knowledge, information, and belief.

1.　　　I am over eighteen years old and am competent to testify to the matters herein.

2.　　　I make this Declaration in support of Borders, Inc. and Borders Group, Inc.'s (collectively "Borders") Opposition to Plaintiff's Motion to Compel Discovery Responses.

3.　　　I am employed by Borders, Inc. and am the Associate Director for Business Intelligence. I am responsible for overseeing the planning, deployment, and maintenance of Borders' data warehouses and reporting systems.

4.　　　Borders maintains a data warehouse that is the source of historical transaction data, such as the company's point-of-sale systems.

5.    From the data maintained in the data warehouse, Borders can compile the number of transactions and total dollar amount of sales by the hour on December 2, 2005. Each transaction can further be broken down by tender type—cash, check, electronic gift card, and credit card.

6.    However, Borders does not maintain complete customer information because the information is not captured at the point-of-sale or when the transaction occurs. Thus, Borders has no way to obtain any customer information from purchases made by cash, check, or electronic gift card on December 2, 2005. This is because no identifying customer information is captured at the point-of-sale related to transactions of this type.

7.    The only form of payment in which Borders may possibly retrieve identifying information is through any credit card transactions made on December 2, 2005. Borders maintains masked credit card information, specifically the first six and last four digits of each credit card transaction. The masked credit card data does not contain any identifying cardholder information. In order to derive this information, Borders would have to subpoena each credit card company to match the masked credit card data to their respective cardholder databases to the extent the information is available. Because the masked data does not reveal the entire credit card number, any cardholder information obtained would be subject to potentially incorrect and duplicate matches. In the event that Borders receives the requested cardholder information from the credit card companies, Borders would then need to compare the information to each individual transaction for accuracy to avoid identifying the wrong cardholder and customers.

8.    I conducted a search for all retail sales transactions that occurred on December 2, 2005, between 4:00 P.M. through 9:12 P.M. (the last transaction of that day). The search revealed that 774 line-item transactions occurred during this time-period. Borders would have to

2

identify each transaction by tender type to isolate the credit card transactions. Borders would then have to retrieve the masked credit card information for each transaction and subpoena the credit card companies to provide the cardholder information to the extent that those companies maintain customer data dating back to 2005.

9.    It would require an extraordinary amount of time and expense to gather transactional data sufficient to identify customers who purchased merchandise by credit card only at the 14th Street Borders in Washington, D.C. on December 2, 2005. It will be impossible to identify every customer who shopped at the 14th Street Borders in Washington, D.C. on December 2, 2005, between 4PM and the store's closing, and no system has existed or currently exists for identifying customers who purchased merchandise with a tender type other than a credit card.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August **25**, 2008

DePriest Dockins

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Ronald Newman,**                              *

      **Plaintiff**                              *

 **Vs.**                                        *        **CASE #: 1:07-cv-00492-RWR**


**Borders, Inc., et al.,**                        *

      **Defendants**                           *

\*            \*            \*            \*            \*            \*

## <u>ORDER</u>

      Upon due consideration of Plaintiff's Motion to Compel Discovery Responses

and Defendants, Borders, Inc. and Borders Group, Inc.'s Opposition thereto, and any

hearing on the matter, it is this _____ day of _____ hereby

      **ORDERED** that Plaintiff's Motion to Compel Discovery Responses is hereby

**DENIED**; and it is further

      **ORDERED** that Defendants are awarded reasonable expenses incurred in

opposing the Motion to Compel, including attorney's fees.


                                  _____

                                  JUDGE
                                  United States District Court for the
                                  District of Columbia