IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RONALD NEWMAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:07-cv-0492-RWR |
| BORDERS, INC. | ) ) ) | |
| and | ) ) | |
| BORDERS GROUP, INC., | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF RONALD NEWMAN'S REPLY BRIEF IN
SUPPORT OF HIS MOTION TO COMPEL DISCOVERY RESPONSES**

Defendants' brief in opposition to Plaintiff Ronald Newman's motion to compel sets forth a myriad of misrepresentations regarding Plaintiff's efforts to resolve this discovery dispute without court intervention and regarding the scope of Plaintiff's discovery requests. These misrepresentations fail to hide the central deficiency in Defendants' brief – the absence of any valid basis for refusing to provide the discovery at issue.

**I.  PLAINTIFF MORE THAN SATISFIED HIS OBLIGATION TO CONFER IN GOOD FAITH WITH DEFENSE COUNSEL**

Defendants claim that they never had a chance to respond to the discovery requests that are the subject of the instant motion. *See, e.g.*, Defs.' Opp. to Pl.'s Mot. to Compel Discovery Responses (Aug. 25, 2008) (Doc. 24) ("Opp.") at 4 ("Borders has not had any opportunity to respond to these newly minted requests"); *id.* at 2 (motion is "premature"). That is patently false. Every piece of discovery at issue in the motion was requested in Plaintiff's discovery requests served on May 23, 2008. Plaintiff explained to Defendants why their responses were

deficient in letters on July 3 and July 29 and in meet and confer telephone conversations. *See* Pl.'s Mot. to Compel Discovery Responses (Aug. 13, 2008) (Doc. 20) ("Mot. to Compel") at 7 & Exs. 12, 13. Through that process, Plaintiff narrowed some requests and Defendants agreed to produce certain discovery materials that they had initially refused to produce. As a result, Plaintiff's motion addresses fewer issues than were addressed in his July 3 letter that commenced the meet and confer process. *Compare* Mot. to Compel *with id.* Ex. 12.

The meet and confer process engaged in by Plaintiff also revealed the clear limits of Defendants' willingness to reconsider their initial objections. Defendants' positions were made plain in a lengthy telephone conversation on July 28, 2008, and in Defendants' follow-up letter of August 1, 2008. *See* Opp. at Ex. D; Mot. to Compel at Ex. 13. Plaintiff's dissatisfaction with these positions was equally plain, *see, e.g.*, Mot. to Compel at Ex. 13, and it was apparent that a motion to compel would be necessary, as the parties discussed on multiple occasions. Indeed, Defendants told the Court in a joint motion even before the July 28 telephonic meeting that they believed it was unlikely that a motion to compel would be averted. *See* Joint Mot. to Extend Discovery & Modify Scheduling Order (July 23, 2008) (Doc. 18). Moreover, two days before Plaintiff filed the motion to compel, Defendants reconfirmed their unwillingness to produce the discovery that is at issue here. *See* Mot. to Compel at 7. They also renewed their objections in writing on August 7 and August 12. *See id.* at Exs. 14-15, 21-22. With respect to discovery that Defendants said was forthcoming, Plaintiff did not move to compel.

Defendants' contention that undersigned counsel refused to accept responsive materials that are the subject of this motion (or any other responsive materials) is simply untrue. *See* Opp. at 4-5; *id.* at Ex. I (Decl. of T. Saunders, counsel to Defendants). In a telephone call with undersigned counsel shortly before the motion to compel was filed, Ms. Saunders did offer to

provide dollar figures reflecting the hourly gross sales volume of the 14th Street Borders on the evening of the events at issue. Undersigned counsel confirmed that the data did not include any information from which Plaintiff could identify people who were shopping in the store that evening and was therefore not responsive to any discovery request. In the same call, undersigned counsel explicitly asked Saunders if Defendants intended to produce any additional discovery materials (apart from limited materials that are not the subject of this motion, such as job descriptions). Saunders' response was merely to reference the ongoing duty that all parties have under Federal Rule of Civil Procedure 26(e) to supplement their discovery responses throughout a case. When pressed as to whether Defendants currently intended to provide any supplementary discovery, Saunders clearly said no. The notion that undersigned counsel "replied that he was not interested in supplemental documents," Opp., Ex. I at 3, is both false and nonsensical. Plaintiff did not refuse proffered discovery one day and move to compel its production the next.

The discussion above demonstrates that the purpose of the meet and confer requirement – "to encourage informal resolution of [] disputes, or at least to reduce or narrow the issues the Court will consider" – was plainly satisfied between July 3, when Plaintiff sent Defendants his initial deficiency letter, and August 13, when the motion was filed. *United States v. Diabetes Treatment Ctrs. of America, Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006). Indeed, the fact that no more progress could be made informally is further demonstrated by Defendants' opposition brief, in which they do not back away from any of the positions they set forth before the motion was filed.

Moreover, each of the cases Defendants rely on in this part of their brief is entirely inapposite. *See id.* at 529-30 (last effort to confer was three years before motion was filed);

*Campbell v. Microsoft Corp.*, No. 04-2060-RWR-AK, 2006 WL 463263, at *1, 3 (D.D.C. Feb. 24, 2006) (movant ignored "repeated requests . . . to confer about the [] discovery disputes" and movant's communications with defendant were "acrimonious and not in a spirit of cooperation"); *Alexander v. FBI*, 186 F.R.D. 185, 186-87 (D.D.C. 1999) (plaintiffs suspended deposition and then moved to compel further testimony without making any effort to confer to narrow the issues in dispute).

As stated in his opening brief, Plaintiff satisfied his obligation to confer in good faith with Defendants before filing this motion to compel.

## II.     THE DISCOVERY AT ISSUE

### A.     Documents Regarding Darlene White and Pat Spurlock

Defendants have refused to produce more than six pages of documents about White and Spurlock, other than a few pages created by defense counsel. *See* Mot. to Compel at 8-9 & Ex. 2, 19. Their rationale is fully refuted in Plaintiff's opening brief, *see id.* at 13-15, but two points bear noting in response to the opposition brief.

First, while Plaintiff requests all documents related to these two individuals, Plaintiff has repeatedly made clear that he will exclude plainly irrelevant documents that the parties can jointly identify. *See id.* at 8. Defendants have not demonstrated any interest in discussing this.

Second, Defendants incorrectly describe the holding of *Bregman v. District of Columbia*, 182 F.R.D. 352 (D.D.C. 1998) (Facciola, Mag.). Defendants contend that the employer was only compelled to produce a police officer's personnel file (though Defendants here refuse to produce even this), *see* Opp. at 7, but in fact the employer was ordered to produce the officer's personnel, disciplinary, and training files, arrest record, and "any other files on [the] officer maintained by the [employer]," *Bregman*, 182 F.R.D. at 356-59.

**B.     Robert Fath's Personnel File**

As with White and Spurlock, Defendants repeat the same arguments they made during the course of meet and confer with respect to the personnel file of Robert Fath, and those arguments are refuted in Plaintiff's opening brief. *See* Mot. to Compel at 9, 15-16.

We add here only that, in two ways, Defendants misrepresent Plaintiff's explanation of why these documents are discoverable. First, Defendants omit the fact that their own documents indicate that Fath was the only person who observed White and Spurlock watching the videotape that White claimed was incriminating. *See id.* Ex. 2 at BI000002. Defendants seek to minimize Fath's role, but it appears at this juncture that he may be a very important witness. More liberal discovery of documents related to him than of others who observed the events from a greater distance and did not participate in them is, therefore, appropriate. Second, Plaintiff is not "fishing" for "additional theories of liability" by requesting these documents, Opp. at 9, and nothing suggests otherwise.

**C.     Documents Regarding Other Borders Personnel On Duty
at the 14th Street Borders the Evening of the Events At Issue[1]**

Defendants' entire argument here is in opposition to a straw man. They claim that Plaintiff seeks "the entire personnel file of all employees on duty . . . ." Opp. at 10 (emphasis in original). But in fact, Plaintiff narrowed the relevant requests on July 3 to the following: "any documents from these employees' personnel file suggesting in any way that they ever acted dishonestly, gave an untruthful statement, or engaged in discriminatory or retaliatory behavior."

---

[1]     Documents created by defense counsel for purposes of discovery and produced on August 27 indicate that only two employees other than Spurlock, White and Fath were on duty during this time. Those employees are John O. Robles (Manager of Operations; aka Phoenix Robles) and Kimberly Stevens (Inventory Process Team). White's Incident Report lists Stevens as an "[a]dditional [w]itness." *See* Mot. to Compel, Ex. 2 at BI000001. Fath's Incident Report states that Robles responded to the police when they arrived (which was after Spurlock had instructed Plaintiff to leave the store). *See id.* at BI000002.

*See* Mot. to Compel at 10; *id.* Ex. 12 at 3.[2]  This is precisely the scope of production compelled with respect to similarly situated employees in *Waters v. United States Capitol Police Board*, 216 F.R.D. 153, 164 (D.D.C. 2003) (Facciola, Mag.).

Plaintiff also notes that Defendants' statement they have "produced those parts of the personnel files of employees that are relevant to Plaintiff's claims," Opp. at 11, is, at best, misleading.  The only documents produced that appear to have come from personnel files are the six pages noted above.  *See* Mot. to Compel at Ex. 2 (incident reports completed by White and Fath, e-mail about incident by Spurlock, and write-up of White criticizing her performance during incident).  Defendants' statement further demonstrates their exceedingly narrow definition of relevance.

### D.     Documents Regarding the Identification of Other Witnesses

Here, Defendants offer for the first time a basis for objecting to this document request that, if true, may be valid.  Defendants state that they do not have control over these documents and would have to subpoena them, a basis for objecting that Defendants never made in their written responses to Plaintiff's discovery requests or during the course of meet and confer.  Plaintiff will therefore withdraw this element of his motion to compel, but reserves the right to renew it if he obtains evidence through discovery or otherwise that the declaration submitted by Defendants on this point is not true.[3]

### E.     Security Records Regarding the Evening of December 2, 2005

Defendants' opposition with respect to these records is another example of their refusal to provide straightforward responses to Plaintiff's discovery requests.  *See, e.g.*, Mot. to Compel at 20 (section G).  They now say, simultaneously, that they have produced all responsive

---

[2]     Plaintiff's opening brief mistakenly cites to page two of this exhibit.

[3]     Plaintiff does not concede that there is any validity to Defendants' other arguments here.

documents and that they are still looking for responsive documents. *See* Opp. at 14. If their search is ongoing, Defendants cannot make the former statement with any confidence. Defendants' failure to address in their opposition the security records that strongly suggest they have not produced other responsive documents casts further doubt on the former statement. *See* Mot. to Compel at 11, 17-18.

As importantly, Borders is not entitled to avail itself of as much time as it wants to conduct a diligent search for discoverable documents. The Federal Rules provide thirty days, and Plaintiff's document requests were served more than three months ago. *See* Fed. R. Civ. P. 34(b)(2)(A). It is highly prejudicial for Borders to unilaterally reserve for itself as much time as it chooses to search for documents.[4]

### F. Documents and Interrogatories Regarding Other Incidents of Racial Profiling and Other Forms of Discrimination

#### 1. Racial Profiling

Defendants' opposition with respect to other incidents of racial profiling is deeply flawed for several reasons. First, Plaintiff has never requested such discovery "over an infinite amount of time." Opp. at 18; *see id.* at 15. To the contrary, these requests have always been limited to the period from January 1, 2004, to the present. *See* Mot. to Compel, Ex. 4 at 2, Ex. 5 at 2. This is a proper time period, as shown in Plaintiff's opening brief. *See id.* at 20. Defendants' proposed two-year period is overly restrictive. *See, e.g.*, *Marshall v. District of Columbia Water & Sewage Auth.*, 214 F.R.D. 23, 26 (D.D.C. 2003) (Facciola, Mag.) (ordering production of "documents that relate or pertain to the EEO investigation of racial discrimination filed against

---

[4] We also note that Defendants' reference to their August 12 letter to Plaintiff does not support their opposition. *See* Opp. at Ex. H. The letter was written – at the specific request of undersigned counsel for Plaintiff – to address the substantial and unexplained redactions that Borders had made to a manual that they produced the previous week. The letter addressed that particular manual, not Defendants' responses to Plaintiff's document requests *in toto*.

[defendant] during" five year period).

Second, Defendants contend that they did not have the opportunity to respond to the requests with respect to the managerial district that includes the 14th Street Borders, as opposed to a broader geographical scope. *See* Opp. at 15. As demonstrated above, that is entirely false. *See supra* § I. Defendants' position that they need not provide discovery regarding racial profiling at any store other than the 14th Street Borders was made explicit in the parties' July 28 telephonic meeting, and it was repeated several times between that meeting and the date the instant motion was filed. *See, e.g.*, *id.* Ex. E at 1; Mot. to Compel, Ex. 13 at 3-4 (section 6), Ex. 14 at 7 (response 16). Defendants' continued assertion of this position in their brief demonstrates that the parties had achieved as much as possible through meet and confer. Moreover, this is not a proper basis for withholding discovery. *See* Fed. R. Civ. P. 33(b)(3), 34(b)(2)(C).

Third, Defendants assert that Plaintiff "now seeks to expand his requests to include other forms of racial discrimination." Opp. at 16. This is simply wrong. Plaintiff has sought discovery regarding forms of discrimination other than profiling at Defendants' three Washington stores from the start, *see* Mot. to Compel, Ex. 4 at 9 (requests 14-15), Ex. 5 at 9 (requests 14-15), and has never expanded the relevant requests to encompass any other stores, *see* Mot. to Compel at 19 & Proposed Order (¶ 7). Indeed, Defendants' own opposition brief so demonstrates. *See* Opp. at 18.

Moreover, Defendants' reliance on *Denham v. Saks, Inc.*, No. 07-C-694, 2008 WL 2952308 (N.D. Ill. July 30, 2008), in its argument about other forms of discrimination is entirely misplaced. That decision had nothing to do with discovery. Rather, the court merely held (on summary judgment) that one element of a retaliation claim under Title VII is that the plaintiff

must have opposed a practice that is prohibited by Title VII, and that, as a matter of law, opposing discrimination by a store against its customers does not satisfy this element. *See id.* at *6-7. *Denham* has nothing to do with the discoverability of information that may show, *inter alia*, discriminatory intent.

Fourth, relying solely on decisions in other cases, Defendants assert that discovery of other incidents of racial profiling may only be had with respect to the 14th Street Borders, and not at other stores within the same managerial district. *See* Opp. at 17-18. Whether or not that is the usual rule, Plaintiff explained in his opening brief why it does not apply based on the evidence presented here. *See* Mot. to Compel at 19. Defendants do not even acknowledge, must less attempt to refute, this evidence and its significance.

### 2.      Other Forms of Discrimination

Defendants would have the court believe that Plaintiff's motion is much broader than it is with respect to discovery of incidents of discrimination other than profiling. *See* Opp. at 19. Plaintiff has moved to compel the production of information about such incidents involving race, color, and national origin. *See* Mot. to Compel at 18-19 & Proposed Order (¶ 7); *see also Waters*, 216 F.R.D. at 161 & n.7 (rejecting argument that there is "a distinction between racial discrimination and discrimination on the basis of color and national origin" that is relevant to discovery). Three of the five cases cited by Defendants here are, accordingly, entirely inapposite. *See Marshall*, 214 F.R.D. at 25 (case about race; plaintiff sought discovery regarding gender and age); *White v. United States Catholic Conference*, No. 97-1253, 1998 WL 429842, at *5-6 (May 22, 1998) (Facciola, J.) (case about disability; plaintiff sought discovery regarding race, gender, religion, and national origin); *Rauh v. Coyne*, 744 F. Supp. 1181, 1183 (D.D.C. 1990) (case about sex and marital status; defendant moved to exclude evidence regarding race).

In Defendants' fourth case, a former employee of Amtrak's Office of Workplace Development, a component of its Human Resources Department, successfully moved to compel the production of any other complaints of discrimination by other Human Resources employees. *See Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 456, 459-60 (D.D.C. 2002) (Facciola, Mag.). The case also refutes Defendants' contention that forms of discrimination other than profiling are not subject to discovery. The plaintiff alleged discriminatory termination, but the Court rejected the contention that hiring data was not discoverable. *See id.* at 458-59 ("surely human experience teaches that a person who is improperly motivated in her decisions to fire people is equally likely to be improperly motivated in her decisions to hire people").

Defendants' fifth case involved discrimination on the basis of race and sex, and plaintiff sought and was granted discovery regarding other race and sex discrimination complaints. *See Childers v. Slater*, No. 97-853, 1998 WL 429849, at *4-5 (D.D.C. May 15, 1998) (Facciola, Mag.). Though not permitting discovery of such complaints regarding the entirety of the headquarters of the Federal Aviation Administration (a multi-billion dollar agency), the Court ordered such discovery regarding multiple divisions, not just the one in which the plaintiff worked. *See id.* at *5. This supports the limited geographical scope set forth in the instant motion (*i.e.*, the managerial district with respect to other incidents of profiling, and the three Washington stores with respect to other forms of discrimination such as employment discrimination).

      G.    **Defendants' Failure to State Whether They Are Withholding Documents Based on Their Objections**

Defendants continue to obfuscate with respect to the eleven occasions on which they state, in their written responses to Plaintiff's document requests, that they have "produced all

relevant, non-privileged documents responsive to" a particular request. *See* Mot. to Compel, Exs. 14, 15 at Responses 1, 3-6, 8, 10, 11, 14-16 (emphasis added). Borders now states that "it is not withholding [on the basis of relevance] documents that it agreed to produce . . . ." Opp. at 20. That is not the issue, however. The issue is whether Defendants are withholding, on the basis of their overly narrow definition of relevance, any documents that they have not agreed to produce. The fact that Defendants still will not address this issue in a straightforward manner with respect to these eleven document requests strongly suggests that Defendants are, in fact, withholding documents on this improper basis.

Moreover, Defendants inserted this phrase into their written responses for the first time on August 7. *Compare id.* (August 7 supplemental responses) *with id.* Exs. 8, 9 (initial Responses to same requests on June 23). Plaintiff was not required to delay filing his motion to compel because of Defendants' word games.

## CONCLUSION

For the reasons stated herein and in Plaintiff's opening brief, Plaintiff Ronald Newman respectfully submits that his Motion to Compel should be granted in full.

                Respectfully submitted,

                /s/ Glenn Schlactus_____
                John P. Relman (D.C. Bar No. 405500)
                Glenn Schlactus (D.C. Bar No. 475950)
                RELMAN & DANE PLLC
                1225 19th Street, N.W.
                Suite 600
                Washington, D.C. 20036
                (202) 728-1888 (o)
                (202) 728-0848 (fax)

                *Attorneys for Plaintiff*

September 2, 2008

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 2nd day of September, 2008, I caused Plaintiff Ronald Newman's Reply Brief in Support of His Motion to Compel Discovery Responses to be served on the following by Notice of Electronic Filing, generated by the Electronic Case Filing System:

Robert L. Wilkins
Venable, LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
rlwilkins@venable.com

Craig A. Thompson
Venable, LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
cathompson@venable.com

Tina H. Saunders
Venable, LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
thsaunders@venable.com

*Attorneys for Defendant*

                /s/ Nani Gilkerson
                  Nani Gilkerson