**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

RONALD NEWMAN,

               **Plaintiff,**

    **v.**

BORDERS, INC. et al.,

               **Defendants.**

                                    **Civil Action No. 07-492 (RWR/JMF)**

**MEMORANDUM OPINION**

Before me are two motions, one to compel another 30(b)(6) deposition[1] and the second to modify Judge Roberts' order limiting the number of depositions that can be taken to eight.[2]

The facts of the case are simple indeed.  On December 2, 2005, a store detective employed by Borders, a defendant, approached the plaintiff and questioned him.  Plaintiff claims that the stop was racially motivated and Borders intends to defend itself on the grounds that plaintiff was questioned because the store detective saw him "place an item from the shelf of the store into a bag he brought into the store." Defendant Borders, Inc. and Borders Group Inc.'s Opposition to Plaintiff's Motion to Compel 30(b)(6) Testimony and Documents Relied Upon by 30(b)(6) Designee ("Opp.") [#54] at 1-2.

---

[1] Motion to Compel 30(b)(6) Testimony and Documents Relied Upon by 30(b)(6) Designee ("Motion to Compel") [#52].

[2] Plaintiff Ronald Newman's Motion to Modify Scheduling Order to Increase Plaintiff's Deposition Limit from Seven to Eight. [#49].

I.      **The 30(b)(6) Deposition**

Plaintiff served a notice to take a deposition pursuant to Rule 30(b)(6).  Motion to

Compel, Exhibit 3.  Attached to the notice and identified as "Exhibit A" was a detailed list of the

nine topics that would be the subject of the deposition.  See id. at 5-7.  Borders designated Lisa

Morrow to testify as to four of the nine topics.  The first of those was "Borders' document,

information, and record collection and retention policies and practices."  Id. at 5.  This topic had

in turn nine subdivisions that specified the "policies and practices" that would be the subject of

the deposition.  Id.

During the course of her deposition, Morrow was asked if she knew about Borders's

policy regarding the retention or destruction of e-mails.  She responded:

> The Witness: I don't know what the specific retention policy is.  I
> know the e-mails are backed up in our I.T. department.  I don't
> know how long they're kept for.

Motion to Compel, Exhibit 1, Deposition of Lisa Morrow, at 72.  Additionally, she could only

speculate whether e-mails between Borders's employees were placed in a file and did not know

whether Borders retained copies of e-mails that had been deleted from an individual's inbox, or

whether it had a written policy regarding retention of e-mails, although she was sure it did.  Id. at

74-75.  She also did not know what "e-mails were searched, what search terms were used, whose

e-mails were searched," id. at 102, whether "received mail was searched in addition to sent mail

or e-mail," id., or whether "e-mails from Borders–from one Border [sic] employee to another

Border [sic] employee [were] searched." Id. at 103.

Given Morrows' ignorance, plaintiff wants Borders to designate another 30(b)(6) witness

to testify as to Borders's "e-mail retention policies and any searched [sic] conducted of emails."

Motion to Compel at 8.

Borders first complains that plaintiff "mousetrapped" Morrow by identifying the topic generically ("general document and information retention policies") but then asking her detailed questions "regarding specific retention policies, including those related to e-mails." Opp. at 6.

Borders also points out that (1) plaintiff has never sought any documents or policies concerning e-mails "by way of formal discovery requests," id., (which I take to mean by a request for production of documents); (2) there are no allegations whatsoever that any e-mails were improperly deleted, discarded or altered; (3) Borders produced (a) e-mails pertaining to the incident from its employees and (b) a privilege log that listed several e-mails that were retrieved during its search. Id.  Plaintiff is said to have "deposed multiple fact and corporate witnesses about emails related to the incident and Borders' search efforts for same."  Id.  Finally, Borders points to the testimony of another 30(b)(6) designee, Darla Schlacht, who testified about how a complaint from a customer was captured in a particular database system.

Plaintiff justifies its demand not by pointing to any claim of missing or deleted e-mails or because it has some specific reason to believe that e-mails pertaining to the incident were once in existence but have never been produced.  Rather, he paints with a much broader brush, insisting that it is important that another 30(b)(6) designee be named to testify as to Borders's retention of e-mails and the searches for them in this case "because Defendants have repeatedly failed to produced [sic] responsive documents until Plaintiff learned of the existence of such documents and specifically requested them or the Court ordered Defendants to produce them." Motion to Compel at 7.  In this context, it points to an instance where plaintiff discovered that portions of a handbook pertaining to loss prevention had been redacted from a document given to plaintiff's

counsel even though plaintiff's document request sought loss prevention policies and defendants represented that only the unresponsive portions of the handbook were redacted. Id.  Plaintiff also claims that I ordered the defendants to produce documents and that at one point defendants had represented that these documents did not exist. Id.

## II.      E-mail policy

That a party's document retention policies, including its policies as to electronically stored information, may be a fit subject of discovery cannot be gainsaid. Huthnance v. District of Columbia, 255 F.R.D. 285, 287 (D.D.C. 2008) (quoting Doe v. District of Columbia, 230 F.R.D. 47, 56 (D.D.C. 2005)).  It is equally clear that a party must produce as its 30(b)(6) designee a person who can speak knowingly as to the topic and, if necessary, educate that designee so that she can do so. Intervet, Inc. v. Merial Ltd., No. 06-CV-658, ___ F.R.D. ___, 2009 WL 540392, at *4 n.1 (D.D.C. Mar. 4, 2009).

There is, however, a concomitant responsibility upon the party who had noticed the 30(b)(6) deposition to define as clearly as possible the topics for the deposition.  While topic one speaks of "[g]eneral document and information retention policies" and topic nine of "[d]efendants' search for records or documents or information responsive to Plaintiff's Request for Production of Documents" the words "e-mail" or "electronically stored information" do not appear in the description of the topics, which are remarkably inclusive and detailed.  I cannot say that a reasonable lawyer reading that document would conclude that Borders's e-mail retention policy and the search for e-mails pertaining to this case were going to be topics of the deposition. Instead, in a world where the vast majority (to put it mildly) of all communications within businesses is electronic, I am hard pressed to understand why, if plaintiff thinks it so obvious that

4

information about defendants' e-mail policy and the search for e-mails were called for by the

topic description, plaintiff did not simply say so.  While I appreciate that plaintiff's claim that

defendants initially failed to produce a portion of a document that should have been produced is

unrebutted, I have presided over the discovery in this case and have found absolutely no

indication that the defendants have engaged in any behavior that would suggest that defendants

have knowingly destroyed any pertinent e-mails or failed to search conscientiously for pertinent

e-mails.

Nevertheless, as I have explained, discovery about a party's document retention policy is

certainly legitimate.  I also have the unquestioned right (if not the duty) to bring discovery

disputes to a just and inexpensive conclusion. Fed. R. Civ. P. 1.  I am stunned by how much time

and effort has been spent on discovery in a case that involves a confrontation between plaintiff

and a store detective that could not have taken much time.  I am also well past being convinced

that the potential legal fees in this case, thanks to the many discovery disputes, will dwarf the

potential recovery, if there is one.  The time has come (it may have come and gone) for me to

bring this particular controversy about e-mail to a quick and merciful end without another costly

deposition. Cf. Fed. R. Civ. 26(c)(1)(c) (upon application for protective order court may

"prescrib[e] a discovery method other than the one selected by the party seeking discovery.").

I understand from their papers that the parties attempted to resolve the controversy by

trying to agree to an affidavit from Borders that spoke to the issues that arose during Morrow's

deposition.  They did not try hard enough.[3]  Accordingly, in lieu of a 30(b)(6) deposition Borders

---

[3] Counsel should become aware of the perceptible trend in the case law that insists that
counsel genuinely attempt to resolve discovery disputes.  See Covad Commc'ns Co. v. Revonet,
Inc., 254 F.R.D. 147, 149 (D.D.C. 2008); see also Sedona Conference Cooperation Proclamation

will submit an affidavit from a Borders representative who is truly knowledgeable that will speak to the following questions:

1.    What kind of e-mail system does Borders have?  (I.e Outlook, Lotus Notes or proprietary)?

2.    Is that system programmed to delete e-mails automatically that have been in existence for a certain period of time?  If the answer is yes, what is the period of time and was that system shut off or kept on after the incident involving plaintiff?

3.    Does Borders have a policy that requires either the retention or deletion of e-mails and, if so, what is the policy and is it in writing?  If it is in writing, it will be appended to the affidavit.

4.    Was it necessary to make efforts to prevent the deletion of e-mails after the incident involving plaintiff, and, if so, what efforts were made?

5.    Is Borders aware of the deletion of any e-mails pertaining to the incident involving plaintiff?

6.    Who was responsible for searching for any e-mails pertaining to the incident involving plaintiff?

7.    How did this person or these persons conduct the search?  What receptacles of electronically stored information were searched?  Network servers, individual hard drives?

8.    If individual hard drives were searched, whose were they?

---

(2008), available at http://www.thesedonaconference.org/dltForm?did=Cooperation_ Proclamation.pdf.

        9.      Did the search involve the use of keywords and, if so, what were they?

## III.    Another deposition

Plaintiff seeks to take another deposition, beyond the seven Judge Roberts permitted but I am in no position to undo what Judge Roberts has done.  That motion will have to be denied.

### Conclusion

Borders must submit the affidavit I have just described but plaintiff may not take another 30(b)(6) deposition or any more depositions whatsoever.

An Order accompanies this Memorandum Opinion.


Date: April 6, 2009                _____/S/_____
                                    JOHN M. FACCIOLA
                                    U.S. MAGISTRATE JUDGE